UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CR-60322-JIC

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

RAOUL WEIL,

       Defendant.

_____/

**RESPONSE TO DEFENDANT'S MOTION TO COMPEL AND
FOR A BILL OF PARTICULARS**

The United States of America, by undersigned counsel, respectfully submits this response in opposition to Defendant Raoul Weil's Motion to Compel the Government to Immediately Disclose All *Brady* and *Giglio* Material and Produce a Bill of Particulars (D.E. 47) ("defendant's Motion" or "Mtn"). The defendant's Motion, disguised as a motion for *Brady* material and for a bill of particulars, is an attempt to circumvent the Jencks Act and to obtain the government's plan for proving its case at trial. The defendant's Motion should be denied.

**I.    Background**

To begin, the government must correct misleading impressions drawn from the defendant's recitation of the production of discovery in this case. The defendant by way of background and apparently not directly relevant to the actual arguments in the motion, raises two main complaints: (a) that the government's production of discovery consisted of voluminous but often irrelevant material and (b) that the material produced lacked associated metadata and page breaks. *See* Mtn. at pp. 2-3. The defendant likens the government's production "to producing

thousands of separate documents as continuously flowing ten-thousand page scrolls." *Id.* at p. 3. While colorful, the defendant's characterization ignores some important facts.

From the very beginning, the government has emphasized that the core of this case consists of UBS corporate documents. These documents make up a small fraction of the total production. As a courtesy, the government produced a substantial portion of these central documents on December 13, 2013 – before the defendant's arraignment and prior to the entry of a formal discovery order. The defendant has had ample time to review the most pertinent documents. To the extent that the defendant has been distracted by ancillary discovery, that has been his choice.

The government readily concedes that most of the documents lack metadata and that, at times, the documents did not have evident page breaks. But that is not the government's doing – this is how the government received the documents. The vast majority of the documents provided in discovery, and in particular those that the defendant is complaining about, were originally produced to the government through Swiss authorities. The defendant was informed that the Swiss authorities presented the documents stripped of metadata and in a lump sum fashion. Furthermore, the IRS fashioned a spreadsheet that identified the page ranges in order to make sense of the documents and the government provided the defendant with that spreadsheet. The defendant had the same documents, in the same format, and with the same limitations, as the government.

Faced with these same difficulties, a government IT contractor analyzed the documents and the IRS spreadsheet. The IT contractor was able to make the documents more navigable and the government voluntarily re-produced the documents to the defendant in the more navigable format.

### II. The Motion to Compel Disclosure of *Brady* and *Giglio* Material is Contrary to the Law.

The defendant seeks the immediate and wholesale disclosure of government interview notes, witness statements, and similar documents. While couched in terms of *Brady* and *Giglio*, the defendant's Motion is really an attempt to make an end-run around the discovery procedures of Federal Rule of Criminal Procedure 16 and the Jencks Act. The defendant incorrectly accuses the government of, in effect, sitting on a mound of *Brady* material that it refuses to disclose. Although the defendant speculates that witnesses have made a number of exculpatory statements about Mr. Weil to the government, the government is not aware of any such statements.

The defendant's argument can be broken down into two parts: 1) a part with the more modest aim of obtaining production of statements by Martin Liecthi; and 2) a part seeking every single other document concerning witness statements that the government possesses.

#### A) Statements by Martin Liechti

The defendant's Motion focuses on a request for statements by Martin Liechti, a former high-ranking executive at UBS. The defendant advances two theories why Liechti's statements constitute *Brady* or *Giglio* material. First, the defendant argues that Liechti's non-prosecution agreement (provided to the defendant in discovery), indicates Liechti's involvement in criminal activity regarding the UBS cross-border business, that this criminal activity is grounds to impeach Liechti, and that therefore, Liechti's statements are subject to immediate disclosure. *See* Mtn. at p. 6. Second, the defendant argues that Liechti's statements would reveal either directly exculpatory material or conflicting statements by Liechti. *See id.* at 7. Both theories are flawed.

