UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-60322-CR-COHN

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

RAOUL WEIL,

          Defendant.

_____

**DEFENDANT RAOUL WEIL'S OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE THE ADMISSION OF THE SWISS FEDERAL BANKING COMMISSION'S INVESTIGATIVE REPORTS**

      Defendant Raoul Weil respectfully submits his Opposition to the Government's Motion in Limine to Exclude the Admission of, *inter alia*, two public reports authored by the Swiss Federal Banking Commission (the "EBK")[1] and its successor, the Swiss Financial Market Supervisory Authority ("FINMA").  ("Motion in Limine") (DE 120).  The reports summarize the EBK's factual findings and conclusions following its lengthy investigation of UBS AG's ("UBS") U.S. cross-border wealth management business.

      In a 2010 FINMA Bulletin (Ex. A.) and a 2009 FINMA Report (Ex. B), the EBK unequivocally found that the Government's principal witnesses against Mr. Weil, Martin Liechti and Michel Guignard, violated UBS internal policy and U.S. law and then concealed their misconduct from Mr. Weil.  Since Mr. Weil cannot access the vast majority of the witnesses

---

[1] *Eidgenössiche Bankenkommission* (sometimes referred to as the Swiss Federal Banking Commission or SFBC).

whom the EBK interviewed from Switzerland, the published reports are his only means of presenting crucial exculpatory evidence relied upon by the EBK.  The Defense is not seeking to admit the reports in order to prove a "malicious or vindictive" prosecution, as the Government now claims[2]; rather, the Defense seeks to introduce the reports because they contain critical factual findings that exculpate Mr. Weil.  The reports are admissible under Federal Rule of Evidence 803(8), the public record exception to the rule against hearsay, because they are "record[s] or statement[s] of a public office," produced under circumstances that indicate trustworthiness, containing "factual findings from a legally authorized investigation," that are being offered "against the government in a criminal case."  Fed. R. Evid. 803.[3]  Mr. Weil respectfully seeks their admission into evidence.

## RELEVANT FACTS

Mr. Weil is a Swiss national charged with a crime he allegedly committed during his employment at a Swiss bank, largely concerning events that took place and were documented in Switzerland and that principally involved Swiss witnesses who still reside in Switzerland.  Both DOJ and Mr. Weil have had limited access to the key witnesses and documents (and DOJ has taken multiple steps to prevent Mr. Weil from having access to those key witnesses and documents), but the EBK – as the relevant authority in Switzerland – had access to and considered it all.

---

[2] Motion in Limine at 3.

[3] "Public Records" admissible under Rule 803(8)'s hearsay exception are those "record(s) or statement(s) of a public office if: (A) [it] set[s] out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case *or against the government in a criminal case,* factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8) (emphasis added).

It is Mr. Weil's position that the U.S. Government indicted Mr. Weil prematurely.  Prior to indicting Mr. Weil, the Government conducted relatively little investigation other than multiple interviews of one detained witness, Martin Liechti, who was held for four months and released with a non-prosecution agreement, only after implicating the CEO of UBS's Wealth Management & Business Banking division, Mr. Weil.  Following Mr. Weil's Indictment, the EBK's broad and independent investigation continued.  In addition to the documents that were available to DOJ, the EBK demanded additional documentation from UBS and conducted an independent review of 30,000 documents.  UBS Transparency Report at 38;[4] *see also* FINMA Statement of Position at 5.[5]  The EBK also interviewed the critical UBS witnesses, including Mr. Weil, DOJ's principal witnesses Mr. Liechti, Michel Guignard, and Hansruedi Schumacher, and Mr. Weil's immediate superiors at UBS, UBS CEO Marcel Rohner and UBS Chairman Peter Kurer, among many others.  UBS Transparency Report at 38.  DOJ chose not to interview Mr. Weil, who was arranging to appear for a voluntary interview at the time that DOJ issued the Indictment; DOJ also declined to interview Messrs. Rohner and Kurer.