As to the first theory, Liechti's statements to the government would indeed reveal criminal conduct by Liechti (and others). But if that were enough to warrant immediate

3

disclosure under *Brady* and its progeny, then it would render Rule 16 and the Jencks Act largely a dead letter because any self-incriminating statements by a cooperating witness would be automatically *Brady*.  That is not the law.

As a general rule, "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent," are not subject to discovery, nor are "statements made by prospective government witnesses except as provided in" the Jencks Act, 18 U.S.C. § 3500.  Fed. R. Crim. P. 16(a)(2).  Courts have long recognized the Jencks Act's central role in regulating the timing of the disclosure for witness statements.  Under the Act, the government must provide such statements no later than after the witness has testified on direct examination.  *See* 18 U.S.C. § 3500(b); Fed. R. Crim. P. 26.2(a).

The Jencks Act does not override the government's obligations under *Brady*.  *See United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003).  But neither does *Brady* "'create a broad, constitutionally required right of discovery.'"  *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 675 n. 7 (1985)).

In particular, "[t]he defense is not automatically entitled under a *Brady* theory to disclosure of a Jencks Act statement prior to the direct testimony of the government's witness." *United States v. Harris*, 458 F.2d 670, 676 (5th Cir. 1972);[1] *see also United States v. Dotson*, 546 F.2d 1151, 1153 (5th Cir. 1979) ("Appellant's contention that *Brady* required the pretrial disclosure of the witnesses' prior statements conflicts with the settled law of this circuit. . . This Court and others have recognized that the rule announced in *Brady* is not a pretrial remedy as was intended to override the mandates of the Jencks Act."); *United States v. Anderson*, 547 F.2d

---

[1] In *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

4

1347, 1352 (5th Cir. 1978) ("[W]hen alleged *Brady* material is contained in Jencks Act material, disclosure is generally timely if the government complies with the Jencks Act").

Not only is what the defendant seeking subject to the Jencks Act, the alleged *Brady* material is, in particular, impeachment material. "Impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness." *Jordan*, 316 F.3d at 1253. Immediate disclosure would therefore be both contrary to the Jencks Act and unsupported by the case law on *Brady* and impeachment material.[2]

The second theory put forth by the defendant is entirely unfounded. According to the defendant, individuals working on behalf of the Swiss Federal Banking Commission ("EBK") interviewed Liecthi as part of EBK's investigation of UBS's cross-border banking business. EBK's investigation culminated in a report that concluded there was no evidence that Weil was involved in illegal activity at UBS. *See* Mtn. at 7; Doc. 47-2 at p. 17.[3] From this, the defendant deduces that Liechti either gave conflicting information to U.S. and Swiss authorities or, alternatively, told the U.S. government that Weil was not involved. *See id.* This chain of reasoning, however, is unsound and missing a few links.

First, to the extent that Liechti met with Swiss authorities, the government has no basis to believe that he discussed the cross-border business. Furthermore, the government is not in possession of any records of the EBK interview. The government's "*Brady* obligations extend only to information possessed by the prosecutor or anyone over whom he has authority." *United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011) (quoting *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989)). "A prosecutor has no duty to undertake a fishing expedition

---

[2] In any event, even if the defendant's premise was sound, it would not mean that disclosure of all the statements would be required. Only self-incriminating statements by Liechti would satisfy the criteria.

[3] More correctly, the report says there is no indication that "the bank's top management had any knowledge of violations." Doc. 47-2 at 16.

in other jurisdictions"—certainly not a foreign one—"in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding a government witness."  *Id.* (internal quotation marks omitted); *see also, e.g., United States v. Luis-Gonzalez*, 719 F.2d 1539, 1548 (11th Cir. 1983) (*Brady* does not apply to material not in government's possession).