The EBK's proceeding against UBS, like DOJ's, ended with an order prohibiting the further operation of UBS's cross-border wealth management business in the United States, among other injunctive relief and sanctions.  *See* FINMA Bulletin, DE 63-1, at 156 (¶ 62); FINMA Report at 2; *compare* DPA at 4, ¶ 5 (directing UBS to exit the cross-border business); *id.* at 13, ¶ 21 (directing UBS to retain an independent auditor).  What the EBK did not do was take any action against Mr. Weil.  The EBK reviewed the evidence available, evidence not available

---

[4] *See* UBS AG, "Transparency report to the shareholders of UBS AG: Financial market crisis, cross-border wealth management business, liability issues and internal reviews" (2010) (available at: http://www.ubs.com/global/en/about_ubs/transparencyreport.html).

[5] Statement of Position of FINMA (May 30, 2010) (available at: http://www.finma.ch/d/aktuell/Documents/gpk-stellungnahme_finma_20101126_d.pdf (last visited: Oct. 6, 2014).  A certified translation is attached hereto as Ex. C.

to Mr. Weil except through this motion, and concluded that it was "not comprehensible" why he

was indicted.  FINMA Bulletin, Ex. A, at 169 (¶ 88).[6]  The basis of the EBK's decision as to Mr.

Weil was simple.  Mr. Weil had done nothing wrong:

> The egregious deficiencies must be attributed to actions by
> individual employees far below the echelon of the Guarantors
> [*Gewährsträger*][7] . . . The investigation by the EBK has not
> brought to light any evidence that it would be possible to bring
> sufficiently strong accusations against . . . [Mr. Weil] that would
> justify issuing a formal censure against [him] personally . . . No
> doubt has been cast on the guarantee of [Mr. Weil.]

FINMA Bulletin, Ex. A, at 170 (¶ 89).  "FINMA particularly examined" whether Mr. Weil

"individually bore responsibility for the discovered violations of the QIA by UBS AG"; and

based on its "extensive investigation," "[FINMA] concluded that there was no cause to order the

bank to remove" Mr. Weil.  FINMA Statement of Position at 8.

The EBK further concluded that the parties responsible for UBS's conduct were "far

below" Mr. Weil's rank: "[T]he management of the North America business failed to notify the

uppermost management of [UBS] AG in due time and in full, thus preventing informed decision

making."  FINMA Bulletin, Ex. A, at 158 (¶ 66);[8] FINMA Report, Ex. B, at 13 ("A few

individual client advisors of the [North America] Business and their direct supervisors [i.e.,

---

[6] The FINMA Bulletin utilizes anonymized references.  Although the reference to "DOJ's indictment" makes plain that FINMA was referring to Mr. Weil, FINMA has separately confirmed that they were referring to Mr. Weil.  *See* Letter from Kathrin Tanner and Eva Kaufmann, FINMA, to Rudolf Wyss (June 20, 2014), DE 63-1, at 176.  FINMA's reference to someone "detained in the United States from May to October 2008 as a 'material witness'" cannot be read to refer to anyone but Mr. Liechti.  FINMA Bulletin, Ex., A, at 169 (¶ 88).

[7] *Gewährsträger* refers to senior managers of supervised institutions (here, Messrs. Weil, Rohner, and Kurer) who are required under the Swiss Banking Act to warrant or guarantee the proper business conduct of that institution.  *See* Swiss Banking Act, art. 3 ¶ 2, art. 3f ¶ 1.

[8] The Bulletin also refers to UBS AG itself anonymously (as "A. ___ AG").  FINMA has also since confirmed that UBS is the subject of the Bulletin.  *See* Letter from Kathrin Tanner and Eva Kaufmann, FINMA, to Rudolf Wyss (June 20, 2014), DE 63-1, at 176.