Second, the grounds for EBK's conclusion that top management at UBS were unaware of criminal violations remains a mystery to the government.  The government was not a party to EBK's investigation, had no input into the manner in which EBK conducted the investigation, and was not consulted regarding its findings.  The report contains conclusions without citation to witness statements or documentary evidence.  The government does not know whether EBK decided to credit some statements more than others.  The report does not engage in any detailed analysis of evidence regarding Weil's knowledge and conduct.  Its value is nil.  The report provides no valid reason to believe that Liecthi made statements to those compiling the EBK report that conflict with the statements he made to the U.S. government.  In any event, "[i]mpeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness." *Jordan*, 316 F.3d at 1253.

As to the latter assertion, the government can proffer that Liechti never told the U.S. government that Weil was not involved with the activity charged in this case.

### B)  Other Statements

The defendant next speculates that it is "also highly likely that the government's notes and memoranda of its interviews of other witnesses contain *Brady* and *Giglio* material." Mtn. at 7.  In particular, the defendant asserts, with no basis, that individuals must have "made statements tending to show that Mr. Weil was not involved in Liechti's wrongdoing, that

Mr. Weil is an individual of good character and/or that Liechti or others told them that UBS's U.S. cross-border wealth management business . . . was compliant with U.S. law." *Id.* at 8. This argument is a pure fishing expedition. The government has not identified any such statements.

Pure supposition is not a basis for a *Brady* request. *See*, *.e.g., United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) (noting that the Eleventh Circuit has held that the government is "not required to disclose the contents of personnel files or submit them for in camera review simply based on the defendant's unsupported contention that they might contain information of significance to his case"*)*; *Jordan*, 315 F.3d at 1252 n.81 ("mere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove 'materiality'" under *Brady*). This is once again simply an attempt to circumvent the discovery rules, in particular the Jencks Act, by making a generic and conclusory assertion that interview notes and memoranda contain *Brady* material.

More importantly, the government has reviewed the interview notes and memoranda of senior level UBS employees (*i.e.*, those most likely to have said something that could be considered *Brady* with respect to Weil) that it possesses for *Brady* material and has seen no such statements.[4] To the extent the government has seen such statements they have been produced. There is simply no factual or legal basis for the defendant's overly broad request.

Should the Court so desire, the government will submit any and all memoranda of interviews and agent notes under seal for *in camera* inspection.

**III.    A Written Certification is Unnecessary.**

The defendant seeks a written certification that the government has reviewed various files -- including, apparently, any communication between any government agent (not limited to the

---

[4] The government is continuing to review on an ongoing basis, out of an abundance of caution, statements by lower-level employees and UBS clients, though their positions vis-à-vis Weil makes it highly unlikely they would have made any statements that would be *Brady* in this case.

7

prosecution team) and any UBS representative -- for *Brady* material.  *See* Mtn. at 10.  *Brady,* of course, applies whether an attorney signs a certification or not.  This additional request is unnecessary.

In support of this unusual request, the defendant cites a lone, unpublished district court opinion.  In *United States v. Rodriguez*, the magistrate judge ordered the government to produce a written certification.  *See* 2011 WL 666136 at *3 (S.D. FL Feb. 13, 2011).  This was done with little explanation, but was apparently largely a product of "confusion exhibited at the hearing [on a discovery motion] with respect to certain information which had been verbally furnished to [defense] counsel."  *Id.*  The certification was to clear up this confusion.  That is quite apart from the detailed and unnecessary request made by the defendant here and this novel and expansive request should be denied.

### IV.    There are No Grounds for a Bill of Particulars in this Case.

The defendant's Motion also includes a request for a bill of particulars on three topics: 1) reveal "all of Mr. Weil's alleged co-conspirators"; 2) to "specify the nature of Mr. Weil's alleged overt acts . . . for the handful of alleged overt acts attributed to Mr. Weil in the indictment"; and 3) to "provide the locations within the Southern District of Florida where the alleged fraud occurred."  Mtn. at 11.  With respect to the first request, the government has provided a list of co-conspirators to the defendant and that request is now moot.  The remainder of the request is without merit and does not serve the purpose of a bill of particulars and should therefore be denied.