Martin Liechti and Michel Guignard] were responsible for this severe misconduct.").  In other words, Messrs. Liechti, Guignard, and others – but not Mr. Weil – were responsible.  *See* FINMA Bulletin, Ex. A, at 170 (¶ 89); *see also id.* at 158 (¶ 67) ("Both the immediate supervisors and the management echelons responsible for the [North America] business encouraged the actions by the client managers[.]").  The FINMA Report, a summary of EBK's work, reaches the same conclusions.[9]  *See, e.g.*, FINMA Report, Ex. B, at 16 ("The EBK did not find any indications that [UBS]'s top management[,]" i.e., Messrs. Weil, Kurer, and Rohner, "had any knowledge of violations of duties under the QIA."); *id.* at 13 ("It was particularly severe that the management of the [North America] business[,]" i.e., Messrs. Liechti and Guignard, "failed to inform the top management of UBS AG timely and comprehensively.").

DOJ has not sought to obtain any of the witness statements obtained by the EBK.  *See* Mot. To Obtain Testimony (DE 63).  Unlike Mr. Weil, DOJ could have attempted to gain access via the Mutual Legal Assistance Treaty between the United States and Switzerland.  It is a remarkable situation where a U.S. prosecutor prefers not to know what the defendant and the prosecution's principal witnesses have said in another proceeding about the same facts.  *See* DOJ Mem. in Opp. (DE 82).

## ARGUMENT

I.    **The FINMA Report and Bulletin Are the Only Way Mr. Weil Can Admit Facts Otherwise Unavailable to Him**

Far from being "irrelevant" to Mr. Weil's "innocence,"[10] the findings of the EBK and FINMA are uniquely probative to rebut DOJ's theory of the case.[11]  Due to the strictures of

---

[9] EBK was merged into FINMA effective January 1, 2009.

[10] Motion in Limine at 3.

[11] The Government dismisses the EBK Report as "irrelevant" and describes its proposed admission in evidence as an attempt to "backdoor an inadmissible claim of selective or vindictive

Swiss banking law and the Defense's inability to subpoena witnesses and documents from abroad, the Bulletin and the Report are Mr. Weil's only means of presenting critical exculpatory evidence.  Both will enhance the jury's understanding of the critical facts, particularly in light of DOJ's limited investigation, and neither "present[s] the danger of creating unfair prejudice in the minds of the jury[.]"  *Barfield v. Orange Cnty.*, 911 F.2d 644, 651 (11th Cir. 1990).  To compare DOJ and EBK's investigations:

- The EBK interviewed all the key Swiss witnesses, including Mr. Weil but also Messrs. Liechti, Schumacher, Guignard, Kurer, Rohner, and many other UBS employees who will not be witnesses at Mr. Weil's trial; DOJ chose not to interview Mr. Weil, despite his offer to come to Washington for an interview (highly unusual for a complex investigation such as this one).

- The EBK had access to all the documents UBS produced to DOJ as well as access to other documents within Switzerland that were protected by legal privilege and financial privacy laws; DOJ did not.

- DOJ held Mr. Liechti in custody for months until he implicated Mr. Weil; the EBK did not.

- DOJ immunized witnesses – Messrs. Liechti and Guignard; the EBK did not.

Because of its superior access to witnesses, the EBK could rapidly contact those witnesses in order to corroborate and scrutinize Mr. Liechti's specific allegations about Mr. Weil and others. DOJ instead has sought to inoculate Mr. Liechti's statements from any meaningful testing, refusing to speak to witnesses who volunteered to make themselves available (such as

---

prosecution." *See* Motion in Limine at 3, 5.  But the Government does not explain why the Report would be inadmissible in these proceedings.  Substantive discussion of the Report's admissibility is relegated to a single paragraph at the conclusion of the Government's Motion. *See* Motion in Limine at 7.

Messrs. Weil, Rohner, and Kurer) and choosing not to seek access to the EBK's records of witness interviews (despite a ready means of access via treaty).