An indictment is sufficiently detailed if it provides a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The rules allow for a defendant to seek a bill of particulars, but the purpose of a bill is confined to

8

three discrete functions:  (1) "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense"; (2) "to minimize surprise at trial"; and (3) "to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (internal quotation marks omitted).  Whether to order a bill of particulars is a decision within the sound discretion of the trial court.  *See, e.g., United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981).

"A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information *necessary* for trial preparation." *Anderson*, 799 F.2d at 1441 (emphasis in original).  Accordingly, the Eleventh Circuit has made it clear that "generalized discovery . . . is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill." *Id.*

In the Eleventh Circuit, a bill of particulars "may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy," and the government is not "required to provide defendants with all overt acts that might be proven at trial." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986).  Nonetheless, the indictment does allege, in detail, 18 separate overt acts in furtherance of the conspiracy performed by Weil and by other co-conspirators.  *See* Indictment ¶¶ 25-42.[5]

The particular overt acts alleged to have been performed by Weil are clear and straightforward.  They provide a plain and concise statement of the allegations.  *See* Fed. R. Crim. P. 7(c)(1).  What the defendant seems to be seeking is the details of how the government intends to prove those overt acts.  But a bill of particulars "'is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it

---

[5] Many individuals in the indictment are identified by pseudonyms.  These identities were disclosed to the defendant even before Weil was arraigned.  *See* Doc. 47-3 at 3 (December 23, 2013 letter to Mr. Marcu).

intends to rely at trial.'" *United States v. Roberts*, 174 F. App'x. 475, 477 (11th Cir. 2006) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)); *see also, e.g., United States v. Perez*, 489 F.2d 51, 71 (5th Cir. 1973) (bill of particulars "may not be used to obtain a detailed disclosure of the government's evidence prior to trial."). It is not a vehicle for "generalized discovery," as the defendant seeks to turn it into. *Anderson*, 799 F.2d at 1441.

Similarly, the indictment alleges at least one overt act within the Southern District of Florida and thus sufficiently alleges venue. *See* Indictment ¶ 39. Although not necessary, the indictment goes further and does indeed "provide the location[]" within the Southern District where this occurred, Mtn. at 11, stating that various bankers and desk heads "solicited new business" from U.S. persons at "Art Basel Miami Beach in Miami Beach, Florida." Indictment ¶ 39. That satisfies the requirements for pleading allegations in an indictment. The government may, at trial, prove additional acts that occurred with the Southern District of Florida, but again, the government is not "required to provide defendants with all overt acts that might be proven at trial." *Rosenthal*, 793 F.2d at 1227.

**Conclusion**

The defendant seeks to circumvent the Jencks Act under the cloak of a *Brady* request that is not only off-base legally but which also rests on faulty factual premises.  Furthermore, the defendant seeks production of the government's trial strategy and method of proving the indictment under the guise of a request for a bill of particulars.  That is not a proper purpose for a bill of particulars.  Therefore, for the foregoing reasons, the motion as a whole should be denied.

Respectfully submitted,

TAMARA W. ASHFORD
ACTING ASSISTANT ATTORNEY GENERAL

By:      /s/ Mark F. Daly
Mark F. Daly
Senior Litigation Counsel
Tax Division
U.S. Department of Justice
Attorney No. A5501435
601 D Street, N.W. – Room 7334
Washington, DC 20004
Tel: (202) 514-5150
Fax: (202) 616-1786
Mark.F.Daly@usdoj.gov


   /s/ Jason Poole
Jason Poole
Court ID No. A5501525
Trial Attorney
Department of Justice, Tax Division
Southern Criminal Enforcement Section
601 D Street NW
Washington, DC  20004
Tel: (202) 514-5145
Fax: (202) 514-0961
jason.h.poole@usdoj.gov

## Certificate of Service

I hereby certify that on June 9, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send an electronic notice of filing to all counsel of record.

    /s/ Mark F. Daly
Senior Litigation Counsel
Tax Division