When a foreign report of investigation aligns with a criminal defendant's theory of the case, convictions have been vacated and remanded for retrial where those reports were not made available for the jury's consideration.  For example, in *United States v. Garland*, William Garland, a criminal defendant, borrowed money in the United States to buy 5,000 tons of cocoa beans in Ghana.  *United States v. Garland*, 991 F.2d 328 (6th Cir. 1993).  When the transaction fell through, Mr. Garland claimed that he was defrauded by his would-be business partners in Ghana.  Mr. Garland's U.S. lenders, in turn, claimed that Mr. Garland had defrauded them and fabricated the cocoa transaction.  The Government conducted no investigation in Ghana, and the district court declined to admit any testimony about an active, in-progress investigation by Ghanaian authorities of the would-be business partners for defrauding Mr. Garland. Mr. Garland's predictable conviction on this record was overturned by the Sixth Circuit on appeal, after a Ghanaian court issued a "dramatic and probative" judgment vindicating Mr. Garland and convicting his would-be business partners of defrauding him – just as Mr. Garland had argued at trial.  *Id.* at 335.  The Court of Appeals, in vacating Mr. Garland's conviction, held that the facts found by the Ghanaian court were admissible under Federal Rule of Evidence 803(8)(C), uniquely probative, and "would likely have produced an acquittal" had they been considered at trial.  The Court even chastised DOJ for "not tak[ing] the trouble to investigate the case" in Ghana.  *Id.* at 334-36.

The circumstances presented here are even more compelling than those in *Garland*. Foreign investigators – the EBK and FINMA – have concluded that Messrs. Liechti, Schumacher and Guignard are at fault and that no evidence points to Mr. Weil's complicity in the alleged

crime to be tried.  Their conclusions were based on an investigation that accessed more evidence than will be available to Mr. Weil's jury and reached a result that directly conflicts with the U.S. Government's theory of the crime.  *See also United States v. Lewis*, F. App'x. 768, 769 (9th Cir. 2002) (vacating conviction where trial court improperly excluded departmental review board report concluding that defendant acted in accordance with policy).  It is noteworthy that in *Garland*, the Ghanaian court's exculpatory judgment had not been issued at the time of the defendant's trial.  Here, DOJ will have had the benefit of the EBK's exculpatory reports for more than five years prior to the commencement of trial.

The FINMA Bulletin and Report are also Mr. Weil's only means of admitting facts available in Switzerland, because it is impossible for Mr. Weil to gain access to documents, and because many of the critical witnesses are unavailable and Mr. Weil lacks the power to compel them to appear.  Under these circumstances, the Report is admissible.  Indeed, in those cases where courts have excluded reports of this kind, they have done so on the basis that the defense is able to compel witnesses to testify on the subject matter of the report, an avenue that is closed to Mr. Weil.  *See, e.g.*, *United States v. Lanese*, 890 F.2d 1284, 1291 (2d Cir. 1989) (affirming district court's refusal to admit reports under 803(8)(C) where "the record does not reveal" that the defense "was unable to produce the testimony" of the authors of the proffered reports); *United States v. MacDonald*, 688 F.2d 224, 230 (4th Cir. 1982) (excluding, under Rule 403, a report properly offered under Rule 803(8)(C), where the defense "was free to call any witnesses who testified" in the proceeding leading to the excluded report "or, indeed, to use such testimony, as appropriate, at his trial").

Mr. Weil has no means to secure the appearance of FINMA personnel or the production of FINMA's documents.  As for FINMA's witnesses, a few have volunteered to appear, but

Mr. Weil has no power to subpoena the vast majority who refuse. Admission of the FINMA Bulletin and Report is the only means by which the jury will have an accurate picture of all the evidence, not just that evidence which happens to be available by virtue of the happenstance of geography and DOJ's investigative choices.

## II.     Both Documents Are Authentic Official Publications and Admissible Public Records

The FINMA Report and FINMA Bulletin are self-authenticating publications, available on FINMA's website. *See* Fed. R. Evid. 902(5) ("A . . . publication purporting to be issued by a public authority" requires "no extrinsic evidence of authenticity"); *see also* Exs. A, B. Both the Bulletin and the Report are also "record[s] or statement[s] of a public office," (FINMA) and therefore admissible under Rule 803(8)'s public records exception since: (1) they reflect "factual findings from a legally authorized investigation" and (2) "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

### A.     The Bulletin and Report Reflect "Factual Findings" During A "Legally Authorized Investigation"

The EBK, and now FINMA, as the primary Swiss banking regulator, was authorized to investigate UBS and issue findings. *See* Fed. R. Evid. 803(8)(A)(iii); *see also In re Tradex Swiss AG*, 384 B.R. 34, 42 (Bankr. D. Mass. 2008) (noting the EBK's "authority to regulate banks and brokers" in Switzerland). That the EBK and FINMA are not domestic investigators is of no moment; reports of foreign authorities are admissible under the same rule. *See* 30C Charles Alan Wright et al., *Fed. Prac. & Proc. Evid.* § 7049 n.2 (2014 ed.) ("Public records and reports of foreign governments are admissible under Rule 803(8).") (internal citation omitted); *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 827-28 (2d Cir. 1994) (affirming district court's admission of report drafted by Scottish authorities).

"Factual findings" are the bulk of the Bulletin and the Report.  The documents set out in detail the facts and circumstances that led to the EBK's action against UBS, and their conclusions concerning Mr. Weil and Mr. Liechti (among other subjects) are therefore admissible.  As the Supreme Court makes clear in *Beech Aircraft*, "factual findings" include "factually based conclusions or opinions," so long as they are "based on a factual investigation" and are otherwise trustworthy.  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162, 170 (1988); *see also United States v. Peitz*, No. 01 CR 852 (WTH), 2002 WL 31101681, at *5 (N.D. Ill. Sept. 20, 2002) (admitting as "factual conclusion" a public, government report that "no evidence that [the defendant] knowingly participated in, or was aware of" the criminal scheme charged).

### B.     The Bulletin and the Report Are Trustworthy

In *Hines*, the Eleventh Circuit listed a non-exhaustive set of factors relevant to this Court's "trustworthiness" evaluation of evidence submitted under Rule 803(8)(A)(iii):

- **Timeliness** of the investigation;

- **Skill and experience** of the investigator;

- Whether the investigator held any sort of a **hearing**;

- The investigators' **impartiality**.

*See Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 303 (11th Cir. 1989) (applying *Beech Aircraft*); *accord In re Air Disaster at Lockerbie*, 37 F.3d at 828.

This Court must "determine primarily whether the report was compiled or prepared in a way that indicates that its conclusions can be relied upon ("reliability") . . . not on whether the court agrees with the conclusions of the report."  *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1307 (5th Cir. 1991).  DOJ bears "the burden of establishing [the] untrustworthiness" of the Bulletin and/or the Report.  *Graef v. Chem. Leaman Corp.*, 106 F.3d 112 (5th Cir. 1997);

*accord Moss*, 933 F.2d at 1305.[12]  Although it is not Mr. Weil's burden to prove EBK or

FINMA's trustworthiness, all four *Hines* factors weigh in favor of admission.

      **Timeliness**: The EBK's investigation began promptly after notification by UBS that it

was facing investigation by DOJ, proceeded jointly and in parallel with DOJ's investigation, and

concluded in late 2008, a few months before DOJ resolved its case against UBS and about six

weeks after DOJ indicted Mr. Weil.  *See* UBS Transparency Report at 38.

      **Skill and Experience**: EBK, now FINMA, is a sophisticated, independent, modern

foreign regulator, with the skill and experience to conduct an investigation like that reflected in

the Bulletin and Report.   DOJ knows this and has publicly thanked the EBK for its "diligent and

wide-ranging" efforts, including in recent cross-border tax inquiries.  Press Release, Department

of Justice, *UBS Securities Japan Co. Ltd. To Plead Guilty to Felony Wire Fraud,*

http://www.justice.gov/opa/pr/ubs-securities-japan-co-ltd-plead-guilty-felony-wire-fraud-long-

running-manipulation-libor (noting that DOJ "has required, and has greatly benefited from, a

diligent and wide-ranging cooperative effort among various enforcement agencies both in the

United States and abroad" and "acknowledg[ing] and thank[ing] [EBK]" for its assistance); *see*

*also* Statement of Asst. Att'y Gen. Kathryn Keneally, *Guilty Plea in Credit Suisse Offshore Tax*

*Evasion Case* (May 19, 2014), *available at* http://www.justice.gov/opa/speech/assistant-attorney-

general-tax-division-kathryn-keneally-speaks-press-conference (noting that the Tax Division was

"grateful for the support" of EBK).

      **Hearing**: Before issuing the Bulletin and the Report, the EBK conducted a robust and

thorough process that included numerous witness interviews and the review of tens of thousands

---

[12] Recent amendments to Rule 803(8), to be implemented at the end of 2014, codify the opponent's burden within the Rule itself.  *See* Letter from Ch. J. John Roberts to Hon. John A. Boehner, Speaker, U.S. House of Representatives, at 9 (Apr. 25, 2014) (available at: http://www.supremecourt.gov/orders/courtorders/frev14_3318.pdf).

of documents.  Witnesses who participated in these proceedings were interrogated by a panel of high-ranking enforcement officers, and were entitled to have counsel present and to present statements.  That EBK's investigation may have lacked some of the trappings of a court proceeding is irrelevant: "Most governmental investigations proceed without either evidentiary hearings or the opportunity for cross-examination."  *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 268 (3d Cir. 1983).   So long as "all interested parties," here, UBS and the witnesses interviewed, "had a chance to contribute to the report, and therefore to influence the conclusions drawn," the hearing requirement is satisfied.  *Glados, Inc. v. Reliance Ins. Co.*, 888 F.2d 1309, 1313 (11th Cir. 1987).

**Impartiality**:  FINMA was not partial to UBS or to Mr. Weil.  FINMA itself has explained: "Decisions by FINMA are determined solely by the nature of the matter and by FINMA's statutory mission and are not guided either by pressure from the government or by influence from the entities it supervises."  FINMA Statement of Position at 4.  Indeed, FINMA "admonished" UBS in this matter for "severe violations" of Swiss banking law, *see* FINMA Report at 17, and has recently and publicly chastised other leading Swiss Banks.  *See, e.g.*, Press Release, FINMA, *FINMA publishes summary report on proceedings against Credit Suisse* (May 20, 2014) (finding Credit Suisse had "violated its duty to identify, limit and monitor the risks" involved in its U.S. client-facing business and instructing Credit Suisse to implement various compliance and risk management systems).  *See* Exs. D (2014 Credit Suisse Press Release), E (UBS LIBOR press release), F (2009 Credit Suisse Press Release).

The EBK and FINMA's reports, including their factual findings with respect to Government's chief cooperators and their conduct, are accordingly admissible under Rule 803(8).

**CONCLUSION**

For the foregoing reasons, Mr. Weil respectfully requests that the Government's Motion in Limine be denied and that the FINMA Bulletin and FINMA Report be received in evidence.

Respectfully submitted,

Aaron R. Marcu, *pro hac vice*

Kimberly Zelnick, *pro hac vice*

FRESHFIELDS BRUCKHAUS DERINGER LLP

601 Lexington Avenue

New York, NY 10022

Telephone: 212.284.4954

Fax: 646.521.5754

aaron.marcu@freshfields.com

kimberly.zelnick@freshfields.com


Matthew Menchel

Adriana Riviere-Badell (30572)

KOBRE & KIM LLP

2 South Biscayne Boulevard

35th Floor

Miami, FL 33131

Telephone: 305.967.6100

Fax: 305.967.6120

matthew.menchel@kobrekim.com

adriana.riviere-badell@kobrekim.com


By: /s/ Matthew Menchel

Matthew Menchel

Florida Bar No. 12043


*Counsel for the Defendant Raoul Weil*

US2028681/19  153526-0001

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 14, 2014, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system.  I further certify that the foregoing document is

being served on all counsel of record identified on the list below via transmission of Notices of

Electronic Filing generated by CM/ECF.


Mark F. Daly
US Department of Justice
Tax Division
601 D Street NW
Room 7334
Washington, DC 20579
Telephone: 202.616.2245
mark.f.daly@usdoj.gov

Jason Poole
US Attorney's Office
Department of Justice, Tax Division
601 D. Street NW
Washington, DC 20004
jason.h.poole@usdoj.gov


By: /s/ Matthew Menchel