```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                      FT. LAUDERDALE DIVISION
 3                       Case 08-60322-CR-COHN
 4
    UNITED STATES OF AMERICA,
 5
               Plaintiff,
 6                                        FT. LAUDERDALE, FLORIDA
       vs.
 7                                        October 8, 2014
    RAOUL WEIL,
 8
               Defendant.
 9  ------------------------------------------------------------
10
11    TRANSCRIPT OF CALENDAR CALL AND MOTIONS IN LIMINE HEARING
                 BEFORE THE HONORABLE JAMES I. COHN,
12                 UNITED STATES DISTRICT JUDGE
13  APPEARANCES:
14  FOR THE GOVERNMENT:       MARK F. DALY
                              JASON POOLE
15                            GREGORY E. TORTELLA
                              Department of Justice
16                            Tax Division
                              601 D Street, N.W.
17                            Washington, D.C. 20579
18
    FOR THE DEFENDANT:        AARON R. MARCU, ESQ.
19                            KIMBERLY ZELNICK, ESQ.
                              Freshfields Bruckhaus Deringer LLP
20                            601 Lexington Avenue
                              New York, NY 10022
21                                     and
                              Matthew Menchel, Esq.
22                            Kobre & Kim LLP
                              2 South Biscayne Boulevard
23                            35th Floor
                              Miami, Fl 33131
24
25
```

```
1   REPORTED BY:              PAULINE A. STIPES, RPR-CM
                              Official United States Court Reporter
2                             Federal Courthouse
                              299 E. Broward Boulevard
3                             Ft. Lauderdale, FL  33301
                                          954-769-5496
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE COURT:  Those on the Weil case can come forward.

2    You are the balance of the morning.

3    THE COURT:  All right.  The matter before the Court is

4  United States of America versus Raoul Weil, 08 dash 60322-CR.

5    Would counsel for the respective parties please state

6  appearance.

7    MR. DALY:  Good morning, Mark Daly, Jason Poole and

8  Greg Tortella from United States Department of Justice

9  representing the United States.

10    THE COURT:  Good morning.

11    MR. MARCU:  Aaron Marcu from the Freshfields Lawfirm

12  representing Mr. Weil with my partner Kimberly Zelnick, and

13  Matthew Menchel from Kobre and Kim, LLP.

14    THE COURT:  All right.  We have a number of matters to

15  address this morning, and what I would like to do is first of

16  all take the Defendant's objection to the Government's notice

17  of evidence potentially subject to Federal Rule of Evidence

18  404(b).

19    That is docket entry 130.

20    The Government's notice is docket entry 121.

21    MR. MENCHEL:  I will be handling that, your Honor.

22    THE COURT:  Mr. Menchel.

23    MR. MENCHEL:  Thank you.

24    May it please the court.

25    THE COURT:  Yes, sir.

1          MR. MENCHEL:  Your Honor, despite the fact that the

2     notice includes conduct that dates back from 2000 up until, I

3     think, three months ago, in 2014, the first time we ever

4     received notice of that, the evidence the Government wants to

5     introduce I think was about 36 hours ago.

6          It fails in every possible way to allow the admission

7     of the evidence the Government wants in.

8          Fails notice prospective and fails so we can

9     understand what the Government is trying to admit.  It fails in

10    an admissibility prospective.

11         They say the notice they provided is not even 404(b)

12    or subject to 404(b).  I agree with them.  I am not sure what

13    it is subject to or how it is admissible.  It is not part of

14    the conspiracy which is a conspiracy to defraud U.S. Internal

15    Revenue Service, acts are in no way inextricably intertwined

16    and describes specifically what Mr. Weil did before they allege

17    what he did in this case.

18         The indictment as pertains to Mr. Weil begins as

19    Mr. Weil assuming the role, role in global wealth in 2002 and

20    goes on to 2007, this conduct falls under Mr. Weil's

21    responsibility from the time period 2000 to 2002.

22         Basically, I want to walk through the notice, your

23    Honor.  That is the most effective way to deal with it.

24         They say Mr. Weil was the head of western Europe in

25    2000 to 2002, he did the initiative, European wealth initiative

1  to set up in five different countries, several people we don't

2  know who or how, assisted other taxpayers, we don't know how or

3  what way.  Some of these people didn't pay their taxes.

4  Somehow Mr. Weil should be attributed to that because he had a

5  title and implemented a particular program that set up these

6  banks.

7          If that is the evidence, we might as well stipulate

8  and do a Rule 29 right now.  That is not competent evidence.

9          If I could walk through the issues, first, timeliness,

10  cited in our papers U.S. versus Perez-Tosta an 11th Circuit

11  case from 1994, and it says notice is largely determined on the

12  circumstances of each case.

13          The first factor is the circumstances of the

14  prosecution's own discovery --

15          THE COURT:  Let me interrupt you.

16          You, first of all, said you didn't think it was

17  404(b).

18          So, now you are arguing notice.

19          MR. MENCHEL:  It is the only rubric I could figure out

20  how this comes in.

21          If it is not 404(b), what is it?

22          THE COURT:  If it is not 404(b), is there a notice

23  requirement?

24          MR. MENCHEL:  No.

25          THE COURT:  Okay.  They have filed this in an

6

1   abundance of caution under 404(b), and say may or may not be

2   404(b).

3          If that is the way they want to proceed, I want to

4   address it.

5          THE COURT:  Okay.

6          MR. MENCHEL:  Assuming it is 404(b), that is the

7   theory.  They didn't supply sufficient notice.  Idea is you

8   don't create a trial by ambush.  Look at the prejudice suffered

9   by lack of notice.

10          We have been in the courtroom now for five or six

11  months, looking at about 4,000,000 documents over 500 witness

12  statements, just to defend the United States business.  Now

13  they want to deal with five other countries, which we haven't

14  had a single document to defend ourselves.  To say we would be

15  prejudiced to try to defend those allegations is an

16  understatement, to say the least.

17          The other factors to look at, how important it is to

18  the Government's case, never alleged it before, comes out of

19  nowhere, has nothing to do with the charges in the U.S.

20  indictment.  I don't see how it is remotely important to their

21  case.

22          What does the notice have to actually allow?

23          It must be sufficiently clear so as to permit pretrial

24  resolution of the U.S. admissibility.  That is what you and I

25  are struggling with now.  I don't know how this is admissible.

1          The notice is insufficient.

2          If we could quickly walk through it.

3          Page two of the notice, which is document 121, the

4   first point says nothing more than the fact that Mr. Weil was

5   in charge of Western Europe and instituted this initiative in

6   some countries including Germany, the banks.  Don't say who,

7   what bank, or what clients for the opening of separate

8   undeclared accounts.

9          I want to make a point because this is the theme of

10  our argument today.

11         It has been the theme of the Government's case.  They

12  say undeclared accounts as if that equals tax evasion.

13         There is nothing illegal about a undeclared account.

14  The banks didn't have any responsibility to declare anything to

15  the U.S. authorities.

16         So, they keep saying undeclared account, it must be

17  illegal.  That is a leap of inference that is huge.

18         The mere fact that somebody had an undeclared

19  account --

20         THE COURT:  So, undeclared accounts don't relate

21  strictly to U.S. Securities?

22         MR. MENCHEL:  Apparently not.  According to the

23  Government's paper, that is right.

24         Under the QI Agreement, QI Agreement said if U.S.

25  customer had a U.S. security, it had to be declared or the bank

1  had to take a withholding.

2          They carved out a huge exception.  If a U.S. customer

3  had a foreign security, there is no reporting obligation at

4  all.

5          To say undeclared is illegal flies in the face of

6  negotiations IRS had with the Swiss banks as to what they would

7  have to declare and wouldn't.

8          There is nothing illegal about any of this.

9          They talk about the fact that Italy declared tax and

10  depositors withdrew money from Swiss banks.

11          What does that have to do with Mr. Weil?  What is the

12  connection of this case or Mr. Weil?

13          In France U.S. -- the same issue.

14          In Brazil, this is where it gets off the rails.

15          November 2007, authorities arrested people.  Now we

16  are going to introduce evidence of people arrested?

17          Since when in a criminal case, when is evidence of

18  arrest, not even Mr. Weil, but somebody else, coming in as

19  admissible evidence against this man?

20          They want to bring in evidence despite the fact that

21  Mr. Weil has not worked at this bank for six years.  They want

22  to bring in evidence that in June of this year, 2014, in

23  Belgium, someone by the name of Marcel Bruhwiler has been

24  detained on suspicion, not even arrested but detained on

25  suspicion, and they want to attribute that to Mr. Weil in this

1    case.

2         This is not the kind of evidence one would expect

3    would be introduced in a criminal case.  There is no

4    specificities here.

5         For all those reasons, I think our objection should be

6    upheld and the evidence should not be admitted in this trial.

7         THE COURT:  All right.  What say the Government?

8         MR. DALY:  Your Honor, the Government provided this

9    notice largely for purposes of cross-examination to alert the

10   Defendant if the Defendant testifies or some of the witnesses

11   previously identified from Switzerland, we intended to use

12   these type matters for impeachment or cross-examination.

13        Turning to some of these matters, Mr. Weil is

14   responsible for all of these areas during the time period and

15   frame.

16        Mr. Weil contended that he didn't know.  His defense

17   has been his managers below him prevented him from ascertaining

18   misconduct that occurred within UBS.

19        All of this misconduct goes to whether it is plausible

20   to believe that defense that Mr. Weil didn't know what was

21   going on in UBS.  This goes to using cross-border banking

22   services and tax secrecy to conceal tax authorities.

23        Some of this has relevance to the case.  2002 Italian

24   amnesty would be contrasted to the compliance issue.

25        Italian customers to come in on an anonymous basis and

1   pay the tax and maintain undeclared accounts.

2        Clear from the evidence produced from the Defendants,

3   it was designed toward promoters, like UBS.  UBS stopped all

4   travel by their banker into the United States to prevent IRS

5   from uncovering the scope and nature of the cross-border

6   business.

7        The same for Brazil 2007, there are emails produced by

8   the Defendant, UBS, explaining the cross-border business.  A

9   banker is arrested in Brazil.  An email from Peter Curer sent

10  to marshal -- we should stop using encrypted laptops.  U.S. law

11  enforcement will be looking for these.  They will be directly

12  related to the instant conduct and linked in when the evidence

13  is presented.

14        THE COURT:  So you feel that the evidence is relevant

15  because it goes to Mr. Weil's knowledge?

16        MR. DALY:  That is correct, your Honor.

17        In essence, the business of this banking is to service

18  undeclared accounts, not disclose them, prevent other taxing

19  authorities to learn about concealing assets.  The same

20  replicated throughout the world.

21        Brazil is an example.  They are using exact computers

22  to conceal banking statements from the Brazilian authorities as

23  they used to conceal from the U.S. authorities.

24        MR. MENCHEL:  May I be heard, your Honor?

25        THE COURT:  Of course.

1          MR. MENCHEL:  Your Honor, the bank is not on trial

2    here.  Mr. Weil is.

3          Okay.  You can't just continue to bring in act, after

4    act, after act what others at the bank did without tying it to

5    Mr. Weil.

6          All I heard Mr. Daly say the connection is as to any

7    of this conduct he was, quote, responsible for the conduct that

8    occurred.

9          We are not going to convict somebody in the courtroom

10   because he has a title and is responsible.  All they are saying

11   is he is responsible so he must have known.  That is not

12   legally sufficient evidence.  If they have evidence that can

13   connect Mr. Weil's knowledge to some of the actions, that is

14   one thing, but to just bring out -- I don't even understand the

15   logic of the Italian amnesty.

16         What difference does it make how Italians did it and

17   the contrast between Italy and U.S?

18         What is relevant is the U.S. voluntary disclosure

19   program.

20         They are trying to heap on to him everything this bank

21   has done wrong and he had a title, therefore, he must be

22   responsible or must have known.

23         There is no end to that.  He was the number three man

24   in the bank.  You can't heap every infraction on this man.

25         MR. DALY:  Your Honor, what Mr. Menchel doesn't

1    recognize, this is a broad ranging conspiracy.

2          Mr. Weil's indicted co-conspirators are general

3    counsel and CEO of the bank, pyramid conspiracy down from the

4    head to the bankers.

5          Affirmative act was committed.  We don't have to prove

6    he specifically knew about the computers.  The fact that a drug

7    dealer in New York shoots somebody with a shotgun, the drug

8    kingpin doesn't need to know that they needed to use the

9    machinegun.  All he has to do is show he is part of the

10   conspiracy.

11         There is a scheme to defraud IRS.  Part of that is

12   concealment.  Yes, Mr. Weil may or may not have known about the

13   encrypted computers, may or may not have known that bankers

14   were told and lying to Customs officials entering the country.

15         He knew the goal was to conceal from the United

16   States.  There was this cross-border banking business, we need

17   to show that it is part of the conspiracy, not to tie it into

18   his knowledge.

19         MR. MENCHEL:  They are alleging conspiracies alleging

20   other countries not charged in this indictment.

21         This is about U.S. taxpayers evading U.S. IRS, and now

22   they want to broaden this to a world-wide conspiracy they

23   didn't charge.

24         How are we supposed to defend it?

25         THE COURT:  The indictment relates solely to

1  defrauding the U.S., and you are saying that, since Weil was in

2  charge of wealth management, that he supervised all of these

3  operations?

4          MR. DALY:  These would have come under his rubric,

5  your Honor, that is correct.  It was a different scheme in

6  these countries.

7          If you are looking at a plan or scheme, they are using

8  the same method, same tactics in those other countries, and it

9  shows knowledge, purpose, it shows intent.

10         THE COURT:  Well, let's go back to 404(b).

11         This is 404(b) evidence.

12         MR. DALY:  The Government doesn't believe that it

13  actually is.  With the exception of the Brazilian aspect and

14  Italian amnesty, the Government doesn't intend to use this as

15  404(b).

16         The things relevant to France and Germany would be

17  used --

18         THE COURT:  I don't understand why it is not 404(b).

19         It is conduct not charged in the indictment, and it is

20  evidence of other wrongs.

21         I have to disagree with Mr. Menchel although it might

22  enure to your client's benefit.

23         You argue that it is inextricably intertwined, but is

24  it inextricably intertwined with the charged conduct?

25         MR. DALY:  Your Honor, it is not the fact that we are

1    trying to prove it.  It is the reaction they are trying to

2    take, particularly, with regards to Brazil.

3              THE COURT:  Is it evidence of other wrongs?

4    Obviously, it is.

5              MR. DALY:  It is -- some of it is evidence of other

6    wrong.  Some of it is to show highlights of the U.S. and

7    reaction.

8              We have given sufficient notice.  It is merely to show

9    the action in the United States, particularly, to Brazil and

10   Italy.

11             THE COURT:  It is evidence of other wrongs that are

12   not charged in the indictment and the Government is offering it

13   to show knowledge under 404(b)(2), then we get to the issue of

14   whether or not reasonable notice has been recorded.

15             MR. DALY:  Your Honor, because the documents include

16   evidence regarding the amnesty and particularly regarding

17   Brazil that there has been -- they were aware of these.

18             In regards to the others, there are numerous news

19   articles.  This is reported throughout the press.

20             I think it is still possible to bring this up on

21   cross-examination which is one of the reasons we brought this

22   up, not to introduce it as direct but on cross-examination we

23   intended to elicit testimony about this.

24             THE COURT:  Let me address this issue.

25             If the Court grants any motion in limine, the Court

1  grants the motion subject to the movant not opening the door.

2        So, even if I grant this motion, it does not mean that

3  the Government will not be permitted to introduce the evidence

4  at some point in the trial; but, the Government needs to

5  proffer outside the presence of the jury as to whether or not

6  the door has been sufficiently opened for introduction of the

7  evidence.

8        But I think, at this point in time, with respect to

9  this motion in limine, the Court finds that the evidence

10  noticed is 404(b), and that reasonable notice has not been

11  provided.

12        So the motion will be granted, but subject to Mr. Weil

13  not opening the door.

14        Okay.

15        Let's see.  Give me just a second.

16        The next motion is the Defendant's motion in limine to

17  exclude any testimony or acts that occurred prior to 2000.

18        That is docket entry 127.  The Government's response

19  is 129.

20        MR. MENCHEL:  That is me again, your Honor.

21        THE COURT:  All right.  Mr. Menchel.

22        MR. MENCHEL:  Your Honor, just to be clear because it

23  is relevant for the purpose of this motion, as well.

24        I agree with your Honor.  What I was saying is, it

25  doesn't fit the 404(b) exceptions that would allow it to be

 1  admissible.  I am with you on that point.

 2          THE COURT:  I got you, but I do find that it -- I

 3  think it would be relevant to knowledge, but I think in this

 4  instance we are ultimately going to have to address 403, as to

 5  whether or not the prejudicial effect substantially outweighs

 6  the probative value, but we are not there yet.  Defense must

 7  first open the door and Mr. Daly can make his proffer outside

 8  the presence of the jury and, at that time, the Court will

 9  address the 403 issue.

10          MR. MENCHEL:  Very well, your Honor.

11          I think similar issue arises in the pre-2000 conduct.

12          The first overt act alleged in this indictment is in

13  July of 2000.

14          This conspiracy involves UBS, Mr. Weil and others at

15  UBS.

16          Not the predecessor bank SBC, which is the evidence

17  they want to introduce against Mr. Weil.

18          Again, the Government doesn't characterize it as

19  404(b), but they want it anyway, and their rational, they say

20  this is evidence Mr. Weil gained from his prior experience at

21  SBC.

22          Like, Judge, you take an accounting class and learn

23  about tax deductions, harmless stuff.  That is not what it is.

24  It is extremely prejudicial evidence they want to introduce

25  suggesting that Mr. Weil is aware of things going wrong in a

1  predecessor bank.

2          Let me give you an example --

3          THE COURT:  Aren't these conversations between

4  Mr. Weil and Mr. Schumacher that predated 2000.  Mr. Schumacher

5  is informing Mr. Weil of wrongs, but is there evidence that

6  Mr. Weil was in any way complicit at that point in time?

7          MR. MENCHEL:  That is exactly what I wanted to say.

8          THE COURT:  Okay.

9          MR. MENCHEL:  Evidence provided to us basically says

10  this:

11          First, that Mr. Weil in 1996, four years prior to the

12  allegations in this indictment, Mr. Weil received a memo from

13  an inhouse lawyer at SBC that the bank was violating SEC

14  broker-dealer illustration claims.

15          Now, Mr. Schumacher tells that to Mr. Weil.

16          No evidence that he was complicit in the violation of

17  that law and, by the way, if he was, sort of a so what?

18  Because this is a tax evasion case, not whether or not

19  broker-dealer laws were violated.

20          He says the following things, again coming from his

21  MOI.  In 1996 and '97, he estimated 75 to 80 percent of all

22  client money in Zurich was being withheld from the account

23  holders of respective Governments.

24          Let's put aside how he possibly could know that.

25  Okay.  Because I don't know how anybody at the bank could tell

1    anybody how many of its taxpayers were not reporting the income

2    in those banks.

3          How does he know?  Let's put that aside for a moment.

4          What has Mr. Weil done?  Does it show he was complicit

5    in 75 to 80 percent of the account holders not to declare

6    income to the respective Governments?  No.  He just says it.

7    Okay.

8          He then says that he told Mr. Weil that 95 percent of

9    the U.S. clients in his desk were undeclared.  This goes back

10   to the point I was making earlier.

11         So what?

12         It is another example how they are conflating

13   undeclared being illegal.  It is a Swiss Bank.  They sold Swiss

14   Bank secrecy.  That is not a secret in the case.  The jury is

15   going to hear that.

16         1996 there was no requirement on Mr. Weil or anybody

17   at SBC to declare anything to the United States Government.

18         What they seem to be doing, judge, is conflating the

19   taxpayer's obligation to declare its income to United States

20   Government and saying that belongs to the bank, SBC, and

21   Mr. Weil.  It didn't.  There is no requirement back then to do

22   anything.

23         The QI didn't come into place until five years later.

24   This is saying things to Mr. Weil that sounds bad and

25   incriminating.  In no way incriminating Mr. Weil and highly

1   prejudicial, probative of nothing, suffers from the exact same

2   notice issues.

3           We are just learning about this now and the Government

4   says, by the way, we only just spoke to Mr. Schumacher now.

5           THE COURT:  Let me ask you this:  If it is not

6   evidence of another wrong by Mr. Weil, then how is it 404(b)?

7           MR. MENCHEL:  This is how you and I go round and

8   round.  I don't think it is relevant in the first instance.

9           The only thing I can analyze this is 404(b).  It is

10  extrinsic.  I don't know what it is.

11          Irrelevant, prejudicial gunk, where they want to dirty

12  the man up by saying I told Raoul Weil that 75, 80 percent of

13  our clients don't pay their taxes.  Has nothing to do with the

14  charges in this case.

15          I don't know what label to put on these things.

16          THE COURT:  The Government is saying it goes to prove

17  the element of knowledge.

18          MR. MENCHEL:  Judge, the Government is saying it goes

19  to show he is not a babe-in-the-woods banker.  We stipulate,

20  number three man at UBS was a sophisticated banker.

21          That is not the issue.  The issue was whether, during

22  the time period alleged, Mr. Weil had knowledge of and engaged

23  in assisting U.S. taxpayers to hide U.S. income from the U.S.

24  Government.  This is about securities violations and undeclared

25  accounts.

1          THE COURT:  Yes, but isn't it, as I understand from

2    reading all these submissions, that it is Mr. Weil's position

3    that any violations that occurred were by lower level

4    employees, and he had no knowledge, no knowledge of what was

5    going on.

6          MR. MENCHEL:  That is exactly right.

7          THE COURT:  So the Government is trying to show, as

8    back as far as 1996, he was aware of what was going on in the

9    bank.

10          MR. MENCHEL:  Aware of what?

11          One, they want to introduce evidence of securities

12    violations.  This is not a securities case.

13          It is bad enough they want to do it in the case

14    alleged.  I will deal with that as part of another motion.  Now

15    they want to bring out a predecessor bank may have been

16    violating broker-dealer laws.  And want to bring out the

17    accounts were undeclared.  We stipulate the bank had undeclared

18    accounts.

19          It is prejudicial, dirties the man up.

20          How are we supposed to defend against it?  This took

21    place in 1996, '97, no documents from the time frame.  We are

22    here in 2014.

23          Case law is clear, one of the things your Honor has to

24    consider is, is defense in a position to defend itself?

25          Schumacher is going to get on the stand and say it.

 1    How do we respond to it?  We are a week before trial.  These

 2    memorandums of interviews were turned over about three weeks

 3    ago ago.  Now we have to defend against a whole other bank

 4    situation involving not tax laws but securities violations and

 5    the fact that the Mr. Weil knew the bank had undeclared

 6    accounts.

 7               That is not in dispute in this case.

 8               What is in dispute is, did Mr. Weil have knowledge

 9    that the bankers below him at UBS were setting up structures,

10    intentionally moving them out of securities that have to be

11    declared and putting them in securities that do not?

12               That is not relevant in this case.  This has nothing

13    to do with this case.  You let this in, you are letting in

14    prejudicial evidence.

15               If Mr. Weil says I didn't know there were undeclared

16    accounts, they could have at it.

17               I can assure you that is not the man's testimony.

18               The same analysis before, this sounds bad, bring out

19    securities violation from another bank almost two decades ago

20    and we are supposed to defend against that?  It is impossible.

21               THE COURT:  Thank you.

22               MR. MENCHEL:  Thank you, your Honor.

23               THE COURT:  All right.  Mr. Poole.

24               MR. POOLE:  Thank you, your Honor.

25               I think everything Mr. Menchel has just said, for the

1  most part, is an excellent argument why this is not Rule 404(b)

2  evidence.

3          As the Court indicated, this is not bad acts by

4  Mr. Weil.  This is evidence of information that he was informed

5  about by Mr. Schumacher.  It goes directly to knowledge.  It is

6  as we analogize in our papers similar to him learning

7  information from, for instance, in an accounting class.

8          If they are really serious about it, we are almost

9  willing to accept the stipulation Mr. Weil is a sophisticated

10  banker with deep knowledge of U.S. tax laws, securities laws

11  and undeclared accounts.

12          This is certainly evidence that United States should

13  be entitled to bring out.  This is evidence of knowledge.  This

14  is as Mr. Menchel put it, he is not a babe in the woods.  He is

15  not a spring chicken.  That is important evidence especially in

16  a case like this involving criminal tax conspiracy,

17  cross-border banking from Switzerland into the United States to

18  service accounts for thousands of U.S. clients.

19          Mr. Weil's knowledge and level of experience, his

20  level of sophistication are surely relevant facts for the jury

21  to consider and a back drop for the jury to evaluate all of the

22  other testimony and evidence that would be put forward in this

23  case how Mr. Weil would understand and react to that.

24          If you pull in someone who has a sixth grade

25  education, is 22 years old and knows nothing about finances,

1    what they are learning in a meeting, they are going to process

2    that differently than someone who has a certain level of

3    sophistication that someone who heard before about the issues

4    that are going to be raised and are identical to the issues in

5    the indictment and will be described during the course of the

6    Government's presentation all of this conduct after 2000.

7              It is relevant whether Mr. Weil has prior knowledge

8    about this kind of activity and issues when this comes up

9    during the course of the indictment's time frame.

10             It is not 404(b) evidence, not about whether Mr. Weil

11   did something wrong, just about what kind of person is he?

12   What sort of knowledge does he have coming into this?

13             Mr. Menchel makes a big deal about this being

14   undeclared accounts.  Of course, there are undeclared accounts

15   in Switzerland.

16             Defense wants to turn this into a QI agreement.  This

17   will be part of the case.

18             The law that required regulated undeclared accounts,

19   the crime charged is 18, United States Code, 371, conspiring to

20   defraud United States, an undeclared account standing alone

21   outside the QI may not be disclosed to the IRS.

22             The question is, did the conspirators and Mr. Weil,

23   those he worked with and under him and who worked for him, were

24   they aware of the fact that the accounts, Swiss Bank secrecy

25   was hiding this from the U.S. were part of the conspiracy to

1  help conceal this from the IRS and help the taxpayers avoid

2  their tax obligations, help them commit tax evasion.

3          That is what this case is about, Mr. Weil's knowledge

4  about the general issues will show during the course of the

5  conspiracy, what kind of person he is, how does he understand

6  that, is he someone who has no experience or someone who has

7  experience of these issues?

8          In addition, because this is not 404(b), notice is not

9  an issue to the extent --

10          THE COURT:  Let me ask you this:  When Mr. Schumacher

11  advised Mr. Weil of the undeclared accounts and other wrongs at

12  UBS at the time, was Mr. Weil under any duty to report this or

13  take any type of action?

14          MR. POOLE:  At that time, there was no affirmative

15  duty for him to report or voluntarily come forward with that

16  information.

17          Obviously, if he was assisting and helping conspire or

18  using those accounts to help violate U.S. tax laws, that would

19  be an issue.

20          To the Court's specific question, is he simply aware

21  of that fact, was there an obligation for him to do anything?

22          No, there is no legal obligation on him to communicate

23  that.

24          THE COURT:  That communication from Schumacher to Weil

25  does not evidence any criminality on the part of Weil.

1        MR. POOLE:  No.  It is not an attempt to show bad act.

2  It is attempt to show Mr. Weil was aware of these issues, had

3  been informed about them.

4        In fact, Mr. Schumacher could have talked about an

5  entirely different bank, could have been talking about how

6  other people use undeclared accounts, what securities laws are

7  in general.

8        The question is not did Mr. Weil do something wrong or

9  did Mr. Schumacher do something wrong?  The question is did

10  Mr. Weil gain some level of his knowledge at some point in time

11  prior to the additional evidence we will show later?  Does he

12  come in with this knowledge or does he come in, as Mr. Menchel

13  put it, as a babe in the woods?

14        We don't think it is 404(b).  We think it is relevant

15  to showing the knowledge in the time frame of the indictment.

16        It is clear in the MOI's, it is clear they learned

17  about it after.  Many cases, co-conspirators proffer with the

18  Government shortly before trial and talk about new facts.

19        Mr. Menchel discussed this would prejudice the

20  Defense.  We are talking not about detailed discussions about

21  many people in the bank.

22        We are not talking about meetings, conferences.

23        We are talking about discussions, confrontations,

24  one-on-one between Mr. Schumacher and Mr. Weil.

25        That is going to be the kind of information they can

1  glean on that, the same they could glean years ago on that.

2          A one-on-one conversation, page 3, page 6,

3  cross-examination kind of arguments you make, someone

4  cooperating, witness talking about a one-on-one conversation,

5  they are well aware how to rebut that kind of evidence.

6          MR. MENCHEL:  May I?

7          THE COURT:  Yes.

8          MR. MENCHEL:  I think the Government is flipping this

9  completely on its head.

10          What they are going to say is, we are going to

11  introduce evidence of all of these bad acts but because

12  Mr. Weil isn't involved in them, it is not prejudice.  It would

13  be far more relevant if he were involved in it.

14          They want to present all these dirty facts.

15          Why are they asking that?  Why are they going to

16  elicit that testimony?

17          They say this is coming.  They are getting into what

18  kind of a person he is.  That is character to me.  That is what

19  404(b) prohibits.

20          They are trying to argue the fact that they can't

21  connect it to Mr. Weil makes it less.

22          The fact it can't be against Mr. Weil makes it more

23  prejudicial.  He just did it, knew about securities law

24  violations, not saying he has an obligation but he knew.

25          There is not going to be a debate about broker-dealer

1  laws.  That is not the issue before this Court and jury.

2       We are going to let in highly prejudicial evidence --

3       With all respect, this is different than a cooperator

4  flipping at the last minute.  He is talking about what happened

5  five years prior, not during the alleged time period, going

6  back in a different bank we have been given no notice of, and

7  we don't have an opportunity to prepare for.

8       The man has been under indictment for six years.  They

9  just decided to reach out to Mr. Schumacher, probably because

10 they realize their case has significant holes.

11      THE COURT:  If it is not 404(b) evidence, is there a

12 notice requirment?

13      MR. MENCHEL:  There is no notice requirement under

14 404(b), but have we been prejudiced by introduction of material

15 we have never seen before?  Absolutely.  This is not in any of

16 the discovery we have in the case.  We just learned about this

17 three weeks ago.  You have to do a 403 analysis.  Why is this

18 relevant that he was told another predecessor bank was engaged

19 in securities violations?  What is that probative of, that the

20 bank had undeclared accounts?

21      I am telling you, if there is an issue about knowledge

22 of undeclared accounts, you can reconsider this issue.

23      That is not the Defense.  This is active assistance to

24 U.S. taxpayers setting up accounts they knew would not be

25 declared.

1        This is a different fact pattern.

2        We have to introduce evidence to show the bank was

3  under no obligation to declare.  I don't know how to address

4  the securities laws issue.

5        He says it is a conversation.  That makes it

6  difficult.  We don't have diaries, documents.  They have

7  conduct they want to introduce that they don't need.  They have

8  been preparing to try this case for six years.

9        THE COURT:  The Government first learned of this

10  pre-indictment conversation in August?

11        MR. TORTELLA:  Correct, during our first actual

12  interview in person with Mr. Schumacher which was in late

13  August.

14        THE COURT:  When was that information provided to

15  Mr. Weil?

16        MR. TORTELLA:  It was provided on September 15th when

17  the MOI's were finally completed and those were completed on

18  September 15th as part of discovery.

19        They were warned of the discovery.  This is not

20  something we learned in December 2013.  We learned about this

21  in August and produced in September when the meetings were

22  completed and we turned it over.

23        MR. MENCHEL:  Your Honor, Mr. Schumacher says Raoul

24  Weil was his boss.  Mr. Schumacher said I told Weil about

25  securities violations and taxpayers who did not declare, and he

1  says Raoul Weil did nothing.  Raoul Weil approved and accepted

2  this kind of conduct.  That is a bad act.  They are saying we

3  are not going to say he did it but, basically, they are saying

4  he did it.

5          The fact that he only met with Mr. Schumacher now, he

6  did proffer back in 2013 and, apparently, they weren't

7  interested until they learned Mr. Weil wanted to go to trial.

8          It is far more prejudicial than probative.

9          Not an issue whether the bank had undeclared accounts.

10 The issue about securities violations is not before this jury.

11         Of a predecessor bank, no less.

12         THE COURT:  Mr. Poole, why would this not be 404(b)

13 and subject to reasonable notice?

14         MR. POOLE:  Your Honor, we believe it is not 404(b)

15 because it is not related to bad acts of Mr. Weil.  We cited in

16 our response to the motion in limine the Stirling and Morano

17 case, Rule 404(b), the 11th Circuit does look at prior bad acts

18 of the Defendant.

19         THE COURT:  But Mr. Weil at the time of the

20 communication was superior to Mr. Schumacher, correct?

21         MR. POOLE:  That is correct.

22         THE COURT:  Mr. Schumacher is reporting a violation to

23 his superior and superior does nothing.

24         MR. POOLE:  That is correct, your Honor.

25         THE COURT:  That seems to be a bad act on the part of

1  Mr. Weil.

2          MR. TORTELLA:  The issue here again is he is reporting

3  knowledge about what is going on and about other potential

4  violations to Mr. Weil.

5          We are using it to show that he is aware of these

6  types of issues, and not whether he, at this time, had any duty

7  in that specific instance to do anything about it but whether

8  he was aware of these issues.

9          To the extent that there is notice required, this was

10  produced shortly after the Government itself first learned of

11  it.  It is about a one-on-one conversation between a witness

12  that if this evidence comes in, it comes from the witness' own

13  mind.  They will have an opportunity to cross-examine, when it

14  happened, how good his memory is, motives for doing it, whether

15  he was receiving benefits for this, whether he has an axe to

16  grind.

17          All of this is going to be fair game against

18  Mr. Schumacher if he takes the stand and testifies about this.

19          Not when we have a meeting with five participants and

20  only one participant will come in.

21          THE COURT:  All right.  I think this was a prior bad

22  act and it is subject to Rule 404(b) notice requirement.

23          This indictment was returned in 2008.  This

24  information was provided to Mr. Weil approximately one month

25  before trial.

1           The Court finds that is not reasonable notice.  I am

2  going to grant the motion in limine, but, once again, if the

3  Government feels that the door has been opened regarding this

4  issue of knowledge on the part of Mr. Weil, proffer the

5  testimony outside the presence of the jury, and the Court will

6  revisit the matter.

7           MR. POOLE:  Understood, your Honor.

8           THE COURT:  All right.  This one may not be short.

9           Why don't we take a brief recess now and we will pick

10  up with the Deemed Sales Rule.

11           We will take 10 minutes.

12           (Thereupon, a short recess was taken.)

13           THE COURT:  All right.  The record will reflect

14  Mr. Weil is present represented by counsel.

15           Okay.  This is Mr. Weil's motion to preclude evidence

16  and argument concerning alleged violations of the Deemed Sales

17  Rules.

18           Docket entry 119, the Government's response is docket

19  entry 133.

20           So, we will hear from the Defense first, Ms. Zelnick.

21           MS. ZELNICK:  Good morning, your Honor.

22           THE COURT:  Good morning.

23           MS. ZELNICK:  The Defense is seeking to exclude

24  evidence or argument regarding violations of the Deemed Sales

25  Rules.

1          Your Honor, it is a rather unfortunate situation

2   today.  It would seem that the Government misunderstood its own

3   agreement at the time it charged Mr. Weil in 2008.

4          The indictment was, in part, based on an incorrect

5   understanding of the QI Agreement.  The Government now realizes

6   they have a problem and they are trying to get the evidence in

7   through an alternative theory.

8          We submitted the Declaration of John Staples who over

9   saw the QI drafting, as well as, implementation.  Could not be

10  clearer.  Deemed Sales Rules did not apply to foreign

11  securities.

12         The Deemed Sales Rule is a QI Agreement and is limited

13  to the application to U.S. Securities.

14         That is paragraph 17 of Mr. Staples' Declaration.

15  Intent of the QI Agreement was always to exclude sales of

16  foreign securities from the ambit what a bank was required to

17  report under the QI Agreement.

18         There are a lot of reasons for this, including, the

19  bank did not have the technical capacity to do that kind of

20  reporting.  IRS was well aware of it.  It wasn't in the

21  predecessor agreement the U.S. had with other banking

22  associations.

23         I would be happy to walk your Honor through that if

24  that would be helpful, but I think what is more important for

25  today is that what the Government is now trying to do since

1  they realize that the deemed sales was never applied to sales

2  of foreign securities.

3          Just to be clear, the accounts we are talking about

4  relate to the undeclared U.S. customer accounts.  These were

5  accounts where there were no U.S. securities in the accounts;

6  so, by definition, conduct with respect to these -- none of

7  this would involve a U.S. security, only involved foreign

8  securities.

9          The Government is trying to introduce what it can't do

10  affirmatively by putting it in the mouths of witnesses and

11  documents.

12          Your Honor, reading the Government's papers makes very

13  clear how confusing this evidence could be.

14          The Government doesn't affirmatively argue that the

15  deemed sales was applied to foreign security sales but they

16  proceed to go through documents that say little else than that

17  the Deemed Sales Rules apply to foreign securities.

18          We have supplied a handful of the ones that have a

19  problem.  There are dozens.

20          This would be highly prejudicial, incredibly

21  misleading.

22          One of the allegations here, the means and method by

23  which Mr. Weil conspired IRS was representing the bank was in

24  compliance with the QI Agreement when he knew it wasn't to the

25  IRS.

1           It is highly prejudicial to the introduction of

2   evidence and witness testimony that stands for the proposition

3   that the bank was violating the QI Agreement even though it

4   wasn't.

5           The Government does not refer to the cases we cite in

6   our brief.

7           One I would like to call your attention to, United

8   States versus Ali, 2008 Eastern District of New York case,

9   similar to the facts involved here, also involved an unlicensed

10  business, unlicensed money transmitting business, and it was

11  also a Section 371 conspiracy.

12          The charge was that the defendants had conspired to

13  evade the monetary instrument requirement.  Certain of the

14  instruments that were at issue, the checks, did not satisfy the

15  definition of monetary instruments and, consequently, were not

16  subject to any reporting requirements.

17          The Government argued the checks should be admissible

18  because it was proof of the intention of the Defendant to evade

19  the reporting requirements.  There they had evidence, taped

20  conversations and witness statements of the defendants, which

21  is different from here, where the defendant, apparently,

22  believes that these instruments were subject to the reporting

23  requirements and were clearly trying to evade these

24  requirements; and, as here, there is also evidence that there

25  were other instruments that would have -- that also would prove

1  a conspiracy through other ways.

2          Judge Vitaliano rejected this approach.  He said the

3  evidence was inadmissible because it was a pure impossibility.

4          Since the conduct underlying 371 conspiracy wasn't a

5  crime, no conspiracy could exist.

6          That is what is happening here.

7          It was not a crime to shoot a deer.

8          It doesn't matter if people are walking around and

9  having secret conversations and trying to figure out how to

10  shoot the deer, it was never a violation of law.

11          The Government doesn't cite any cases in their papers

12  about legal impossibility.  They refer to Kline, failure to

13  file currency transaction reports which were reports that were

14  actually required to be filed.  Kline was not a case about

15  legal impossibility.

16          The Government says in the papers, also, the reason

17  why this is relevant because the bank was misrepresenting

18  deemed sales to the IRS.

19          Your Honor, the bank didn't report any deemed sales or

20  sales of foreign securities.  They weren't required to.  That

21  is not a misrepresentation.

22          They are saying we are attempting to inject confusion

23  by going into the substantive and technical tax laws.

24          Your Honor, I would suggest it is the Government who

25  is trying to inject confusion here.

1      This would be incredibly misleading, irrefutably

2  confusing.  In Kline, Judge Kaplan noted if an experienced AUSA

3  could not get it right, the jurors' confusion is obvious.

4      The Government here, putting on evidence and testimony

5  that says the bank was violating a QI Agreement in a way that

6  was never in violation of the QI Agreement, would lead the jury

7  to conclude that they were violating the QI Agreement.

8      THE COURT:  Do deemed sales include the sales of U.S.

9  securities?

10      MS. ZELNICK:  They do but this agreement didn't have

11  any foreign securities.

12      The QI Agreement says 244(b)(2), Mr. Staples talks

13  about it in paragraph 17 of his declaration, and limited to the

14  U.S. securities.

15      The bank didn't have obligation to report all

16  securities, only various circumstances, and that was one of

17  them.  There was never an obligation to report foreign

18  securities.  What bankers or lawyers believed about the QI

19  Agreement just isn't relevant.

20      I would note the Government has cherry picked a few

21  documents for the exhibits they attach to their motion which do

22  not paint a full picture of what decision -- decision making

23  process that happened at the bank that led to the bank drawing

24  a line in the sand about what bankers could or could not do.

25      Doesn't matter, it is not relevant.  It would mislead

1    the jury.  These are technical issues.  The jury is going to

2    struggle to understand what the substantive law is without

3    injecting all this confusion about what it isn't.

4           We submit this should all be excluded, your Honor.

5           THE COURT:  All right.

6           Mr. Poole.

7           MR. POOLE:  Thank you, your Honor.  The deemed sales

8    issue and UBS and executives' and managers' response to the

9    issues is one of the central aspects of this case.

10          As we stated in our papers, the Defense is trying to

11   inject an element of confusion.

12          This is not a question of the tax law.  It is a

13   question of what UBS internally decided and what they did after

14   making that decision.

15          We could put aside about what the QI was going to

16   require was right or wrong.  QI made the decision they thought

17   the deemed sales applied, and that was going to be something

18   subject to an external audit.

19          Again, to analogize it to other circumstances, this

20   could be a decision whether correct or mistaken about anything.

21          The question is, was the decision --

22          THE COURT:  Let me stop you.  I want to make sure I

23   understand this correctly.

24          The Deemed Sales Rule related solely to foreign

25   securities?

38

1    MR. POOLE:  To make a couple things clear, there is a

2   portion of deemed sales that relates to U.S. securities, and

3   there were U.S. securities that were also in -- not really

4   discussed in these papers, the structured accounts.  These were

5   accounts that were put in the names of entities in order to

6   conceal beneficial owners.  Those accounts continued to

7   maintain U.S. securities.

8        In those circumstances, there would be Deemed Sales

9   Rules.

10   THE COURT:  But these accounts that you are referring

11  to did not contain solely U.S. securities, correct?  They also

12  contained foreign securities?

13   MR. POOLE:  The structured accounts?

14   THE COURT:  The accounts you are referring to.

15   MR. POOLE:  The accounts in the main deemed sales

16  issue were the bulk of the U.S. client accounts which contained

17  non-U.S., they contained foreign securities, and only in

18  foreign securities.  That was the majority of the U.S. client

19  accounts at UBS.

20   THE COURT:  Did the Deemed Sales Rule apply to those

21  accounts?

22   MR. POOLE:  Whether the rule applied, it is a

23  technical question whether that rule applied.  That is why we

24  are not pressing it now as a substantive ground for liability.

25        UBS clearly thought it did and made the decision to

1    treat it as if it applied.  The particular thought --

2              THE COURT:  You are saying UBS was mistaken in its

3    interpretation.

4              MR. POOLE:  I don't think they were mistaken.  I don't

5    think it is an issue we need to go into.

6              They made that decision.  They believed there was

7    going to be an audit.  They believed IRS was going to be able

8    to get information on this and, so, they took measures to

9    protect the IRS from learning information.

10             It was a belief inside UBS and in the emails and other

11   documents we provided in our response, and also the documents

12   throughout that were presented as exhibits to the defense

13   motion, as well, executives, managers, everyone thought this

14   was something they needed to deal with.

15             That was an order that came down from the group

16   executive board that they needed to treat this as part of the

17   audit.

18             THE COURT:  So they thought they needed to deal with

19   it but, in actuality, they didn't.

20             MR. POOLE:  In actuality they may not have.

21             THE COURT:  Isn't this going to be confusing to the

22   jury?

23             MR. POOLE:  No.  The question is, how did they react

24   to that?

25             I would analogize it to they knew the IRS was coming,

1  maybe IRS was not coming.

2          The issue is whether they were using this to conceal

3  an illegal business?  They are taking steps to conceal their

4  illegal business because they believe IRS is going to get a

5  glimpse of that business through the course of the audit.

6          Imagine a company that thinks IRS is going to have a

7  chance to look at its books so it starts shredding documents.

8  Turns out there isn't going to be an audit but they took

9  efforts to shred that to protect themselves and the business

10 they were running.

11         That is what happened here.

12         There is a belief, widespread, throughout UBS mandated

13 from the top down very clear that they understood that this was

14 something they needed to look at, that this was something that

15 was going to be audited which meant that unique in Swiss

16 banking history, external auditors who report to IRS would have

17 a chance to actually examine UBS' books, to go through its

18 documents.

19         Because they fear and believe that that was going to

20 happen, the conspirators took steps to avoid the requirements

21 of the rule to try to circumvent that audit process in order to

22 shield their illegal business and in order to conceal

23 information from the IRS.

24         Whether they were legally required to withhold deemed

25 sales was beside the point.

1         They thought something was going to happen.  We are
2    not going to get into the technicalities of it, the tax law of
3    it, we don't think that is relevant.  They thought this was
4    going to happen.
5         THE COURT:  How do you propose to present that in a
6    cogent fashion so that 12 lay people can understand it?
7         MR. POOLE:  Very simply, multiple documents and
8    multiple witnesses are going to say we were told this is what
9    was going to happen during the audit.  We were told this is the
10   kind of thing they get to look at because of the Deemed Sales
11   Rule.  This could be a management decision for a completely --
12   reasons unrelated to tax law.
13        The issue is, they thought there would be a glimpse
14   into UBS' books, and there were actions taken to make sure that
15   glimpse didn't turn up the business of using undeclared
16   accounts to assist U.S. taxpayers in evading tax obligations.
17        It is an attempt to conceal that business in response
18   to their belief about what was going to happen.
19        It is very simple --
20        THE COURT:  What, again, did they believe was going to
21   happen?
22        MR. POOLE:  They believed an external auditor as part
23   of the QI was going to get to audit the books for the Deemed
24   Sales Rules, and get to see all of the transactions they were
25   making in foreign securities.

 1          They believed that if they, in fact, withheld taxes,

 2    as they thought they were supposed to do, that that would

 3    disclose to IRS they had many of the undisclosed accounts they

 4    were trying to conceal from the IRS.

 5          The ultimate issue is not whether they thought these

 6    people were right.  They thought it was and they acted that

 7    way.

 8          We don't need to get into how they reached that

 9    conclusion, not what lawyers' thought processes were.  They

10    thought it was going to happen and they reacted to it.

11          THE COURT:  This external auditor, by whom was the

12    auditor employed?

13          MR. POOLE:  The way the process worked, as part of the

14    QI Agreement, there was a fear IRS would get to audit it.

15          It was worked out that UBS would be allowed as part of

16    the QI Agreement contract an external audit who, according to

17    set rules, conduct an audit of UBS and issue an audit report

18    that would go to the IRS.

19          And that was the fear.

20          It is not a question of whether deemed sales were

21    illegal.  It is a question of UBS internally thought that there

22    was going to be an audit and that the audit could uncover their

23    efforts to assist U.S. taxpayers.

24          THE COURT:  So, in a nutshell, these were actions

25    taken to conceal records from an external audit?

```
1              MR. POOLE:  Correct, your Honor.

2              UBS understood the whole purpose of the external audit

3    was that information would go to the IRS, external auditor,

4    Swiss banking secrecy, they allowed an external audit to be the

5    entity that actually looks into the books, approved external

6    auditor, approved by IRS who conducts the audit and report to

7    IRS.

8              UBS was aware the external auditor does report

9    findings to IRS.

10             THE COURT:  If that is the case, do you need to get

11   into the law or regulations regarding deemed sales?

12             MR. POOLE:  Absolutely not.  That is why we are

13   arguing Defense is attempting to inject confusion.

14             We have no intent to discuss deemed sales laws or

15   regulations.  It is solely within UBS.  UBS, after looking at

16   this issue, made the decision, and the issue here is that UBS

17   made that decision, realized, thought there was going to be an

18   audit on this issue and, therefore, took steps to circumvent

19   that.

20             THE COURT:  Okay.  And the decision you are referring

21   to was a decision to in some way conceal records?

22             MR. POOLE:  A couple things, records and information

23   from IRS, and also to conceal in particular the underlying

24   business that was assisting U.S. taxpayers in thwarting their

25   obligations.
```

1          Acts of concealment because of this belief that

2    information could be disclosed, they attempted to conceal and

3    circumvent the audit.

4          MS. ZELNICK:  Judge, may I respond?

5          THE COURT:  Yes, absolutely.

6          MS. ZELNICK:  Your Honor, this is just a way of trying

7    to get in through the back door what they can't get through the

8    front door.

9          Let me address it.

10         What they are alleging is that the bank took steps to

11   avoid having a requirement to report, so, not that they were

12   falsifying records or that they were concealing something.

13         They couldn't report on foreign sales securities, they

14   couldn't do it.

15         Mr. Staples said that in his declaration.

16         They took steps to insure that they wouldn't trigger

17   the rule that wouldn't have required withholding or reporting.

18         What they are purporting to do on the basis of that,

19   and it is fairly confusing, is introduce, what they already

20   said, multiple documents, multiple witnesses who are going to

21   testify to all of this conduct that never violated the

22   agreement.

23         This would be incredibly prejudicial.  It would be

24   misleading.  The jury is not going to understand -- they don't

25   want to get into the technical law because they are wrong about

1    the technical law.  The law is relevant to this.  It is

2    relevant whether or not there was an actual violation of the QI

3    Agreement.  They are going to be putting on documents and

4    witnesses that would suggest that there were violations of the

5    QI Agreement which there is evidence that does not demonstrate

6    this.  That is a legal impossibility.

7          It was an attempt to evade monetary reporting

8    requirements, the defendants thought they believed the monetary

9    instruments would have been required reporting.  They were

10   wrong; and, so, it didn't matter that they had these

11   conspiratorial conversations on the phone.  It didn't matter

12   that they believed that this was against the law.  It wasn't

13   against the law.  This was never required by the QI Agreement.

14         And, your Honor, the Government hasn't addressed

15   prejudice.  They are trying to present this is happening in a

16   vacuum.  The jury is not going to hear about all of these

17   witnesses talk about all of these violations.

18         Very confusing.  It would be hugely prejudicial and

19   misleading.

20         To give an example, Mr. Liechti, the chief cooperator

21   in this case, in his affidavit, 30 paragraph affidavit, and

22   goes on and on about deemed sales violations.

23         That is their evidence, they are trying to say that

24   the bank was violating the QI Agreement based on conduct that

25   didn't violate the QI Agreement.

 1           There was no misrepresentation.  They didn't report

 2   deemed sales.  They weren't required to report deemed sales,

 3   not probative and hugely prejudicial.

 4           They were afraid the audit would show violations of

 5   deemed sales.  There were no violations of deemed sales.  It is

 6   irrelevant, prejudicial, legal impossibility.

 7           Different from Kline, different from Sands.  This is a

 8   different factual predicate.

 9           MR. POOLE:  Your Honor, may I respond?

10           THE COURT:  Yes.

11           MR. POOLE:  Your Honor, the argument Ms. Zelnick is

12   making is ignoring the fact that unlike the Ali case, the Kline

13   case from the 2nd Circuit, which is the classic case of

14   conspiracy to defraud IRS, it is, in fact, those of us who have

15   the misfortune of practicing violation of tax law, this is to

16   shield underlying criminal activity.

17           The charge here is that UBS was attempting in its

18   executives, managers, employees attempting to defraud IRS, in

19   particular, attempting to shield its cross-border business and

20   accounts it used to assist U.S. taxpayers --

21           THE COURT:  Let me stop you there.  You said that

22   these actions were done to conceal underlying criminal

23   activity.

24           MR. POOLE:  Yes.

25           THE COURT:  What was the underlying criminal activity

1    in this instance?

2           MR. POOLE:  The use of undeclared accounts to assist

3    and facilitate U.S. taxpayers in avoiding income taxes.

4           It is a classic example of U.S. clients to use

5    offshore bank accounts to hide assets and income from the

6    United States.

7           UBS and its employees --

8           THE COURT:  Do these accounts relate to U.S.

9    securities?

10          MR. POOLE:  They were not U.S. securities.

11          THE COURT:  So they weren't required to be declared?

12          MR. POOLE:  They weren't, but the issue is whether UBS

13   aided and abetted the taxpayers to avoid taxes.

14          The QI is an agreement between USA and UBS.

15          Did the conspiracy of the bank assist the taxpayers in

16   avoiding their tax obligations?

17          THE COURT:  I understand what the indictment alleges.

18          MR. POOLE:  What the QI Agreement, why we think the

19   relevance is here, your Honor, the testimony and evidence will

20   show is that the QI Agreement, to the extent it made things

21   different, it was a bit of a wedge into what had previously

22   been a virtually inpenetrable wall.  There were reactions

23   because of a fear IRS would begin getting information that

24   previously UBS could easily conceal from IRS.

25          The QI Agreement is relevant to that.  It is relevant

1  because of how UBS reacted to the QI Agreement.  That is what

2  is relevant here, your Honor.

3          MS. ZELNICK:  Your Honor --

4          THE COURT:  Were the records that were concealed, were

5  they subject to this external audit?

6          MR. POOLE:  UBS believed that they would look at

7  deemed sales issues.

8          That was their belief and so UBS took steps, such as,

9  not reporting these transactions to avoid the paper trail, to

10  obstruct that audit.  If they followed what they were supposed

11  to do, they would be reporting to IRS withholding tax that

12  would tip off the IRS about the size of their undeclared

13  business.

14          These are issues that are factual issues within UBS.

15          This is how they thought and how they reacted.

16          MS. ZELNICK:  Ernst and Young never looked at the

17  accounts of foreign securities because they weren't part of the

18  audit.  They never looked at them, never a requirement to

19  withhold a report on those sales.  There was no

20  misrepresentation.

21          This is -- This idea that IRS didn't know about this

22  business, Mr. Staples spent three years negotiating with the

23  Swiss Banking Association and others about the fact that the

24  existence of undeclared accounts, IRS was aware of the fact

25  there were undeclared accounts.  They agreed the bank could

1   have undeclared accounts.  That is Section 6.4 says.

2          This is not a dirty little secret.  It was legal,

3   contemplated.  IRS knew.

4          MR. POOLE:  IRS was concerned with the size and scope

5   of the undeclared business.

6          This is not a question of legal issues.  This is a

7   question of what UBS factually thought and how its employees,

8   managers, and executives reacted.

9          A classic client conspiracy --

10         THE COURT:  I understand.  To what extent does the

11  Government need to get into the Deemed Sales Rule in order to

12  introduce this evidence of concealment?

13         MR. POOLE:  The actual legal rules themselves, your

14  Honor, we don't need to get into any detail.

15         We are going to get into simply this is what the

16  marching orders were that came from the top down and the

17  actions taken to circumvent those, not incredibly technical,

18  complicated.  The issues are irrelevant.

19         THE COURT:  Tell me what the marching orders were, as

20  succinct as you can do.

21         MR. POOLE:  If bankers were accepting instructions on

22  securities from the U.S., that was a deemed sale.  If someone

23  called in from U.S., mailed something from U.S., as UBS did,

24  extensively, a banker traveled to UBS, mailed to the client and

25  took instruction.

```
 1            If they received an order relating to U.S. territory,
 2   they thought they had to withhold taxes on that.
 3            MS. ZELNICK:  Yes, but the instruction was they should
 4   not do so.  They should not use deemed sales because the bank
 5   could not report so they should not do it.
 6            MR. POOLE:  That is a factual defense they could try
 7   to raise.  This isn't a legal requirement about whether UBS and
 8   employees tried to conceal information from IRS.
 9            The issues -- the Kline conspiracy was upheld because
10   there was a act of concealment to obstruct IRS.
11            This goes beyond the Kline case, not only is there
12   concealing information but concealment of an additional
13   business that is a cross-border business.
14            MS. ZELNICK:  Your Honor, there was massive
15   falsification of records in Kline.
16            Here, there was no misrepresentation.  They didn't
17   report anything.
18            They are planning on putting in exhibit, after
19   exhibit, after exhibit that said nothing else but that the
20   Deemed Sales Rule applied to foreign securities.
21            They plan on calling witnesses who say nothing else.
22            It is legally impossible.  It isn't true.
23            The prejudice is really obvious.
24            THE COURT:  Here is what I think.
25            I think this issue falls squarely within Rule 403.
```

1           I can certainly see the probative value that you have

2   demonstrated, Mr. Poole, and Ms. Zelnick, I can certainly see

3   the confusion that this could create and the resulting

4   prejudice to the Defendant.

5           The question becomes whether or not any type of

6   limiting instruction could be given so that the Government is

7   able to admit evidence that is relevant and does have probative

8   value regarding intent and knowledge, but, also, defuses the

9   confusion that I think could very well result, especially, if

10  the Government intends to go into any depth regarding the

11  Deemed Sales Rule, which I think we can conclude does not apply

12  to foreign securities.

13          MR. POOLE:  Yes, your Honor.

14          We certainly have no problem with a limiting

15  instruction when the issue is first raised with a jury

16  instruction and with us being clear we will not in closing or

17  opening argue to the jury that Mr. Weil should be convicted

18  because of the violation of the Deemed Sales Rule.

19          For purposes of this case, we are not arguing that the

20  Deemed Sales Rule, as a matter of law, apply to foreign

21  securities.

22          The Deemed Sales Rule is not even a legal term in U.S.

23  tax law.

24          It is largely what they called it in UBS.

25          That is a term that arose in UBS.

1          THE COURT:  That is not used in the Treasury

2   Regulation?

3          MR. TORTELLA:  No.  There is something in there about

4   deems to be a sale, but it is not a term of art.

5          We want to introduce it because they thought this was

6   going to happen and took steps of concealment.  We have no

7   objection to a limiting instruction, final jury instruction and

8   making sure that the arguments to the jury are made clear, not

9   just arguing, we are happy to make clear.

10          THE COURT:  The focus of this evidence cannot be on

11   the Deemed Sales Rule.  It must be on the concealment aspect

12   because that is what the Court finds has probative value here.

13          MR. POOLE:  Yes, your Honor, we can certainly limit it

14   to just -- again, there is this marching order and acts of

15   concealment.

16          MS. ZELNICK:  Your Honor, if I may?

17          THE COURT:  Yes.

18          MS. ZELNICK:  The memorandum of interview and the

19   exhibits are replete with this problem.

20          The Government has said it is one of their central

21   theories.

22          I would submit a limiting instruction would not be

23   sufficient here.

24          It will be impossible to tell if Mr. Weil were

25   convicted whether he was convicted on evidence of violations of

1    the QI Agreement that were never violations.

2            MR. POOLE:  Your Honor, if there is an explicit

3    instruction that that cannot be a basis for conviction, simply

4    violation of Deemed Sales Rule, that could not be a basis for

5    liability.

6            It is not a question whether it would be omitted from

7    the jury charge.

8            If there is a clear instruction to the jury that they

9    cannot use that as a basis for conviction, I think that would

10   make it very clear to the jury and clear to the view of the

11   Court.

12           MS. ZELNICK:  The chief cooperating witness says the

13   way the bank violated the QI Agreement was through the Deemed

14   Sales Rules.  That is his entire statement.

15           And, he basically says it is the equivalent of the

16   bank having missed all the reporting requirements.  The

17   Government in its papers repeatedly says we are not arguing

18   that it was a violation of substance or technical law, but we

19   think there was a misrepresentation.  There was no

20   misrepresentation.

21           THE COURT:  Let me take this one under advisement and

22   give it some more thought before I rule.

23           I want to go back over Mr. Liechti's affidavit.

24           I will defer ruling on this.

25           MS. ZELNICK:  Thank you, your Honor.

1          MR. POOLE:  Mr. Liechti's affidavit, it is a written

2     affidavit, expresses his beliefs about the issue.

3          How we present this to the jury in light of the issues

4     we raised here today, to make it clear, we are focusing on acts

5     of concealment.  That is something we could mold in testimony.

6          THE COURT:  Would you like to submit a written proffer

7     how you intend to do it, a written proffer, and that way the

8     Court can better determine the issue of confusion.

9          MR. POOLE:  Certainly, your Honor, I believe we can do

10    that.

11         THE COURT:  All right.  When will you have that to the

12    Court?

13         MR. POOLE:  We could have it to you sometime tomorrow.

14         THE COURT:  Okay, that is fine.

15         All right.  The next issue -- the next motion is the

16    Defendant's motion in limine to exclude evidence and argument

17    concerning alleged violations of U.S. banking and security

18    laws.  This is docket entry 123 and the Government has filed a

19    response, docket entry 132.

20         Mr. Menchel.

21         MR. MENCHEL:  Thank you, your Honor.

22         I have been told to slow down, so I will endeavor to

23    do that.

24         Your Honor, if you have Defense -- I'm sorry, the

25    Government's response to our motion, that would be very

1  helpful.

2        Exhibit A is a document that they attach, and I am

3  glad they attached it because it is precisely the type of

4  evidence that should not be admitted before this jury.

5        If I can walk it through with your Honor --

6        THE COURT:  Somebody has an electronic device on.  It

7  has to be powered off.

8        There we go, okay.  Go ahead.

9        MR. MENCHEL:  Your Honor, do you have the exhibit that

10  was attached to the Government's response, Exhibit A, that will

11  be helpful.

12        THE COURT:  Yes, yes, I do.

13        MR. MENCHEL:  This is a perfect example of the

14  Government conflating violation of the securities law which has

15  nothing to do with this case and argue this is evidence of tax

16  evasion.

17        This is dated September 13, 2001, Franz Zimmerman who

18  was a lawyer at UBS, and title is, the subject is cross-border

19  activities into the United States from non-U.S. offices of UBS.

20        I want you to remember that title, cross-border

21  activities, it is very important.

22        A letter from Mr. Liechti, what he says is:  "The

23  purpose of this memo is to analyze the current activities

24  provided by UBS, non-U.S. offices to U.S. residents, paren,

25  U.S. persons, close paren -- this is important, your Honor --

1  from a U.S. securities law prospective. "

2        This entire memo is about U.S. securities law.

3        Now, he goes on to talk about how the bank is engaging

4  in a way that could be a violation of the Securities Act of

5  1934.  That is in the first paragraph A and could be a

6  violation of the Investment Advisers Act of 1940 because

7  non-registered UBS bankers are using jurisdictional means as a

8  way of doing business with their customers.

9        This has nothing to do with tax evasion.

10        Now, the critical thing that they go to, your Honor,

11  they try to conflate this with tax evasion.  If I could turn

12  your Honor to the second page, and you see he says "although

13  potential" -- you see where I am?

14        THE COURT:  Yes.

15        MR. MENCHEL:  He is talking about only SEC and

16  potential -- here is what the Government cited in their papers.

17        Go down where it begins the word "finally," you see

18  that, your Honor, "finally," the, 9, 10 lines down, on the

19  second page, paragraph that begins "although the potential --"

20        THE COURT:  Yes.

21        MR. MENCHEL:  "Finally, the acquisition of Paine

22  Webber and up coming QI audit, 2003 for the year 2002,

23  obviously, also have bearings on defining our future strategy,

24  as the former --" meaning Paine Webber -- "U.S. exposure and

25  later, QI Agreement, the danger and protecting the nature of

1   the extent of cross-border activities.  "

2           What is this about?  Cross-border activities relating

3   to SEC.

4           The Government says, uh-huh, smoking gun, talking

5   about tax evasion.  This has nothing to do with tax evasion.

6           What he is saying is, your Honor, if we have the QI

7   audit and violating security law, the audit is going to reveal

8   the nature and scope of the cross-border business in how it

9   violates the securities laws.

10          That is the whole memo, the words "tax evasion," and

11  may be violating the tax laws has nothing to do with this memo.

12          It is a complete conflation.

13          Now, Mr. Zimmerman is not here.  He is not a witness

14  for either side.  He is not available.

15          The document says what the document says.

16          What I am guessing is going to happen, they are going

17  to call Mr. Liechti and perhaps others and have them try to

18  interpret this document and contort it into saying this is

19  about the fact we are hiding our tax evasion clients from the

20  U.S. authorities.

21          It doesn't say that and they are going to call -- I

22  think under your laws will allow someone else to say what this

23  is.  It speaks for itself.

24          This is a perfect example what they are trying to do

25  in the case and why we should exclude it.

1          If they want to call witnesses and how they are not

2   protected under the QI, they are putting in evidence of -- the

3   jury is going to hear repeatedly about violations of the

4   Investor Act, violations of the 1934 Act, so on, so forth, get

5   hopelessly confused, and think they are doing something wrong,

6   Mr. Weil must be guilty of something.

7          There is no reason --

8          This is an exhibit.  This is one of the first exhibits

9   in the case and it is loaded with references to concerns about

10  violating the securities laws, and the Government is going to

11  say and we will show what that really means is, they were

12  hiding tax evasion.

13         The same thing as the deemed sales, judge.

14         We want to show, although they were really concerned

15  about violating the deemed sales, it means tax evasion.

16         The same thing here with the security laws.  This

17  document says what it says.  It says nothing about tax evasion.

18  The whole thing is to evaluate the securities laws.

19         This is what they want to get in.  You shouldn't let

20  it happen.  It will confuse the jury, unfairly prejudicial.

21         The man is not charged with violating security laws.

22  This is a tax evasion case.

23         Thank you, your Honor.

24         THE COURT:  Mr. Daly.

25         MR. DALY:  Your Honor, the Government exhibit shows

1  consciousness of guilt, and also shows, generally, the bank's

2  attempt and executives' attempt to conceal the cross-border

3  business.  The two are inextricably linked.

4          We are talking thousands of visits every year by

5  bankers coming into the United States meeting with clients

6  going through acts of concealment.  The only way the business

7  can continue to operate is if they don't register with SEC,

8  because they can peek into their books, but they also have to

9  let IRS know.

10         UBS is planning on moving all of its customers out of

11  the Bahamas.  Why?  Because there is a tax exchange agreement.

12  IRS might find out about the clients in the Bahamas.  They

13  bring them back behind the wall of UBS' secrecy.

14         They can't separate them.

15         If you come forward, go public with the giant

16  cross-border, IRS is going to know about who your clients are.

17         If you tell IRS, I have all this holding in the United

18  States, IRS will say how many client visits do you have?  How

19  many phone calls are you making?  How many faxes are you

20  sending?  The actions of one regulator implicate another.

21         They are not going to say in a document -- it is

22  inconceivable to think -- we are committing tax evasion, but

23  his comments here show what the attitude was.  They are not

24  considering the W-9.  They are concerned about the W-9 clients.

25         You put that in the QI.  QI required the bank to

1    produce W-9 to IRS saying this is the person or not.

2           Previously, where any banker could, I guess, with a

3    scintilla of believability say I have no idea if my client is

4    paying taxes.

5           You have two clear groups, W-9 paying taxes, who were

6    a security risk before, because they didn't know who could sue

7    them, now they know, now they have a problem, and they have the

8    huge undeclared business.  They have to deal with the

9    undeclared business, because if they get sued and have to

10   produce discovery, it is going to show undeclared business,

11   regardless whether it is securities.

12          They are concerned with thousands of clients coming in

13   to meet with U.S. customers.

14          The fact they analyze these together, every time you

15   see a document, securities and tax issues are a link.  The two

16   implicate the other.  You cannot conceivably extract one from

17   the other.

18          Once they form SFA, they have a problem because as far

19   as evidence, willfulness and knowledge, you will see UBS knows

20   how to operate a legal business.

21          You will see they didn't have anything to do with

22   people with the business because they didn't want to affect

23   them.  Paine Webber didn't want to deal with the one W-9

24   business.  They didn't want to know about it and be affected by

25   it.  The evidence refers to it as toxic waste.  If somebody

1   finds out about the toxic waste, the whole gig is up.

2          Conceals secured issues, conceal tax issues; conceal

3   tax issues, conceals securities issues.

4          MR. MENCHEL:  May I?

5          THE COURT:  Yes.

6          MR. MENCHEL:  A couple things about what Mr. Daly just

7   said.  He says it is consciousness of guilt.

8          The question is of what?  Consciousness of guilt, at

9   best, they may be violating the security laws and they have

10  exposure.

11         Why is that relevant in this case?  That they are a

12  dirty bank?

13         Secondly, they always talk about them in the

14  securities violations and tax violations together.

15         They actually never do.

16         Let him show you a document where they talk about risk

17  of tax evasion and combined with securities laws.

18         They don't do that.  They say, of course not, they

19  would never put in writing they are concerned about tax

20  evasion.  Why wouldn't they?  They have put in violations they

21  have concern about violating securities laws.

22         This document talks about the W-9 client in the

23  context of who want to sue us.  Doesn't go to tax evasion.

24         Let me go to the second exhibit.  This falls back into

25  Ms. Zelnick's argument.

```
 1              I want to tell you what they talk about together, not
 2  tax evasion.
 3              If I may direct your attention to Bates ending in 503.
 4  It says United States, in particular on that page --
 5              THE COURT:  Just a second.  Yes.
 6              MR. MENCHEL:  The paragraph starts "January 2002."
 7              THE COURT:  I got it.
 8              MR. MENCHEL:  This is from, I believe this is from
 9  Mr. Zimmerman.  Let me check.
10              Yes, it is.  Another legal opinion by Mr. Zimmerman.
11              It says in January 2002 UBS implemented strict
12  principles for serving U.S. customers under the heading Deemed
13  Sales Guidelines.
14              Again, deemed sales.
15              The thing Government is saying is not a violation of
16  the case they are not arguing.
17              Crafted by U.S. counsel and posted on UBS internet --
18  presented the new business model to relevant staff -- followup
19  to those presentations.
20              This is very important.
21              In essence, guidelines boil down to a rimmed fence.
22  Service model for U.S. resident, 9, W-9 having securities
23  account, i.e. -- into the U.S. "
24              This is about deemed sales and SEC.
25              Let me tell you how you know.  The next sentence.
```

1           "The business was also asked to transfer as many

2   advisory slash non-discretionary clients as possible into

3   discretionary mandates."

4           What that means is this.  Because we are not supposed

5   to be contracting business in United States, trade as you wish.

6           Doesn't trigger deemed sales.  There is no U.S.

7   contact and doesn't trigger securities laws.

8           U.S. client saying you have total discretion on my

9   account.  You don't have to talk to me over the phone or come

10  to the U.S.

11          Then he goes on to say, in order to address what?  The

12  deemed sales issue.  The thing is saying not what they are

13  arguing is a crime here but also improve SEC securities at

14  compliance.

15          The only two things this bank ever talks about

16  together are not the crimes in this case, deemed sales, not the

17  basis for tax evasion.  Even though it is their basis for tax

18  evasion, because the only documents they will show will show

19  the bank is concerned there was an audit, deemed sales

20  violations may come to light.  Nothing about foreign accounts,

21  tax evasion, structures, none of that.

22          The only time you see these two together is deemed

23  sales, the Government says is not a crime, and SEC violations

24  which is not what this man is charged with.

25          They want to make it something else.  The documents

1  speak for themselves.  They will have no evidence in a document

2  ever in this case that is going to link violation of the

3  securities laws to tax evasion besides deemed sales which they

4  thought might have applied, weren't sure and worried that it

5  would be found out in an audit.

6          This is going to create confusion upon confusion.

7          Let me tell you what the problem is.  They can't prove

8  tax evasion against this man.  They can't do it.

9          They are trying to throw out violations of securities

10  laws, deemed sales, other countries.

11          Let's do everything we can except prove this man

12  committed tax evasion because they don't have the evidence.

13          You let these documents in, what the jury is going to

14  think, the bank is doing something wrong, violating securities

15  laws, not relevant and prejudicial and violating deemed sales

16  which the judge told us maybe isn't a crime but they are

17  violating it.  If you let this evidence in, this man cannot get

18  a fair trial.

19          There is no evidence other than them saying so with

20  securities laws and tax evasion.

21          MR. DALY:  Your Honor, Mr. Menchel is citing the wrong

22  crime.  The crime is a conspiracy to defraud IRS.  To conceal

23  from IRS is wrong.  UBS sending bankers into the United States

24  to meet with clients to aid and assist them in concealing Swiss

25  accounts.

1          Yes, part of that is going to involve a violation of

2   SEC rules.

3          Again, in order to keep it concealed, they can't alert

4   SEC to what they are doing.  If you alert SEC, SEC can request

5   documents, gain insight into your activities.

6          In order to keep it secret, they can't let anybody

7   know about the business.

8          So, while Mr. Menchel might say, oh, he is not

9   committing tax evasion, no.  The underlying crime is

10  concealment of the business they are aiding and assisting U.S.

11  taxpayers in filing false tax returns and concealing the

12  accounts.

13         The Deemed Sales Rule was a flag.  If we tell them how

14  big this business is, they are going to start asking questions.

15  We need to not let them know, otherwise, too many questions

16  will be asked, too many people will want to know what is going

17  on.

18         That is the underlying crime.  That is the purpose it

19  is there for.  If they tell SEC, they have to tell IRS.

20         THE COURT:  Well, to the extent that the securities

21  laws and the tax laws are inextricably intertwined, I will

22  allow it in, but I am not so sure that all that has been

23  proffered regarding securities laws violations is inextricably

24  intertwined with the tax laws.

25         It may require some redactions of documents, but I

1   recognize that some violations are violations of both tax laws

2   and security laws, and to that extent, I would allow it in.

3              MR. MENCHEL:   I would ask you to ask them to show you

4   a single document that supports that.

5              They just keep saying it.

6              The documents they want to introduce do not talk about

7   tax evasion.

8              That is the problem.   They want to make it so.

9              They show you two documents -- They say we are

10  concerned about the cross-border business being discovered.

11  That is absolutely true.   You know why?   It says it in the

12  memo, because we are violating securities laws in the

13  cross-border business.   You want to know why?   We may be

14  violating deemed sales.

15             That is true they are concerned about the cross-border

16  business in the context of SEC which is what this memo is about

17  or deemed sales which is what all the other memos are about.

18             They want to make it so.

19             Not a single document in this case other than them

20  saying it so makes it so.

21             They are going to introduce this stuff, judge, a ton

22  of documents like this.   I have been through the first 50.   It

23  is all about this.   It is going to be about securities

24  violations and deemed sales, and they were going to say they

25  are really worried about tax evasion.

1          The problem is, they don't have any proof of that.  If

2    they want to put a witness on the stand to say that, I guess

3    they could put a witness on the stand to say that.  To offer

4    these types of documents is not intertwined, not with anything

5    except itself, SEC or deemed sales, not SEC and tax evasion as

6    they charged in this indictment.  Nothing intertwined here.

7    They are making it up out of whole cloth.

8          Read the documents and ask them to give you a document

9    that makes the connection that Mr. Daly says is there.

10         It is not there.

11         MR. DALY:  Your Honor, we are not going to -- the

12   Government can go back and look, but the issue is, what is this

13   business?  What is it?  It is hiding money from IRS.  That is

14   the underlying business here.  You are concealing these

15   accounts.

16         So, while they may not say we are selling secrecy,

17   bank secrecy to these people, that is what this is.

18         When you take a one W-9 and they pay taxes on it, and

19   you don't take it from somebody else, you know what that is.

20   You are selling bank secrecy.  You are telling your bankers

21   going to the United States, take Wealth Management off your

22   business cards.  Telling your bankers, don't send things into

23   U.S. that have the UBS name on it.  Telling the bankers, hide

24   these statements in encrypted laptops.

25         It is part of the business to conceal trafficking with

1    U.S. customers.

2              MR. MENCHEL:  He said they are committing a crime by

3    not disclosing accounts that they are not legally obligated to

4    disclose under the QI Agreement and that is a crime.

5              MR. DALY:  Your Honor --

6              MR. MENCHEL:  Let me finish.

7              They are legally permitted not to disclose certain

8    accounts, and the whole business is they weren't disclosing

9    accounts.

10             If that is the case, we need to go to the Rule 29.  We

11   don't have to have a trial.  We are going to say it to you in

12   about two weeks.  They were permitted not to disclose a bulk of

13   accounts.  Now they are saying, because we followed the mandate

14   of the QI, we are still committing a crime even though IRS

15   allowed us to do so.

16             You can't defraud an agency that said to you you don't

17   have to worry about foreign securities held by U.S. clients, we

18   don't care.  And, by the way, there will be testimony about

19   that.  That is the QI Agreement.  You don't have to report

20   foreign securities held by U.S. customer.

21             Now Mr. Daly says the whole business was hiding this

22   from IRS.  They weren't hiding it from IRS.  It was known.  It

23   was negotiated.

24             THE COURT:  My concern that violations of the

25   securities laws become a focal point of the trial.

1        Now, I recognize that there is a degree of intertwined

2   evidence between violations of tax laws and securities laws,

3   but I don't think it would be fair.  I think it would be

4   prejudicial to Mr. Weil should the securities violations become

5   the focus of the trial.

6        Perhaps you could address that.

7        MR. DALY:  Your Honor, either there could be a

8   limiting instruction --

9        The Government, again, in regard to that, I think

10  actually the focus will not be on whether the securities laws

11  have been violated.  The focus will be on what was the nature

12  of this business?  What was UBS doing with its U.S. customers?

13  Were they meeting with them covertly?  Were they selling bank

14  secrecy, using nominees, setting up structures to set up

15  accounts?  Securities is an issue.  They were violating them

16  because they want to conceal the business.  The underlying

17  proof is how this business was conducted.

18       THE COURT:  All right.  What I am going to do is, I am

19  going to deny the motion in limine, however, I will give a

20  limiting instruction.

21       Mr. Menchel, if you want to prepare a limiting

22  instruction, I will consider it.

23       MR. MENCHEL:  Very well.

24       I do want to say one thing.  You are at a disadvantage

25  because you haven't seen the proof.  I think you will find, if

1  you let this in, this and deemed sales is the entire focal

2  point of this trial.  You will see it.

3          You will have to make decisions on the fly.  If you

4  don't mind --

5          THE COURT:  I may have to.  Sometimes it is difficult

6  to decide matters on a motion in limine without having the

7  benefit of seeing the evidence unfold.

8          MR. MENCHEL:  You will see it.

9          THE COURT:  Okay.

10          MR. MENCHEL:  Thank you.

11          THE COURT:  All right.  The last matter which is

12  probably the most contentious matter is the Government's motion

13  in limine to exclude irrelevant evidence and argument of

14  selecting or vindictive prosecution, jury nullification in

15  matters, docket entry 120.  The Defendant's response is docket

16  entry 124, and this, obviously, concerns the reports of the EBK

17  and also FINMA.

18          The Defendant takes the position that this is a public

19  record and would come in under 803.8, which is a hearsay

20  exception.  The issue in the Court's mind is relevancy.

21          And I would like for you all to focus on that.

22          MR. MARCU:  May I begin, your Honor?

23          THE COURT:  Yes, sir.

24          MR. MARCU:  Your Honor, the Government's investigation

25  in this case began at some point in the early part --

1          THE COURT:  You may have turned off your microphone.

2     Okay.

3          MR. MARCU:  I am not speaking loudly enough,

4     apparently.

5          THE COURT:  That is fine.

6          MR. MARCU:  The Government's investigation in this

7     case began in 2007 and continued in the case of Mr. Weil to

8     October, November, 2008.

9          At about the same time, the Swiss Banking Commission

10    in Switzerland, which was called the EBK, was conducting its

11    own investigation; and, as we laid out, investigation by the

12    Swiss Banking Commission was considerably more extensive.  The

13    Banking Commission was able to take the testimony of multiple

14    witnesses who the Government did not speak to, including the

15    senior management of UBS, Mr. Weil, Rohner and Curer, the three

16    highest members of the bank because all of them were submitted

17    to interview, which is not interview as in an agent sitting

18    with a potential cooperator or witness.  It was done in a

19    courtroom typesetting with a panel of the senior enforcement

20    personnel of the EBK, and they took that testimony from not

21    only the senior management but multiple client advisers and

22    Mr. Liechti you heard about who was in charge of the

23    international business in the Americas, and Mr. Guignard,

24    another cooperator of the Government who was his subordinate in

25    charge of the U.S., and Mr. Shumacher, who is a new name, but

1    has been under indictment for the past five years.

2              All of them appeared before the EBK.

3              The Department of Justice spent a lot of time with

4    Mr. Liechti.  We have seen many, many sets of notes and

5    interview memoranda of the many meetings they had with

6    Mr. Liechti in the four months he was detained pursuant to a

7    material witness warrant in the Summer -- Spring, Summer, Fall

8    of 2007 -- 2008, sorry.

9              The additional information that was obtained by the

10   EBK in its investigation, which would have been available to

11   the U.S. had it sought it, made the EBK investigation more

12   extensive and more informed than what the United States was

13   doing and Department of Justice.

14             The resulting reports set forth as we described in our

15   papers, and I am sure your Honor is familiar, set forth

16   Mr. Weil and other senior management.  Those three had not be

17   informed of the misconduct by Mr. Liechti and people below him.

18   Liechti and people below him hid misconduct from senior

19   management, which is our defense in this case.

20             The report that was prepared was prepared by -- I will

21   go to relevance, I take it you have at least --

22             THE COURT:  I think that is where it is at.

23             What element of the crime charged, or what element of

24   a recognized legal defense do these reports go to either prove

25   or disprove?

1            MR. MARCU:  Go to the heart of the Government's

2   apparent thorough --

3            THE COURT:  I asked about elements.

4            MR. MARCU:  The element it goes to is whether Mr. Weil

5   had knowledge of a conspiracy that was being conducted at UBS

6   by the subordinants in this time of the bank and whether he

7   agreed to join their conspiracy that was run by Liechti and run

8   in this very tiny part of the bank.

9            Both those critical elements.

10           EBK says, no, he did not have knowledge.  He did not

11   agree.  He was lied to and not informed by those witnesses.

12           The EBK report reaches conclusions in it and that is

13   permissible under the terms of Rule 803, and case law makes

14   clear that the fact that the adjudicator body, or, in this

15   case, investigative slash adjudicator body reached conclusions

16   based on the evidence in no way makes the reports inadmissible

17   or not relevant.  They are directly relevant.

18           THE COURT:  Are these conclusions by the EBK, are they

19   essentially credibility determinations?

20           MR. MARCU:  I wouldn't say credibility determinations,

21   your Honor.  I think, actually, although we don't know

22   precisely what each of the individuals said in their testimony

23   at the EBK.

24           We have asked to have that and we have been told -- We

25   have been denied it by FINMA as called now.  We asked the

1  Government to request it.  The Government has told us it has no

2  duty to seek any evidence from the Swiss Banking Authority

3  which was the adjudicator agency here, so we don't have the

4  ability to replicate what they had, so we don't know for sure

5  what the basis was, but they don't say they didn't believe

6  these people.

7          They say the evidence showed that the -- that the

8  people in the business were motivated by an incentive program

9  created by Mr. Liechti that was different from what Mr. Weil

10  laid out for the entire wealth management business, and

11  Liechti, Guignard and others did not tell Mr. Weil and the

12  other senior executives what they were doing.

13          To me that sounds like not a credibility finding but

14  sounds like full gathering of the facts.

15          The Government had the opportunity to talk to

16  Mr. Weil, Mr. Kurer and Mr. Rohner.

17          Mr. Downing in 2008, who was running this case, asked

18  if those three individuals would come speak to him, and each of

19  those three individuals let him know through counsel, and I was

20  one of those, that we were prepared to bring Mr. Weil to

21  Washington and the others were prepared to bring their clients

22  to Washington to speak to the Government and submit to an

23  interview -- and this takes me to another part of the open

24  issues which I would like to keep separate and, that is, the

25  timing of the indictment -- they asked if we would do that.

1          The lawyers for the individuals said their clients

2    would come in, but that was broken off by the Government's

3    sudden indictment of Mr. Weil.

4          So, they had the opportunity to talk to those

5    witnesses.  They didn't take advantage of that opportunity, and

6    they refused to seek any information or evidence from the EBK.

7    We have the EBK's decision.

8          The EBK is a respectable professional adjudicator

9    organization, works for the United States Government all the

10   time and repeatedly praised by the Tax Division of the Justice

11   Department for the work they have done and co-operation, so

12   there is no question about the trustworthiness of the

13   conclusions or facts laid out in the reports.

14         I would submit, your Honor, although ordinarily --

15   rather than say ordinarily, maybe I can say it is not the norm

16   for there to be a parallel investigation conducted by a

17   recognized public body that can be offered in evidence in a

18   criminal trial.

19         That is because there isn't usually a parallel

20   investigation that has led to a series of conclusions that

21   would be relevant to the case on trial.

22         In this case, like the Garland case we cite in our

23   brief, like the Lewis case which we also cite in the brief,

24   both those criminal cases, it was error not to permit the

25   parallel investigative report to come in for the jury to

 1  consider on a central issue of whether the Defendant was guilty

 2  of the elements --

 3          THE COURT:  Garland, the judgment came in as relevant

 4  to the issue of intent, I believe.

 5          MR. MARCU:  It came in -- I am not sure I would limit

 6  it that way, your Honor.

 7          THE COURT:  I think that is what the opinion said.

 8          MR. MARCU:  I guess we could -- it could be

 9  relevant --

10          THE COURT:  Go ahead, I will find it.  Please.

11          MR. MARCU:  In this case, intent is an element.

12  Knowledge is an element.  Agreement is an element.

13          What I am trying to say it is a parallel situation in

14  terms of whether -- of the element that would be brought in to

15  address.

16          In this case, it would be directly relevant to

17  knowledge, participation and agreement.

18          So, it is hard to imagine how this would not be -- you

19  could hardly come up with a parallel adjudication that would

20  not be more relevant.

21          While I appreciate your Honor's reaction initially

22  might be isn't that the jury's job?  That is the only thing the

23  Government said.  The only thing they have said in their brief

24  in opposition to the admission of the documents, they said,

25  well, that is what the jury is going to do.

1          THE COURT:  Page 335 of Garland, "It is clearly

2    material to the issue of Garland's intent and would likely have

3    produced an acquittal if the jury had been aware of it.  "

4          Page 335.

5          MR. MARCU:  I accept your Honor instruction, thank

6    you.

7          I would say, your Honor, it doesn't change the

8    argument I am making whether it is intent, knowledge or

9    participation.  It includes intent because you cannot

10   participate or, rather, agree to engage in a scheme to defraud

11   the IRS unless you intend to do so.  It is a specific intent

12   crime.

13         The decision of the EBK which says Mr. Weil did not

14   participate in a scheme to violate the tax laws or the

15   securities laws, for that matter, and that he was denied the

16   information by the people who were going to be the Government's

17   cooperators that would enable him to know there was such a

18   conspiracy going on is exactly the same kind of situation as in

19   Garland.

20         Except in Garland, with all due respect to the

21   respective legal systems, there we are dealing with Ghana which

22   is foreign to the American lawyers.  In the process it would be

23   difficult to understand, yet, the Court didn't hesitate to

24   reverse because of the importance of the evidence contained in

25   that adjudication.

1          Here we have the decision by Swiss Authority which is

2   a long time partner of the United States and the decision is

3   very clear the two reports that were issued are very clear in

4   setting forth who is responsible and what was denied in terms

5   of information to Mr. Weil.

6          So, I think relevance, your Honor, I would submit, is

7   directly satisfied and that although this is not the kind of

8   evidence that is often available to a defendant, it is

9   available here, admissible under 803.8, and it is clear from

10  Garland and Lewis that it should be received by the jury and

11  that it could be fatal defect if it is not.

12          THE COURT:  Thank you very much, Mr. Marcu.

13          Mr. Daly, what say the Government?

14          MR. DALY:  Your Honor, before we get to relevance,

15  before this could be admitted under 803.6, it has to be deemed

16  trustworthy.

17          Now, we don't have the whole report.  We have a

18  portion of the report translated into English.

19          On its face, we only have, if you look at the

20  translator certificate, cover page, 1 through 5, 76, 77, and 80

21  through 101.

22          MR. MARCU:  We provided the entire report to Mr. Daly.

23  The report is in German.  All the rest of the report relate to

24  other cases.  This aspect relates to UBS and Mr. Weil.  The

25  other aspects are not related.

1          MR. DALY:  This is different from the reports

2    identified in the case law.  There is indication of methods

3    employed, who was interviewed, what was looked at.

4          This report contains none of the information, while,

5    in an extraneous document, UBS admits executives were

6    interviewed, you cannot read this document and figure out who

7    was interviewed, what they said how credibility determinations

8    were made.

9          It is a closing argument packaged together with a nice

10   cover.

11         Furthermore, what defense didn't highlight to you is

12   Exhibit C.

13         In Exhibit C, on page 19 of Exhibit C, page 412, FINMA

14   responds to a criticism of its report.

15         The Federal Banking Commission issued a report

16   criticizing this saying it wasn't independent enough, relied

17   too much on an internal UBS investigation.  FINMA praises it

18   saying, under the circumstances, the approach taken was correct

19   and did not interfere with the independency of the

20   investigation.

21         The FINMA rebuttal portrays a fundamental

22   understanding what an investigation is.  It says, "As a rule

23   law offices accredited by appropriate authorities are retained

24   for such investigations."

25         Department of Justice doesn't accredit Wachtell Lipton

1   to do an investigation of UBS.

2           Department of Justice didn't appoint them.  This is

3   not an independent monitor.

4           It further says Department of Justice has recommended

5   U.S. offices of Wachtell Lipton as a suitable lawfirm.

6           The Government doesn't recommend who can conduct an

7   internal investigation.  This shows FINMA is under a

8   misapprehension what the sources are.

9           This is untrustworthy by its nature.

10          Furthermore, contains certain conclusions that are not

11  only irrelevant but highly prejudicial.

12          It includes the conclusion that the Defendant and two

13  of his co-conspirators didn't violate U.S. Tax Law.

14          How is a Swiss regulator supposed to make a

15  determination whether U.S. Tax Law is violated.

16          They have gone beyond the scope of their capability.

17  This provides no relevant evidence and would mislead the jury,

18  and, furthermore, the report is anonymous.

19          On its face, the report itself is not trustworthy.

20          Your Honor, all of these issues have to bring the

21  Court to the conclusion that the Court can't trust this report.

22          It can't, on the face of it -- forget the Court, if

23  the jury reads it, if the jury has no idea what the report is

24  based on, the jury doesn't know if Mr. Liechti was interviewed

25  for 10 minutes or five hours, they don't know what he said,

1  they don't know what the Defendant said, furthermore, this is

2  misleading because it is conducted prior to the time UBS admits

3  its guilt and paid $780,000,000.

4          It is admitted while it praises Mr. Weil, Mr. Kurer

5  and Mr. Rohner, in February Mr. Kurer is fired, Mr. Rohner is

6  fired, doesn't reflect any of that.

7          So, while the Government agrees it is not relevant,

8  does not go to the critical elements of the crime, we don't

9  even get to relevance.  We have to stop at 803.6.  Look at the

10 report on its face and judge whether it is trustworthy or not.

11 Review of it shows it is not trustworthy.

12          THE COURT:  Last word, and we are going to recess.

13          I will take this matter under advisement.  I will

14 issue a written order on this, certainly, prior to the weekend.

15          MR. MARCU:  Thank you, your Honor, I will be brief.

16          Mr. Daly asks the Court to look at the report on its

17 face and say it is not trustworthy.

18          He refers to another political criticism which related

19 to a series of other issues and report that was issued by UBS

20 itself.  It was its own report that was issued.

21          I am willing to accept Mr. Daly's suggestion that we

22 look at the report on its face because I think that is the way

23 that trustworthiness should be judged.

24          In this case, EBK took testimony from many witnesses,

25 more witnesses than the Department of Justice ever did.

1          Had more documents than the Department of Justice did,

2    and it found UBS to be in violation of Swiss Banking Law and it

3    enjoined UBS from various activities, including the

4    cross-border business, so it found very much the same things

5    with respect to the bank that the Department of Justice alleged

6    in its deferred prosecution agreement.

7          The two documents, the injunction by the EBK was

8    issued before the Government entered into the prosecution

9    agreement with the bank, and the subsequent report was issued

10   on the same day as the preferred prosecution agreement.

11         It is disingenuous for the Government to claim the

12   work of the Swiss Banking is not trustworthy --

13         Withdrawn.

14         The work of the Swiss Banking Commission which is

15   described in the report, yes, it doesn't layout who said what

16   and when, but rarely do opinions by courts or determinations do

17   that.

18         It lays out the investigation, how it was done, who,

19   generally, was brought in, and describes all the relevant

20   players who are involved in the circumstances.

21         We can easily break that up into who is responsible

22   for what.

23         That is not difficult.

24         The issue isn't whether there is identity between the

25   way we adjudicate issues of this sort here, and the way they do

1    it in another country.  It is whether this is a public

2    authority that issues -- after an investigation issues findings

3    and it is done in a trustworthy way.  In a criminal case, it is

4    admissible against the Government.  It is specified in the

5    rule, and I submit, your Honor, it is admissible and highly

6    relevant.  It would be prejudicial to the Defense to keep that

7    out.

8              THE COURT:  Thank you, Mr. Marcu.

9              MR. MARCU:  Thank you, your Honor.

10              THE COURT:  I said that would be the last word, let me

11    ask you this, Mr. Daly.

12              MR. DALY:  Certainly.

13              THE COURT:  I intend to go back over the report

14    specifically with an eye toward determining the trustworthiness

15    of the document, because you are right, that is an issue that

16    the Court must determine under 803.8, but if the Court were to

17    find the document trustworthy, is it relevant?

18              MR. DALY:  I don't believe it is relevant.  It doesn't

19    go to the issue, doesn't go to the elements of the crime.

20    There are no facts in there, merely conclusions.  That is all

21    it is, that said he didn't know.

22              What is the fact?  No basis to look at it.  No way the

23    jury could look at this and figure out what forms the basis for

24    any of this.  How could they use it to determine the

25    Defendant's guilt?  It is conclusary statements, highly

1  prejudicial.

2         If it does come in, the Government should be able to

3  come in with a Deferred Prosecution Agreement.  UBS admits it

4  committed this conduct.  The Government should be able to admit

5  the information that says the executives participated in this.

6         THE COURT:  Well, with respect to relevancy, Mr. Marcu

7  says that the reports go to the issue of, number one, whether

8  there was a conspiracy; and, number two, whether or not

9  Mr. Weil joined the conspiracy.

10        MR. DALY:  It does state that basically -- it may be

11 relevant.

12        I don't think so.  It does include statements there,

13 but, your Honor, you can't decide relevance without looking at

14 trustworthiness.

15        I don't think the two are intertwined.

16        There is plenty of evidence.  It is a bit of a canard

17 to say this is -- they have plenty of witnesses, that is what

18 this is a substitute for, they claim they can't get in

19 evidence.

20        Your Honor has bent over backwards to accommodate

21 them.  The very witnesses they say whose names are incorporated

22 in it that the jury needs to know, you have offered the

23 opportunity to have them testify from London.

24        THE COURT:  When was the Deferred Prosecution

25 Agreement entered into in relation to the issuance of the EBK.

1            MR. DALY:  This was issued in December 2008, and

2   Deferred Prosecution was entered into February 18, 2008 -- 9.

3            THE COURT:  2009 --

4            THE COURT:  The EBK report --

5            MR. DALY:  I think December 2008.

6            It is published the same day UBS enters into the

7   Deferred Prosecution Agreement.

8            That -- It doesn't seem to be a coincidence they issue

9   it the same day that UBS seems to admit its guilt.

10           THE COURT:  All right.  Gentlemen and lady --

11           MR. MARCU:  These are simple questions that should be

12  determinable without much controversy.

13           EBK issued its injunction in December 2008, after

14  Mr. Weil's indictment, but prior to the announcement of the

15  EBK.

16           The report on the case was issued in February on the

17  same day the DPA was announced.  I imagine they each knew what

18  the other was doing.  That is the -- the allegations -- the

19  determinations by FINMA, EBK, at the time, had been reached and

20  injunction against UBS was issued in December.

21           THE COURT:  I know this is not one of the matters that

22  has been briefed, but what is your position with respect to the

23  admission of the Deferred Prosecution Agreement?

24           MR. MARCU:  In the first instance, I would say, Rule

25  803 only gives the Defendant the right to offer a report by a

1    adjudicator authority.  Deferred Prosecution Agreement is an

2    agreement reached as part of a deal to avoid indictment between

3    the Department of Justice, and they wrote it, and UBS.  Did not

4    bind Mr. Weil and we were not a party to it.

5         We don't like what it said, but I would say it is

6    highly prejudicial, eminently debatable about its accuracy

7    because of the imbalance of power between the two parties

8    negotiating it, and it is not admissible.

9         THE COURT:  All right.

10        MR. DALY:  Your Honor, as a matter of housekeeping,

11   there were other issues raised in the Defendant's motion about

12   the Merz letter and things of that nature.  I don't know if you

13   wanted to explore that at this point or limit it to the report.

14        MR. MARCU:  Your Honor, we were asked by the

15   Government whether we intended to offer the Merz letter in

16   evidence, this is from the Attorney General and Treasury

17   Secretary of Switzerland and Treasury Secretary of the United

18   States.

19        We told the Government we didn't have a plan to do it,

20   but we were still considering whether to do it.

21        We haven't decided it yet but, while we believe it

22   demonstrates the nature of the intense pressure put on the

23   prosecution team to extract inaccurate -- let's just say

24   evidence that could be used against senior management at UBS,

25   and that would be relevant to the jury's determination of the

1   credibility of the critical witnesses that the Government will

2   present that we need to know more about the circumstances that

3   surround it and preceded it.

4            I've asked for several months for communications by

5   the prosecutor with various people in his -- in the Tax

6   Division, people at UBS or Switzerland, and I received nothing

7   thus far.

8            I asked again this week and I gather the Government is

9   considering my request.

10           Also, I don't know what these witnesses will say in

11  their testimony on the Government's case; so, until we know

12  more about what the evidence is, we can't make a determination.

13           We would like to get the discovery so we could make

14  the decisions.  We don't have it.  We don't have the ability to

15  obtain that information from any other source because of our

16  lack of power with respect to information in Switzerland.

17           So, I would like the Court to direct the Government to

18  produce the notes, emails or memoranda of Mr. Downing who would

19  be the one who would have been having those communications, but

20  I would ask the Court to defer any ruling on this issue,

21  because we don't -- we haven't reached a conclusion whether we

22  would offer anything, and I wouldn't do it without notifying

23  the Government and the Court.

24           THE COURT:  I will defer the ruling with respect to

25  the discovery request.

1          Mr. Daly.

2          MR. DALY:  Before you can order discovery on a motion,

3    they have to make a motion.  They are asking for selective

4    prosecution.  They haven't made a showing to warrant that.

5          Quite simply, they said here is a letter, here is the

6    date.

7          THE COURT:  Denied without prejudice.  Okay.

8          MR. MENCHEL:  Can I raise one other issue --

9          THE COURT:  I have to go to the Federal Bar luncheon,

10   one of the newest Circuit judges is speaking.

11         THE COURT:  We will do it later.

12         Thank you.  We will stand in recess.

13         (Thereupon, the hearing was concluded.).

14

15

16

17

18

19

20

21

22

23

24

25

89

1           C E R T I F I C A T E

2       I hereby certify that the foregoing is an accurate

3  transcription of proceedings in the above-entitled matter.

4

5  _____           _____
       DATE                   PAULINE A. STIPES
6                             Official United States Court Reporter
                              299 E. Broward Boulevard
7                             Ft. Lauderdale, Fl 33301
   954.769.5496
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

Aaron 1:18 3:11
abetted 47:13
ability 74:4 87:14
able 39:7 51:7 71:13 84:2,4
above-entitled 89:3
absolutely 27:15 43:12 44:5 66:11
abundance 6:1
accept 22:9 77:5 81:21
accepted 29:1
accepting 49:21
accommodate 84:20
account 7:13,16,19 17:22 18:5
  23:20 62:23 63:9
accounting 16:22 22:7
accounts 7:8,12,20 10:1,18 19:25
  20:17,18 21:6,16 22:11,18 23:14
  23:14,18,24 24:11,18 25:6 27:20
  27:22,24 29:9 33:3,4,5,5 38:4,5,6
  38:10,13,14,15,16,19,21 41:16
  42:3 46:20 47:2,5,8 48:17,22,24
  49:1 63:20 64:25 65:12 67:15
  68:3,8,9,13 69:15
accredit 79:25
accredited 79:23
accuracy 86:6
accurate 89:2
acquisition 56:21
acquittal 77:3
act 11:3,4,4 12:5 16:12 25:1 29:2
  29:25 30:22 50:10 56:4,6 58:4,4
acted 42:6
action 14:9 24:13
actions 11:13 41:14 42:24 46:22
  49:17 59:20
active 27:23
activities 55:19,21,23 57:1,2 65:5
  82:3
activity 23:8 46:16,23,25
acts 4:15 15:17 22:3 26:11 29:15
  29:17 44:1 52:14 54:4 59:6
actual 28:11 45:2 49:13
actuality 39:19,20
addition 24:8
additional 25:11 50:12 72:9
address 3:15 6:4 14:24 16:4,9 28:3
  44:9 63:11 69:6 76:15
addressed 45:14
adjudicate 82:24
adjudication 76:19 77:25
adjudicator 73:14,15 74:3 75:8
  86:1
admissibility 4:10 6:24
admissible 4:13 6:25 8:19 16:1
  34:17 78:9 83:4,5 85:9
admission 4:6 76:24 85:23
admit 4:9 51:7 84:4 85:9
admits 79:5 81:2 84:3
admitted 9:6 55:4 78:15 81:4
advantage 75:5
advised 24:11
advisement 53:21 81:13
advisers 56:6 71:21
advisory 63:2
affect 60:22
affidavit 45:21,21 53:23 54:1,2
affirmative 12:5 24:14
affirmatively 33:10,14
afraid 46:4
agency 68:16 74:3
agent 71:17
ago 4:3,5 21:3,3,19 26:1 27:17
agree 4:12 15:24 73:11 77:10
agreed 48:25 73:7
agreement 7:24,24 23:16 32:3,5,12
  32:15,17,21 33:24 34:3 36:5,6,7
  36:10,12,19 42:14,16 44:22 45:3
  45:5,13,24,25 47:1,6 48:18,20,25
  48:1 53:1,13 56:25 59:11 68:4,19
  76:12,17 82:6,9,10 84:3,25 85:7
  85:23 86:1,2
agrees 81:7
ahead 55:8 76:10
aid 64:24
aided 47:13
aiding 65:10
alert 9:9 65:3,4
Ali 34:8 46:12
allegations 6:15 17:12 33:22 85:18

allege 4:16
alleged 6:18 16:12 19:22 20:14
  27:5 31:16 54:17 82:5
alleges 47:17
alleging 12:19,19 44:10
allow 4:6 6:22 15:25 57:22 65:22
  66:2
allowed 42:15 43:4 68:15
alternative 32:7
ambit 32:16
ambush 6:8
America 1:4 3:4
American 77:22
Americas 71:23
amnesty 9:24 11:15 13:14 14:16
analogize 22:6 37:19 39:25
analysis 21:18 27:17
analyze 19:9 55:23 60:14
announcement 85:14
anonymous 9:28 86:17
anybody 17:25 18:1,16 65:6
anyway 16:19
apparent 73:2
apparently 7:22 29:6 34:21 71:4
appearance 3:6
APPEARANCES 1:13
appeared 72:2
application 32:13
applied 33:1,15 37:17 38:22,23
  37:20 50:24:4
apply 32:10 33:17 38:20 51:11,20
appoint 80:2
appreciate 76:21
approach 35:2 79:18
appropriate 79:23
approved 29:1 43:5,6
approximately 30:24
areas 9:14
Aren't 17:3
argue 13:23 26:20 33:14 51:17
  55:15
argued 34:17
arguing 5:18 43:13 51:19 52:9
  53:17 62:16 63:13
argument 7:10 22:1 31:16,24 46:11
  54:16 61:25 70:13 77:8 79:9
arguments 26:3 52:8
arises 16:11
arose 51:25
arrest 8:18
arrested 8:15,16,24 10:9
art 52:4
articles 14:19
ascertaining 9:17
aside 17:24 18:3 37:15
asked 63:1 65:16 73:3,24,25 74:17
  74:25 86:14 87:4,8
asking 26:15 65:14 88:3
asks 81:16
aspect 13:13 52:11 78:24
aspects 37:9 78:25
assets 10:19 47:5
assist 41:16 42:23 46:20 47:2,15
  64:24
assistance 27:23
assisted 5:2
assisting 19:23 24:17 43:24 65:10
Association 48:23
associations 32:22
assuming 4:19 6:6
assure 21:17
attach 36:21 55:2
attached 55:3,10
attempt 25:1,2 41:17 45:7 59:2,2
attempted 44:2
attempting 35:22 43:13 46:17,18
  46:19
attention 34:7 62:3
attitude 59:23
Attorney 86:16
attribute 8:25
attributed 5:4
audit 37:18 39:7,17 40:5,8,21 41:9
  41:23 42:14,16,17 17,22,22,25
  43:2,4,6,18 44:3 46:4 48:5,10,18
  56:22 57:7,7 63:19 64:5
audited 40:15
auditor 41:22 42:11,12 43:3,6,8
auditors 40:16

August 28:10,13,21
AUSA 36:2
authorities 7:15 8:15 9:22 10:19,22
  10:23 57:20 79:23
authority 74:2 78:1 83:2 86:1
available 57:14 72:10 78:8,9
Avenue 1:20
avoid 24:1 40:20 44:11 47:13 48:9
  86:2
avoiding 47:3,16
aware 14:17 16:25 20:8,10 23:24
  24:20 25:2 26:5 30:5,8 32:20
  43:8 48:24 77:3
axe 30:15

**B**

babe 22:14 25:13
babe-in-the-woods 19:19
back 4:2 13:10 18:9,21 20:8 22:21
  27:6 29:6 44:7 53:23 59:13 61:24
  67:12 83:13
backwards 84:20
bad 18:24 20:13 21:18 22:3 25:1
  26:11 29:2,15,17,25 30:21
Bahamas 59:11,1,4
balance 3:2
bank 7:7,25 8:21 11:1,4,20,24 12:3
  16:16 17:1,13,25 18:13,14,20
  20:9,15,17 21:3,5,19 23:24 25:5
  25:21 27:6,18,20 28:2 29:9,11
  32:16,19 33:23 34:3 35:17,19
  36:5,15,23,23 44:10 45:24 47:5
  47:15 48:25 50:4 53:13,16 56:3
  59:25 61:12 63:15,19 64:14
  67:17,20 69:13 71:16 73:6,8 82:5
  82:9
banker 10:4,9 19:19,20 22:10 49:24
  60:2
bankers 12:13,14 21:9 36:18,24
  49:21 56:7 59:5 64:23 67:20,22
  67:23
banking 9:21 10:17,22 12:16 22:17
  32:21 40:16 43:4 48:22 54:17
  71:9,12,13 74:2 79:15 82:2,12,14
banks 5:6 7:6,14 8:6,10 18:2
Bank's 59:1
Bar 88:9
based 32:4 45:24 73:16 80:24
basically 4:22 17:9 29:3 53:15
  84:10
basis 9:25 44:18 53:3,4,9 63:17,17
  74:5 83:22,23
Bates 62:3
bearings 56:23
began 70:25 77:13
begins 4:18 56:17,19
Belgium 8:23
belief 39:10 40:12 41:18 44:1 48:8
beliefs 54:2
believability 60:3
believe 9:20 13:12 29:14 40:4,19
  41:20 54:9 62:8 74:5 76:4 83:18
  86:21
believed 36:18 39:6,7 41:22 42:1
  45:8,12 48:65
believes 34:22
belongs 18:20
beneficial 38:6
benefit 13:22 70:7
benefits 30:15
bent 84:20
best 61:9
better 54:8
beyond 50:11 80:16
big 23:13 65:14
bind 86:4
Biscayne 1:22
bit 47:21 84:16
board 39:16
body 73:14,15 75:17
boil 62:21
books 40:7,17 41:14,23 43:5 59:8
boss 28:24
Boulevard 1:22 2:2 89:6
Brazil 8:14 10:7,9,21 14:2,9,17
Brazilian 10:22 13:13
break 82:21
brief 31:9 34:6 75:23,23 76:23
  81:15

briefed 85:22
bring 8:20,22 11:3,14 14:20 20:15
  20:16 21:18 22:13 59:13 74:20
  74:21 80:20
broad 12:1
broaden 12:22
broken 75:2
broker-dealer 17:14,19 20:16
  26:25
brought 14:21 76:14 82:19
Broward 2:2 89:6
Bruckhaus 1:19
Bruhwiler 8:23
bulk 38:16 68:12
business 6:12 10:6,8,17 12:16
  34:10,10 40:3,4,5,9,22 41:15,17
  43:24 46:19 48:13,22 49:5 50:13
  50:13 56:8 57:8 59:3,6 60:8,9,10
  60:20,22,24 62:18 63:1,5 65:7,10
  65:14 66:10,13,16 67:13,14,22
  67:25 68:8,21 69:12,16,17 71:23
  74:8,10 82:4

**C**

C 79:12,13,13 89:1,1
CALENDAR 1:11
call 1:11 34:7 57:17,21 58:1
called 49:23 51:24 71:10 73:25
calling 50:21
calls 59:19
canard 84:16
can't 11:3,24 26:20,22 33:9 44:7
  59:14 64:7,8 65:3,6 68:16 80:21
  80:22 84:13,18 87:12
capability 80:16
capacity 32:19
cards 67:22
care 68:18
carved 8:2
case 1:3 4:17 5:11,12 6:18,21
  7:11 8:12,17 9:1,3,23 17:18
  18:14 19:14 20:12,13,23 21:7,12
  21:13 22:16,23 23:17 24:3 27:10
  27:16 28:8 29:17 34:8 35:4 37:9
  43:10 45:21 46:12,13,13 50:11
  51:19 55:15 57:25 58:9 62:2 61:11
  62:16 63:16 64:2 66:19 68:10
  70:25 71:7,7 72:19 73:13,15
  74:17 75:21,22,22,23 76:11,16
  79:2 81:24 83:3 85:16 87:11
cases 25:17 34:5 35:11 75:24
  78:24
caution 6:1
central 37:9 52:20 76:1
CEO 12:3
certain 23:2 34:13 68:7 80:10
certainly 22:12 51:1,2,14 52:13
  54:9 81:14 83:12
certificate 89:2
certify 89:2
chance 40:7,17
change 77:7
character 26:18
characterize 16:18
charge 7:5 12:23 13:2 34:12 46:17
  53:7 71:22,25
charged 12:20 13:19,24 14:12
  23:19 32:3 58:21 63:24 67:6
  72:23
charges 6:19 19:14
check 62:9
checks 34:14,17
cherry 36:20
chicken 22:15
chief 45:20 53:12
Circuit 5:10 29:17 46:13 88:10
circumstances 5:12,13 36:16
  37:19 38:8 79:18 82:20 87:2
circumvent 40:21 43:18 44:3 49:17
cite 34:5 35:11 75:22,23
cited 5:10 29:15 56:16
citing 64:21
claim 82:11 84:18
claims 17:14
class 16:22 22:7
classic 46:13 47:4 49:9
clear 6:23 10:2 15:22 20:23 25:16
  25:16 33:3,13 38:1 40:13 51:16
  52:8,9 53:8,10,10 54:4 60:5

73:14 78:3,3,9
clearer 32:10
clearly 34:23 38:25 77:1
client 17:22 38:16,18 49:9,24 59:18
60:3 61:22 63:8 71:21
clients 7:7 18:9 19:13 22:18 47:4
57:19 59:5,12,16,24 60:12 63:2
64:24 68:17 74:21 75:1
client's 13:22
close 55:25
closing 51:16 79:9
cloth 67:7
Code 23:19
cogent 41:6
COHN 1:11
coincidence 85:8
combined 61:17
come 3:1 9:25 13:4 18:23 24:15
25:12,12 30:20 59:15 63:9,20
70:19 74:18 75:2,25 76:19 84:2,3
comes 5:20 6:18 23:8 30:12,12
coming 8:18 17:20 23:12 26:17
39:25 40:1 56:22 59:5 60:12
comments 59:23
Commission 71:9,12,13 79:15
82:14
commit 24:2
committed 12:5 64:12 84:4
committing 59:22 65:9 68:2,14
communicate 24:22
communication 24:24 29:20
communications 87:4,19
company 40:6
competent 5:8
complete 57:12
completed 28:17,17,22
completely 26:9 41:11
compliance 9:24 33:24 63:14
complicated 49:18
complicit 17:6,16 18:4
computers 10:21 12:6,13
conceal 9:22 10:22,23 12:15 24:1
38:6 40:2,3,22 41:17 42:4,25
43:21,23 44:2 46:22 47:24 50:8
59:2 61:2,2 64:22 67:25 69:16
concealed 48:4 65:3
concealing 10:19 44:12 50:12
64:24 65:11 67:14
concealment 12:12 44:1 49:12
50:10,12 52:6,11,15 54:5 59:6
65:10
conceals 61:2,3
conceivably 60:16
concern 61:21 68:24
concerned 49:4 58:14 59:24 60:12
61:19 63:19 66:10,15
concerning 31:16 54:17
concerns 58:9 70:16
conclude 36:7 51:11
concluded 88:13
conclusary 83:25
conclusion 42:9 80:12,21 87:21
conclusions 73:12,15,18 75:13,20
80:10 83:20
conduct 4:2,20 10:12 11:7,7 13:19
13:24 16:11 23:6 28:7 29:2 33:6
35:4 42:17 44:21 45:24 80:6 84:4
conducted 69:17 73:5 75:16 81:2
conducting 71:10
conducts 43:6
conferences 25:22
conflate 56:11
conflating 18:12,18 55:14
conflation 57:12
confrontations 25:23
confuse 58:20
confused 58:5
confusing 33:13 36:2 39:21 44:19
45:18
confusion 35:22,25 36:3 37:3,11
43:13 51:3,9 54:8 64:6,6
connect 11:13 26:21
connection 8:12 11:6 67:9
consciousness 59:1 61:7,8
consequently 34:15
consider 20:24 22:21 69:22 76:1
considerably 71:12
considering 59:24 86:20 87:9
conspiracies 12:19
conspiracy 4:14,14 12:1,3,10,17

12:22 16:14 22:16 23:25 24:5
34:11 35:1,4,5 46:14 47:15 49:9
50:9 64:22 73:5,7 77:18 84:8,9
conspiratorial 45:11
conspirators 22:22 40:20
conspire 24:17
conspired 33:23 34:12
conspiring 23:19
contact 63:7
contain 38:11
contained 38:12,16,17 77:24
contains 79:4 80:10
contemplated 49:3
contended 9:16
contentious 70:12
context 61:23 66:16
continue 11:3 59:7
continued 38:6 71:7
contort 57:18
contract 42:16
contracting 63:5
contrast 11:17
contrasted 9:24
controversy 85:12
conversation 26:2,4 28:5,10 30:11
conversations 17:3 34:20 35:9
45:11
convict 11:9
convicted 51:17 52:25,25
conviction 53:3,9
cooperating 26:4 53:12
cooperator 27:3 45:20 71:18,24
cooperators 77:17
correct 10:16 13:5 28:11 29:20,21
29:24 37:20 38:11 43:1 79:18
correctly 37:23
couldn't 44:13,14
counsel 5:3 12:3 31:14 62:17 74:19
countries 5:1 6:13 7:6 12:20 13:6,8
64:10
country 14:1 83:1
couple 38:1 43:22 61:6
course 10:25 23:5,9,14 24:4 40:5
61:18
Courthouse 2:2
courtroom 6:10 11:9 71:19
courts 82:16
Court's 24:20 70:20
cover 78:20 79:10
covertly 69:13
co-conspirators 12:2 25:17 80:13
co-operation 75:11
Crafted 62:17
create 6:8 51:3 64:6
created 74:9
credibility 73:19,20 74:13 79:7
87:1
crime 23:19 35:5,7 63:13,23 64:16
64:22,22 65:9,18 68:2,4,14 72:23
77:12 81:8 83:19
crimes 63:16
criminal 8:17 9:3 22:16 46:16,22,25
75:18,24 83:3
criminality 24:25
critical 56:10 73:9 81:8 87:1
criticism 79:14 81:18
criticizing 79:16
cross-border 9:21 10:5,8 12:16
22:17 46:19 50:13 55:18,20 57:1
57:2,8 59:2,16 66:10,13,15 82:4
cross-examination 9:9,12 14:21
14:22 26:3
cross-examine 30:13
Curer 10:9 71:15
currency 35:13
current 55:23
customer 7:25 8:2 33:4 68:20
customers 9:25 56:8 59:10 60:13
62:12 68:1 69:12
Customs 12:14

**D**

D 1:16
Daly 1:14 3:7,7 9:8 10:16 11:6,25
13:4,12,25 14:5,15 16:7 58:24,25
61:6 64:21 67:9,11 68:5,21 69:7
78:13,14,22 79:1 81:16 83:11,12
83:18 84:10 85:1,5 86:10 88:1,2
Daly's 81:21

danger 56:25
dash 3:4
date 88:6 89:5
dated 55:17
dates 4:2
day 82:10 85:6,9,17
deal 4:23 6:13 20:14 23:13 39:14
39:18 60:8,23 86:2
dealer 12:7
dealing 77:21
debatable 86:6
debate 26:25
decades 21:19
December 28:20 85:1,5,13,20
decide 70:6 84:13
decided 27:9 37:13 86:21
decision 36:22,22 37:14,16,20,21
38:25 39:6 41:11 43:16,17,20,21
75:7 77:13 78:1,2
decisions 70:3 87:14
declaration 32:8,14 36:13 44:15
declare 7:14 8:7 18:5,17,19 28:3,25
declared 7:25 8:9 21:11 27:25
47:11
deductions 16:23
deemed 31:10,16,24 32:10,12 33:1
33:15,17 35:18,19 36:8 37:7,17
37:24 38:2,8,15,20 40:24 41:10
41:23 42:20 43:11,14 45:22 46:2
46:2,5,5 48:7 49:11,22 50:4,20
51:1,18,20,22 52:11 53:4,13
58:13,15 62:12,14,24 63:6,12,16
63:19,22 64:3,10,15 65:13 66:14
66:17,24 67:5 70:1 78:15
deems 52:4
deep 22:10
deer 35:7,10
defect 78:11
defend 6:12,14,15 12:24 20:20,24
21:3,20
defendant 1:8,18 9:10,10 10:8
29:18 34:18,21 51:4 70:18 76:1
78:8 80:12 81:1 85:25
defendants 10:2 34:12,20 45:8
Defendant's 3:16 15:16 54:16
70:15 83:25 86:11
defense 9:16,20 16:6 20:24 23:16
25:20 27:23 31:20,23 37:10
39:12 43:13 50:6 54:24 72:19,24
79:11 83:6
defer 53:24 87:20,24
deferred 82:6 84:3,24 85:2,7,23
86:1
defining 56:23
definition 33:6 34:15
defraud 4:14 12:11 23:20 46:14,18
64:22 68:16 77:10
defrauding 13:1
defuses 51:8
degree 69:1
demonstrate 45:5
demonstrated 51:2
demonstrates 86:22
denied 73:25 77:15 78:4 88:7
deny 69:19
Department 1:15 3:8 72:3,13 75:11
79:25 80:2,4 81:25 82:1,5 86:3
depositors 8:10
depth 51:10
Deringer 1:19
described 23:5 72:14 82:15
describes 4:16 82:19
designed 10:3
desk 18:9
despite 4:1 8:20
detail 49:14
detailed 25:20
detained 8:24,24 72:6
determinable 85:12
determination 80:15 86:25 87:12
determinations 73:19,20 79:7
82:16 85:19
determine 54:8 83:16,24
determined 5:11
determining 83:14
device 55:6
diaries 28:6
didn't 5:3,16 6:7 7:14 9:16,20 12:23
18:21,23 21:15 35:19 36:10,15
39:19 41:15 45:10,11,25 46:11

48:21 50:16 60:6,21,22,23,24
74:5 75:5 77:23 79:11 80:2,13
83:21 86:19
difference 11:16
different 5:1 13:5 25:5 27:3,6 28:1
34:21 46:7,7,8 47:21 74:9 79:1
differently 23:2
difficult 28:6 70:5 77:23 82:23
direct 14:22 62:3 87:17
directly 10:11 22:5 73:17 76:16
78:7
dirties 20:19
dirty 19:11 26:14 49:2 61:12
disadvantage 69:24
disagree 13:21
disclose 10:18 42:3 68:4,7,12
disclosed 23:21 44:2
disclosing 68:3,8
disclosure 11:18
discovered 66:10
discovery 5:14 27:16 28:18,19
60:10 87:13,25 88:2
discretion 63:8
discretionary 63:3
discuss 43:14
discussed 25:19 38:4
discussions 25:20,23
disingenuous 82:11
disprove 72:25
dispute 21:7,8
District 1:1,1,12 34:8
Division 1:2,16 75:10 87:6
docket 3:19,20 15:18 31:18,18
54:18,19 70:15,15
document 6:14 7:3 55:2 57:15,15
57:18 58:17 59:21 60:15 61:16
61:22 64:1 66:4,19 67:8 79:5,6
83:15,17
documents 6:11 14:15 20:21 28:6
33:11,16 36:21 39:11,11 40:7,18
41:7 44:20 45:3 63:18,25 64:3
65:5,25 66:6,9,22 67:4,8 76:24
82:1,7
doesn't 11:25 12:8 13:12,14 15:25
16:18 33:14 35:8,11 36:25 57:21
61:23 63:6,7 77:7 79:25 80:6,24
81:6 82:15 83:18,19 85:8
doing 18:18 30:14 56:8 58:5 64:14
65:4 69:12 72:13 74:12 85:18
don't 5:1,2 6:8,20,25 7:6,20 11:14
12:5 13:18 17:25 19:8,15,15,25
25:14 27:7 28:3,6,7 31:9 39:4,4
41:3 42:8 44:24 49:14 59:7 61:18
63:9 64:12 67:11,19,22 68:11,16
68:18,19 69:3 70:4 73:21 74:3,4
74:5 78:17 80:25 81:1,8 83:18
84:12,15 86:5,12 87:10,14,14,21
door 15:1,6,13 16:7 31:3 44:7,8
Downing 74:17 87:18
dozens 33:19
DPA 85:17
drafting 32:9
drawing 36:23
drop 22:21
Drug 12:6,7
due 77:20
duty 24:12,15 30:6 74:2
D.C 1:17

**E**

E 1:15 2:2 89:1,1,6
earlier 18:10
early 70:25
easily 47:24 82:21
Eastern 34:8
EBK 70:16 71:10,20 72:2,10,11
73:10,12,18,23 75:6,8 77:13
81:24 82:7 84:25 85:4,13,15,19
EBK's 75:7
education 22:25
effect 16:5
effective 40:9 42:23
efforts 40:9 42:23
either 57:14 69:7 72:24
electronic 55:6
element 19:17 37:11 72:23,23 73:4
76:11,12,12,14
elements 73:3,9 76:2 81:8 83:19
elicit 14:23 26:16

email 10:9
emails 10:7 39:10 87:18
eminently 86:6
employed 42:12 79:3
employees 20:4 46:18 47:7 49:7 50:8
enable 77:17
encrypted 10:10 12:13 67:24
endeavor 54:22
enforcement 10:11 71:19
engage 77:10
engaged 19:22 27:18
engaging 56:3
English 78:18
enjoined 82:3
entered 82:8 84:25 85:2
entering 12:14
enters 85:6
entire 53:14 56:2 70:1 74:10 78:22
entirely 25:5
entities 38:5
entitled 22:13
entity 43:5
entry 3:19,20 15:18 31:18,19 54:18 54:19 70:15,16
enure 13:22
equals 7:12
equivalent 53:15
Ernst 48:16
error 75:24
especially 22:15 51:9
Esq 1:18,19,21
essence 10:17 62:21
essentially 73:19
estimated 17:21
Europe 4:24 7:5
European 4:25
evade 34:13,18,23 45:7
evading 12:21 41:16
evaluate 22:21 58:18
evasion 7:12 17:18 24:2 55:16 56:9 56:11 57:5,5,10,19 58:12,15,17 58:22 59:22 61:17,20,23 62:2 63:17,18,21 64:3,8,12,20 65:9 66:7,25 67:5
evidence 3:17,17 4:4,7 5:7,8 8:16 8:17,19,20,22 9:2,6 10:2,12,14 11:12,12 13:11,20 14:3,5,11,16 15:3,7,9 16:16,20,24 17:5,9,16 19:6 20:11 21:14 22:2,4,12,13,15 22:22 23:10 24:25 25:11 26:5,11 27:2,11 28:2 30:12 31:15,24 32:6 33:13 34:2,19,24 35:3 36:4 45:5 45:23 47:19 49:12 51:7 52:10,25 54:16 55:4,15 58:2 60:19,25 64:1 64:12,17,19 69:2 70:7,13 73:16 74:2,7 75:6,17 77:24 78:8 80:17 84:16,19 86:16,24 87:12
exact 10:21 19:1
exactly 17:7 20:6 77:18
examine 40:17
example 10:21 17:2 18:12 45:20 47:4 55:13 57:24
excellent 22:1
exception 8:2 13:13 70:20
exceptions 15:25
exchange 59:11
exclude 15:17 31:23 32:15 54:16 57:25 70:13
excluded 37:4
executive 39:16
executives 37:8 39:13 46:18 49:8 59:2 74:12 79:5 84:5
exhibit 50:18,19,19 55:2,9,10 58:8 58:25 61:24 79:12,13,13
exhibits 36:21 39:12 52:19 58:8
exist 35:5
existence 48:24
expect 9:2
experience 16:20 22:19 24:6,7
experienced 36:2
explaining 10:8
explicit 53:2
explore 86:13
exposure 56:24 61:10
expresses 54:2
extensive 71:12 72:12
extent 24:9 30:9 47:20 49:10 57:1 65:20 66:2

external 37:18 40:16 41:22 42:11 42:16,25 43:2,3,4,5,8 48:5
extract 60:16 86:23
extraneous 79:5
extremely 16:24
extrinsic 19:10
eye 83:14

**F**

F 1:14 89:1
face 8:5 78:19 80:19,22 81:10,17 81:22
facilitate 47:3
fact 4:1 7:4,18 8:9,20 12:6 13:25 21:5 23:24 24:21 25:4 26:20,22 28:1 29:5 42:1 46:12,14 48:23,24 57:19 60:14 73:14 83:22
factor 5:13
factors 6:17
facts 22:20 25:18 26:14 34:9 74:14 75:13 83:20
factual 46:8 48:14 50:6
factually 49:7
fails 4:6,8,8,9
failure 35:12
fair 30:17 64:18 69:3
fairly 44:19
Fall 72:7
falls 4:20 50:25 61:24
false 65:11
falsification 50:15
falsifying 44:12
familiar 72:15
far 20:8 26:13 29:8 60:18 87:7
fashion 41:6
fatal 78:11
faxes 59:19
fear 40:19 42:14,19 47:23
February 81:5 85:2,16
Federal 2:2 3:17 79:15 88:9
feel 10:14
feels 31:3
fence 62:21
figure 5:19 35:9 79:6 83:23
file 35:13
filed 5:25 35:14 54:18
filing 65:11
final 52:7
finally 28:17 56:17,18,21
finances 22:25
find 16:2 59:12 69:25 76:10 83:17
finding 74:13
findings 43:9 83:2
finds 15:9 31:1 52:12 61:1
fine 54:11 71:5
finish 68:6
FINMA 70:17 73:25 79:13,17,21 80:7 85:19
fired 81:5,6
first 3:15 4:3 5:9,13,16 7:4 16:7,12 17:11 19:8 28:9,11 30:10 31:20 51:15 56:5 58:8 66:22 85:24
fit 15:25
five 5:1 6:10,13 18:23 27:5 30:19 72:1 80:25
Fl 1:23 2:3 89:7
flag 65:13
flies 8:5
flipping 26:8 27:4
Floor 1:23
FLORIDA 1:1,6
fly 70:3
focal 68:25 70:1
focus 52:10 69:5,10,11 70:21
focusing 54:4
followed 48:10 68:13
following 17:20
followup 62:18
foregoing 89:2
foreign 8:3 32:10,16 33:2,7,15,17 35:20 36:11,17 37:24 38:12,17 38:18 41:25 44:13 48:17 50:20 51:12,20 63:20 68:17,20 77:22
forget 80:22
form 60:18
former 56:24
forms 83:21
forth 58:4 72:14,15 78:4
forward 3:1 22:22 24:15 59:15

found 64:5 82:2,4
four 17:11 72:6
frame 9:15 20:21 23:9 25:15
France 8:13 13:16
Franz 55:17
Freshfields 1:19 3:11
front 44:8
Ft 1:2,6 2:3 89:7
full 36:22 74:14
fundamental 79:21
further 80:4
furthermore 79:11 80:10,18 81:1
future 56:23

**G**

gain 25:10 65:5
gained 16:20
game 30:17
Garland 75:22 76:3 77:1,19,20 78:10
Garland's 77:2
gather 87:8
gathering 74:14
general 12:2 24:4 25:7 86:16
generally 59:1 82:19
Gentlemen 85:10
German 78:23
Germany 7:6 13:16
getting 26:17 47:23
Ghana 77:21
giant 59:15
gig 61:1
give 15:15 17:2 45:20 53:22 67:8 69:19
given 14:8 27:6 51:6
gives 85:25
glad 55:3
glean 26:1,1
glimpse 40:5 41:13,15
global 4:19
go 13:10 19:7 29:7 33:16 39:5 40:17 42:18 43:3 51:10 53:23 55:8,8 56:10,17 59:15 61:23,24 67:12 68:10 72:21,24 73:1 76:10 81:8 83:13,19,19 84:7 88:9
goal 12:15
goes 4:20 9:19,21 10:15 18:9 19:16 19:18 22:5 45:22 50:11 56:3
going 8:16 9:21 11:9 16:4,25 18:15 20:5,8,25 23:1,4 25:25 26:10,10 26:15,25 27:2,5 29:3 30:3,17 31:2 35:23 37:1,15,17 39:7,7,21 40:4,6,8,15,19 41:1,2,4,8,9,18,20 41:23 42:10,22 43:17 44:20,24 45:3,16 49:15 52:6 57:7,16,16,21 58:3,10 59:6,16,20 60:10 64:2,6 64:13 65:1,14,16 66:21,23,24 67:11,21 68:11 69:18,19 76:25 77:16,18 81:12
good 3:7,10 30:14 31:21,22
Government 1:14 4:4,7,9 9:7,8 13:12,14 14:12 15:3,4 16:18 18:17,20 19:3,16,18,24 20:7 25:18 26:8 28:9 30:10 31:3 32:2 32:5,25 33:9,14 34:5,17 35:11,16 35:24 36:4,20 45:14 49:11 51:6 51:10 52:20 53:17 54:18 55:14 56:16 57:4 58:10,25 62:15 63:23 67:12 69:9 71:14,24 74:1,1,15,22 75:9 76:23 78:13 80:6 81:7 82:8 82:11 83:4 84:2,4 86:15,19 87:1 87:8,17,23
Governments 17:23 18:6
Government's 3:16,20 6:18 7:11 7:23 15:18 23:6 31:18 33:12 54:25 55:10 70:12,24 71:6 73:1 75:2 77:16 87:11
grade 22:24
grant 15:2 31:2
granted 15:12
grants 14:25 15:1
Greg 3:8
GREGORY 1:15
grind 30:16
ground 38:24
group 39:15
groups 60:5
guess 60:2 67:2 76:8

guessing 57:16
guidelines 62:13,21
Guignard 71:23 74:11
guilt 59:1 61:7,8 81:3 83:25 85:9
guilty 58:6 76:1
gun 57:4
gunk 19:11

**H**

handful 33:18
handling 3:21
happen 40:20 41:1,4,9,18,21 42:10 52:6 57:16 58:20
happened 27:4 30:14 36:23 40:11
happening 35:6 45:15
happy 32:23 52:9
hard 76:18
harmless 16:23
hasn't 45:14
haven't 6:13 69:25 86:21 87:21 88:4
head 4:24 12:4 26:9
heading 62:12
heap 11:20,24
hear 18:15 31:20 45:16 58:3
heard 10:24 11:6 23:3 71:22
hearing 1:11 88:13
hearsay 70:19
heart 73:1
held 68:17,20
help 24:1,1,2,18
helpful 32:24 55:1,11
helping 24:17
hesitate 77:23
hid 72:18
hide 19:23 47:5 67:23
hiding 23:25 57:19 58:12 67:13 68:21,22
highest 71:16
highlight 79:11
highlights 14:6
highly 18:25 27:2 33:20 34:1 80:11 83:5,25 86:6
history 40:16
holders 17:23 18:5
holding 59:17
holes 27:10
Honor 3:21 4:1,23 9:8 10:16,24 11:1,25 13:5,25 14:15 15:20,22 15:24 16:10 20:23 21:22,24 28:23 29:14,24 31:7,21 32:1,23 33:12 35:19,24 37:4,7 43:1 44:6 45:14 46:9,11 47:19 48:2,3 49:14 50:14 51:13 52:13,16 53:2,25 54:9,21,24 55:5,9,25 56:10,12,18 57:6 58:23,25 64:21 67:11 68:5 69:7 70:22,24 72:15 73:21 75:14 76:6 77:5,7 78:6,14 80:20 81:15 83:5,9 84:13,20 86:10,14
HONORABLE 1:11
Honor's 76:21
hopelessly 58:5
hours 4:5 80:25
housekeeping 86:10
huge 7:17 8:2 60:8
hugely 45:18 46:3

**I**

idea 6:7 48:21 60:3 80:23
identical 23:4
identified 9:11 79:2
identity 82:24
ignoring 46:12
illegal 7:13,17 8:5,8 18:13 40:3,4 40:22 42:21
illustration 17:14
imagine 40:6 76:18 85:17
imbalance 86:7
impeachment 9:12
implementation 8:7
implemented 5:5 62:11
implicate 59:20 60:16
importance 77:24
important 6:17,20 22:15 32:24 55:21,25 62:20
impossibility 35:3,12,15 45:6 46:6
impossible 21:20 50:22 52:24
improve 63:13
inaccurate 86:23

93

inadmissible 35:3 73:16
incentive 74:8
include 14:15 36:8 84:12
includes 4:2 77:9 80:12
including 7:6 32:18 71:14 82:3
income 18:1,6,19 19:23 47:3,5
inconceivable 59:22
incorporated 84:21
incorrect 32:4
incredibly 33:20 36:1 44:23 49:17
incriminating 18:25,25
independency 79:19
independent 79:16 80:3
indicated 22:3
indication 79:2
indicted 12:2
indictment 4:18 6:20 12:20,25
   13:19 14:12 16:12 17:12 23:5
   25:15 27:8 30:23 32:4 47:17 67:6
   72:1 74:25 75:3 85:14 86:2
indictment's 23:9
individuals 73:22 74:18,19 75:1
inextricably 4:15 13:23,24 59:3
   65:21,23
inference 7:17
information 22:4,7 24:16 25:25
   28:14 30:24 39:8,9 40:23 43:3,22
   44:2 47:23 50:8,12 72:9 75:6
   77:16 78:5 79:4 84:5 87:15,16
informed 22:4 25:3 72:12,17 73:11
informing 17:5
infraction 11:24
inhouse 17:13
initially 76:21
initiative 4:25,25 7:5
inject 35:22,25 37:11 43:13
injecting 37:3
injunction 82:7 85:13,20
inpenetrable 47:22
inside 39:10
insight 65:5
instance 16:4 19:8 22:7 30:7 47:1
   85:24
instant 10:12
instituted 7:5
instruction 49:25 50:3 51:6,15,16
   52:7,22 53:3,8 69:8,20,22 77:5
instructions 49:21
instrument 34:13
instruments 34:14,15,22,25 45:9
insufficient 7:1
insure 44:16
intend 13:14 54:7 77:11 83:13
intended 9:11 14:23 86:15
intends 51:10
intense 86:22
intent 13:9 32:15 43:14 51:8 76:4
   76:11 77:2,8,9,11
intention 34:18
intentionally 21:10
interested 29:7
interfere 79:19
internal 4:14 79:17 80:7
internally 37:13 42:21
international 71:23
internet 62:17
interpret 57:18
interpretation 39:3
interrupt 5:15
intertwined 4:15 13:23,24 65:21,24
   65:23 69:1 84:15
interview 28:12 52:18 71:17,17
   72:5 74:23
interviewed 79:3,6,7 80:24
interviews 21:2
introduce 4:5 8:16 14:22 15:3
   16:17,24 20:11 26:11 28:2,7 33:9
   44:19 49:12 52:5 66:6,21
introduced 9:3
introduction 15:6 27:14 34:1
investigation 70:24 71:6,11,11
   72:10,11 75:16,20 79:17,20,22
   80:1,7 82:18 83:2
investigations 79:24
investigative 73:15 75:25
investment 56:6
investor 58:4
involve 33:7 65:1
involved 26:12,13 33:7 34:9,9
   82:20

involves 16:14
involving 21:4 22:16
irrefutably 36:1
irrelevant 19:11 46:6 49:18 70:13
   80:11
IRS 8:6 10:4 12:11,21 23:21 24:1
   32:20 33:23,25 35:18 39:7,9,25
   40:1,4,6,16,23 42:3,4,14,18 43:3
   43:6,7,9,23 46:14,18 47:23,24
   48:11,12,21,24 49:3,4 50:8,10
   59:9,12,16,17,18 60:1 64:22,23
   65:19 67:13 68:14,22,22 77:11
isn't 20:1 26:12 36:19 37:3 39:21
   40:8 50:7,22 64:16 75:19 76:22
   82:24
issuance 84:25
issue 8:13 9:24 14:13,24 16:9,11
   19:21,21 24:9,19 27:1,21,22 28:4
   29:9,10 30:2 31:4 34:14 37:8
   38:16 39:5 40:2 41:13 42:5,17
   43:16,16,18 47:12 50:25 51:15
   54:2,8,15 63:12 67:12 69:15
   70:20 76:1,4 77:2 81:14 82:24
   83:15,19 84:7 85:8 87:20 88:8
issued 78:3 79:15 81:19,20 82:8,9
   85:1,13,16,20
issues 5:9 19:2 23:3,4,8 24:4,7
   25:2 30:6,8 37:1,9 48:7,14,14
   49:6,18 50:9 54:3 60:15 61:2,2,3
   61:3 74:24 80:20 81:19 82:25
   83:2,2 86:11
Italian 9:23,25 11:15 13:14
Italians 11:16
Italy 8:9 11:17 14:10
I'm 54:24
I've 87:4
i.e 62:23

**J**

JAMES 1:11
January 62:6,11
Jason 1:14 3:7
job 76:22
John 32:8
join 73:7
joined 84:9
judge 1:12 16:22 18:18 19:18 35:2
   36:2 44:4 58:13 64:16 66:21
   81:10
judged 81:23
judges 88:10
judgment 76:3
July 16:13
June 8:22
jurisdictional 56:7
jurors 36:3
jury 15:5 16:8 18:14 22:20,21 27:1
   29:10 31:5 36:6 37:1,1 39:22
   44:24 45:16 51:15,17 52:7,8 53:7
   53:8,10 54:3 55:4 58:3,20 64:13
   70:14 75:25 76:25 77:3 78:10
   80:17,23,23,24 83:23 84:22
jury's 76:22 86:25
Justice 1:15 3:8 72:3,13 75:10
   79:25 80:2,4 81:25 82:1,5 86:3

**K**

Kaplan 36:2
keep 7:16 65:3,6 66:5 74:24 83:6
Kim 1:22 3:13
Kimberly 1:19 3:12
kind 9:2 23:8,11 24:5 25:25 26:3,5
   26:18 29:2 32:19 41:10 77:18
   78:7
kingpin 12:8
Kline 35:12,14 36:2 46:7,12 50:9,11
   50:15
knew 12:6,15 21:5 26:23,24 27:24
   33:24 39:25 49:3 85:17
know 5:2,2 6:25 9:16,20 12:8 17:24
   17:25 18:3 19:10,15 21:15 28:3
   48:21 59:9,16 60:6,7,24 62:25
   65:7,15,16 66:11,13 67:19 73:21
   74:4,19 77:17 80:24,25 81:1
   83:21 84:22 85:21 86:12 87:2,10
   87:11
knowledge 10:15 11:13 12:18 13:9
   14:13 16:3 19:17,22 20:4,4 21:8
   22:5,10,13,19 23:7,12 24:3 25:10

   25:12,15 27:21 30:3 31:4 51:8
   60:19 73:5,10 76:12,17 77:8
known 11:11,22 12:12,13 68:22
knows 22:25 60:19
Kobre 1:22 3:13
Kurer 74:16 81:4,5

**L**

label 19:15
lack 6:9 87:16
lady 85:10
laid 71:11 74:10 75:13
laptops 10:10 67:24
largely 41:20 75:18
late 28:12
Lauderdale 1:2,6 2:3 89:7
law 10:10 17:17 20:23 23:18 26:23
   35:10 37:2,12 41:2,12 43:11
   44:25 45:1,1,12,13 46:15 51:20
   51:23 53:18 55:14 56:1,2 57:7
   73:13 79:2,23 80:13,15 82:2
lawfirm 3:11 80:5
laws 17:19 20:16 21:4 22:10,10
   24:18 25:6 27:1 28:4 35:23 43:14
   54:18 57:9,11,22 58:10,16,18,21
   61:9,17,21 63:7 64:3,10,15,20
   65:21,21,23,24 66:1,2,12 68:25
   69:2,2,10 77:14,15
lawyer 17:13 55:18
lawyers 36:18 42:9 75:1 77:22
lay 41:6
layout 82:15
lays 82:18
lead 36:6
leap 7:17
learn 10:19 16:22
learned 25:16 27:16 28:9,20,20
   29:7 30:10
learning 19:3 22:6 23:1 39:9
led 36:23 75:20
legal 24:22 35:12,15 45:6 46:6 49:2
   49:6,13 50:7 51:22 60:20 62:10
   72:24 77:21
legally 11:12 40:24 50:22 68:3,7
letter 55:22 86:12,15 88:5
letting 21:13
let's 13:10 15:15 17:24 18:3 64:11
   86:23
level 20:3 22:19,20 23:2 25:10
Lewis 75:23 78:10
Lexington 1:20
liability 38:24 53:5
Liechti 45:20 55:22 57:17 71:22
   72:4,6,17,18 73:7 74:9,11 80:24
Liechti's 53:23 54:1
lied 73:11
light 54:3 63:20
limine 1:11 14:25 15:9,16 29:16
   31:2 54:16 69:19 70:6,13
limit 52:13 76:5 86:13
limited 32:12 36:13
limiting 51:6,14 52:7,22 69:8,20,21
line 36:24
lines 56:18
link 60:15 64:2
linked 10:12 59:3
Lipton 79:25 80:5
little 33:16 49:2
LLP 1:19 2:2 3:13
loaded 58:9
logic 11:15
London 84:23
long 78:2
look 6:8,17 29:17 40:7,14 41:10
   48:6 67:12 78:19 81:9,16,22
   83:22,23
looked 48:16,18 79:3
looking 6:11 10:11 13:7 43:15
   84:13
looks 43:5
lot 32:18 72:3
loudly 71:3
lower 20:3
luncheon 88:9
lying 12:14

**M**

machinegun 12:9
mailed 49:23,24

main 38:15
maintain 10:1 38:7
majority 38:18
making 18:10 38:22 37:14 41:25
   46:12 52:8 59:19 67:7 77:8
man 8:19 11:23,24 19:12,20 20:19
   27:8 58:21 63:24 64:8,11,17
management 13:2 41:11 67:21
   71:15,21 72:16,19 74:10 86:24
managers 9:17 37:8 39:13 46:18
   49:8
mandate 68:13
mandated 40:12
mandates 63:3
man's 21:17
Marcel 8:23
marching 49:16,19 52:14
Marcu 1:18 3:11,11 70:22,24 71:3,6
   73:1,4,20 76:5,8,11 77:5 78:12
   78:22 81:15 83:8,9 84:6 85:11,24
   86:14
Mark 1:14 3:7
marshal 10:10
massive 50:14
material 27:14 72:7 77:2
matter 3:3 31:6 35:8 36:25 45:10
   45:11 51:20 70:11,12 77:15
   81:13 86:10 89:3
matters 3:14 9:12,13 70:6,15 85:21
Matthew 1:21 3:13
mean 15:2
meaning 56:24
means 33:22 56:7 58:11,15 63:4
meant 40:15
measures 39:8
meet 60:13 64:24
meeting 23:1 30:19 59:5 69:13
meetings 25:22 28:21 72:5
members 71:16
memo 17:12 55:23 56:2 57:10,11
   66:12,16
memoranda 72:5 87:18
memorandum 52:18
memorandums 21:2
memory 30:14
memos 66:17
Menchel 1:21 3:13,21,22,23 4:1
   5:19,24 6:6 7:22 10:24 11:1,25
   12:19 13:21 15:20,21,22 16:10
   17:7,9 19:7,18 20:6,10 21:22,25
   22:14 23:13 25:12,19 26:6,8
   27:13 28:23 54:20,21 55:9,13
   56:15,21 61:4,6 62:6,8 64:21
   65:8 66:3 68:2,6 69:21,23 70:8
   70:10 88:8
mere 7:18
merely 14:8 83:20
Merz 86:12,15
met 29:5
method 13:8 33:22
methods 79:2
Miami 1:23
microphone 71:1
mind 30:13 70:4,20
minute 27:4
minutes 31:11 80:25
misapprehension 80:8
misconduct 9:18,19 72:17,18
misfortune 46:15
mislead 36:25 80:17
misleading 33:21 36:1 44:24 45:19
   81:2
misrepresentation 35:21 46:1
   48:20 50:16 53:19,20
misrepresenting 35:17
missed 53:16
mistaken 37:20 39:2,4
misunderstood 32:2
model 62:18,22
MOI 17:21
MOI's 25:16 28:17
mold 54:5
moment 18:3
monetary 34:13,15 45:7,8
money 8:10 17:22 34:10 67:13
monitor 80:3
month 30:24
months 4:3 6:11 72:6 87:4
Morano 29:16
morning 3:2,7,10,15 31:21,22

motion 14:25 15:1,2,9,12,16,16,23
20:14 29:16 31:2,15 36:21 39:13
54:15,16,25 69:11 70:6,12 86:11
88:2,3
MOTIONS 1:11
motivated 74:8
motives 30:14
mouths 33:10
movant 15:1
moving 21:10 59:10
multiple 41:7,8 44:20,20 71:13,21

**N**

name 8:23 67:23 71:25
names 38:5 84:21
nature 10:5 56:25 57:8 69:11 80:9
86:12,22
need 12:8,16 28:7 39:5 42:8 43:10
49:11,14 65:15 68:10 87:2
needed 12:8 39:14,16,18 40:14
needs 15:4 84:22
negotiated 68:23
negotiating 48:22 86:8
negotiations 8:6
never 6:18 27:15 33:1 35:10 36:6
36:17 44:21 45:13 48:16,18,18
53:1 61:15,19
new 1:20 12:7 25:18 34:8 62:18
71:25
newest 88:10
news 14:18
nice 79:9
nominees 69:14
non-discretionary 63:2
non-registered 56:7
non-U.S 38:17 55:19,24
norm 75:15
note 36:20
noted 36:2
notes 72:4 87:18
notice 3:16,20 4:2,4,8,11,22 5:11
5:18,22 6:7,9,22 7:1,3 9:9 14:8
14:14 15:10 19:2 24:8 27:6,12,13
29:13 30:9,22 31:1
noticed 15:10
notifying 87:22
November 8:15 71:8
nullification 70:14
number 3:14 11:23 19:20 84:7,8
numerous 14:18
nutshell 42:24
NY 1:20
N.W 1:16

**O**

objection 3:16 9:5 52:7
obligated 68:3
obligation 8:3 18:19 24:21,22
26:24 28:3 36:15,17
obligations 24:2 41:16 43:25 47:16
obstruct 48:10 50:10
obtain 87:15
obtained 72:9
obvious 36:3 50:23
obviously 14:4 24:17 56:23 70:16
occurred 9:18 11:8 15:17 20:3
October 1:7 71:8
offer 67:3 85:25 86:15 87:22
offered 75:17 84:22
offering 14:12
offices 55:19,24 79:23 80:5
Official 2:1 89:6
officials 12:14
offshore 47:5
oh 65:8
okay 5:25 6:5 11:3 15:14 17:8,25
18:7 31:15 43:20 54:14 55:8 70:9
71:2 88:7
old 22:25
omitted 53:6
once 31:2 60:18
ones 33:18
one-on-one 25:24 26:2,4 30:11
open 16:7 74:23
opened 15:6 31:3
opening 7:7 15:1,13 51:17
operate 59:7 60:20
operations 13:3
opinion 62:10 76:7

opinions 82:16
opportunity 27:7 30:13 74:15 75:4
75:5 84:23
opposition 76:24
order 38:5 39:15 40:21,22 49:11
50:1 52:14 63:11 65:3,6 81:14
88:2
orders 49:16,19
ordinarily 75:14,15
organization 75:9
outside 15:5 16:7 23:21 31:5
outweighs 16:5
overt 16:12
owners 38:6

**P**

packaged 79:9
page 7:3 26:2,2 56:12,19 62:4 77:1
77:4 78:20 79:13,13
paid 81:3
Paine 56:21,24 60:23
paint 36:22
panel 71:19
paper 7:23 48:9
papers 5:10 22:6 33:12 35:11,16
37:10 38:4 53:17 56:16 72:15
paragraph 32:14 36:13 45:21 56:5
56:19 62:6
parallel 75:16,19,25 76:13,19
paren 55:24,25
part 4:13 12:9,11,17 20:14 22:1
23:17,25 24:25 28:18 29:25 31:4
32:4 39:16 41:22 42:13,15 48:17
65:1 67:25 70:25 73:8 74:23 86:2
participant 30:20
participants 30:19
participate 77:10,14
participated 84:5
participation 76:17 77:9
particular 5:5 39:1 43:23 46:19
62:4
particularly 14:2,9,16
parties 3:5 86:7
partner 3:12 78:2
party 86:4
pattern 28:1
PAULINE 2:1 89:5
pay 5:3 10:1 19:13 67:18
paying 60:4,5
peek 59:8
people 5:1,3 8:15,16 25:6,21 35:8
41:6 42:6 60:22 65:16 67:17
72:17,18 74:6,8 77:16 87:5,6
percent 17:21 18:5,8 19:12
Perez-Tosta 5:10
perfect 55:13 57:24
period 4:21 9:14 19:22 27:5
permissible 73:13
permit 6:23 75:24
permitted 15:3 68:7,12
person 23:11 24:5 26:18 28:12
60:1
personnel 71:20
persons 55:25
pertains 4:18
Peter 10:9
phone 45:11 59:19 63:9
pick 31:9
picked 36:20
picture 36:22
place 18:23 20:21
Plaintiff 1:5
plan 13:7 50:21 86:19
planning 50:18 59:10
plausible 9:19
players 82:20
please 3:5,24 76:10
plenty 84:16,17
point 7:4,9 15:4,8 16:1 17:6 18:10
25:10 40:25 68:25 70:2,25 86:13
political 81:18
Poole 1:14 3:7 21:23,24 24:14 25:1
29:12,14,21,24 31:7 37:6,7 38:1
38:13,15,22 39:4,20,23 41:7,22
42:13 43:1,12,22 46:9,11,24 47:2
47:10,12,18 48:6 49:4,13,21 50:6
51:2,13 52:13 53:2 54:1,9,13
portion 38:2 78:18
portrays 79:21

position 20:2,24 70:18 85:22
possible 4:6 14:20 63:2
possibly 17:24
posted 62:17
potential 30:3 56:13,16,19 71:18
potentially 3:17
power 86:7 87:16
powered 55:7
practicing 46:15
praised 75:10
praises 79:17 81:4
preceded 87:3
precisely 55:3 73:22
preclude 31:15
predated 17:4
predecessor 16:16 17:1 20:15
27:18 29:11 32:21
predicate 46:8
preferred 82:10
prejudice 6:8 25:19 26:12 45:15
50:23 51:4 88:7
prejudiced 6:15 27:14
prejudicial 16:5,24 19:1,11 20:19
21:14 26:23 27:2 29:8 33:20 34:1
44:23 45:18 46:3,6 58:20 64:15
69:4 80:11 83:6 84:1 86:6
prepare 27:7 69:21
prepared 72:20,20 74:20,21
preparing 28:8
presence 15:5 16:8 31:5
present 26:14 31:14 41:5 45:15
54:3 87:2
presentation 23:6
presentations 62:19
presented 10:13 39:12 62:18
press 14:19
pressing 38:24
pressure 86:22
pretrial 6:23
prevent 10:4,18
prevented 9:17
previously 9:11 47:21,24 60:2
pre-indictment 28:10
pre-2000 16:11
principles 62:12
prior 15:17 16:20 17:11 23:7 25:11
27:5 29:17 30:21 81:2,14 85:14
probably 27:9 70:12
probative 16:6 19:1 27:19 29:8
46:3 51:1,7 52:12
problem 32:6 33:19 51:14 52:19
60:7,18 64:7 66:8 67:1
proceed 6:3 33:16
proceedings 89:3
process 23:1 36:23 40:21 42:13
77:22
processes 42:9
produce 60:1,10 87:18
produced 10:2,7 28:21 30:10 77:3
professional 75:8
proffer 15:5 16:7 25:17 29:6 31:4
54:6,7
proffered 65:23
program 5:5 11:19 74:8
prohibits 26:19
promoters 10:3
proof 34:18 67:1 69:17,25
propose 41:5
proposition 34:2
prosecution 70:14 82:6,8,10 84:3
84:24 85:2,7,23 86:1,23 88:4
prosecution's 5:14
prosecutor 87:5
prospective 4:18 50:56:1
protect 39:9 40:9
protected 58:2
protecting 56:25
prove 12:5 14:1 19:16 34:25 64:7
64:11 72:24
provided 4:11 9:8 15:11 17:9 28:14
28:16 30:24 39:11 55:24 78:22
provides 80:17
public 59:15 70:18 75:17 83:1
published 85:6
pull 22:24
pure 35:3
purporting 44:18
purpose 13:9 15:23 43:2 55:23
65:18
purposes 9:9 51:19

pursuant 72:6
put 17:24 18:3 19:15 22:14,22
25:13 37:15 38:5 59:25 61:19,20
67:2,3 86:22
putting 21:11 33:10 36:4 45:3
50:18 58:2
pyramid 12:3

**Q**

QI 7:24,24 18:23 23:16,21 32:5,9,12
32:15,17 33:24 34:3 36:5,6,7,12
36:18 37:15,16 41:23 42:14,16
45:2,5,13,24,25 47:14,18,20,25
48:1 53:1,13 56:22,25 57:6 58:2
59:25,25 68:4,14,19
question 23:22 24:20 25:8,9 37:12
37:13,21 38:23 39:23 42:20,21
49:6,7 51:5 53:6 61:8 75:12
questions 65:14,15 85:11
quickly 7:2
Quite 88:5
quote 11:7

**R**

R 1:18 89:1
rails 8:14
raise 50:7 88:8
raised 23:4 51:15 54:4 86:11
ranging 12:1
Raoul 1:7 3:4 19:12 28:23 29:1,1
rarely 82:16
rational 16:19
reach 27:9
reached 42:8 73:15 85:19 86:2
87:21
reaches 73:12
react 22:23 39:23
reacted 42:10 48:1,15 49:8
reaction 14:1,7 76:21
reactions 47:22
read 67:8 79:6
reading 20:2 33:12
reads 80:23
realize 27:10 33:1
realized 43:17
realizes 32:5
really 22:8 38:3 50:23 58:11,14
66:25
reason 35:16 58:7
reasonable 14:14 15:10 29:13 31:1
reasons 9:5 14:21 32:18 41:12
rebut 26:5
rebuttal 79:21
received 4:4 17:12 50:1 78:10 87:6
receiving 30:15
recess 31:9,12 81:12 88:12
recognize 12:1 66:1 69:11
recognized 72:24 75:17
recommend 80:6
recommended 80:4
reconsider 27:22
record 31:13 70:19
recorded 14:14
records 42:25 43:21,22 44:12 48:4
50:15
redactions 65:25
refer 34:5 35:12
references 18:9
referring 38:10,14 43:20
refers 60:25 81:18
reflect 31:13 81:6
refused 75:6
regard 69:9
regarding 14:16,16 31:3,24 43:11
51:8,10 65:23
regardless 60:11
regards 14:2,18
register 59:7
regulated 23:18
Regulation 52:21
regulations 43:11,15
regulator 59:20 80:14
rejected 35:2
relate 7:20 33:4 47:8 78:23
related 10:12 29:15 37:24 78:25
81:18
relates 12:25 38:2 78:24
relating 50:1 57:2
relation 84:25

relevance 9:23 47:19 72:21 78:6,14
81:9 84:13
relevancy 70:20 84:6
relevant 10:14 11:18 13:16 15:23
16:3 19:8 21:12 22:20 23:7 25:14
26:13 27:18 35:17 36:19,25 41:3
45:1,2 47:25,25 48:2 51:7 61:11
62:18 64:15 73:17,17 75:21 76:3
76:9,16,20 80:17 81:7 82:19 83:6
83:17,18 84:11 86:25
relied 79:16
remember 55:20
remotely 6:20
repeatedly 53:17 58:3 75:10
replete 52:19
replicate 74:4
replicated 10:20
report 24:12,15 32:17 35:19 36:15
36:17 40:16 42:17 43:6,8 44:11
44:13 46:1,2 48:19 50:5,17 68:19
72:20 73:12 75:25 78:17,18,22
78:23,23 79:4,14,15 80:18,19,21
80:23 81:10,16,19,20,22 82:9,15
83:13 85:4,16,25 86:13
reported 2:1 14:19
Reporter 2:1 89:6
reporting 8:3 18:1 29:22 30:2
32:20 34:16,19,22 44:17 45:7,9
48:9,11 53:16
reports 35:13,13 70:16 72:14,24
73:16 75:13 78:3 79:1 84:7
represented 31:14
representing 3:9,12 33:23
request 65:4 74:1 87:9,25
require 37:16 65:25
required 23:18 30:9 32:16 35:14,20
40:24 44:17 45:9,13 46:2 47:11
59:25
requirement 5:23 18:16,21 27:13
30:22 34:13 44:11 48:18 50:7
requirements 34:16,19,23,24
40:20 45:8 53:16
requirment 27:12
resident 62:22
residents 55:24
resolution 6:24
respect 15:8 27:3 33:6 77:20 82:5
84:6 85:22 87:16,24
respectable 75:8
respective 3:5 17:23 18:6 77:21
respond 21:1 44:4 46:9
responds 79:14
response 15:18 29:16 31:18 37:8
39:11 41:17 54:19,25 55:10
70:15
responsibility 4:21 7:14
responsible 9:14 11:7,10,11,22
78:4 82:21
rest 78:23
result 51:9
resulting 51:3 72:14
retained 79:23
returned 30:23
returns 65:11
reveal 57:7
Revenue 4:15
reverse 77:24
Review 81:11
revisit 31:6
right 3:3,14 5:8 7:23 9:7 15:21 20:6
21:23 30:21 31:8,13 36:3 37:5,16
42:6 54:11,15 69:18 70:11 83:15
85:10,25 86:9
rimmed 62:21
risk 60:6 61:16
Rohner 71:15 74:16 81:5,5
role 4:19,19
round 19:7,8
RPR-CM 2:1
rubric 5:19 13:4
rule 3:17 5:8 22:1 29:17 30:22
31:10 32:12 37:24 38:20,22,23
40:21 41:11 44:17 49:11 50:20
50:25 51:11,18,20,22 52:11 53:4
53:22 65:13 68:10 73:13 79:22
83:5 85:24
rules 31:17,25 32:10 33:17 38:9
41:24 42:17 49:13 53:14 65:2
ruling 53:24 87:20,24
run 73:7,7

running 40:10 74:17

**S**

sale 49:22 52:4
sales 31:10,16,24 32:10,12,15 33:1
33:1,15,15,17 35:18,19,20 36:8,8
37:7,17,24 38:2,8,15,20 40:25
41:10,24 42:20 43:11,14 44:13
45:22 46:2,2,5,5 48:7,19 49:11
50:4,20 51:11,18,20,22 52:11
53:4,14 58:13,15 62:13,14,24
63:6,12,16,19,23 64:3,10,15
65:13 66:14,17,24 67:5 70:1
sand 36:24
Sands 46:7
satisfied 78:7
satisfy 34:14
saw 32:9
saying 7:16 11:10 13:1 15:24 18:20
18:24 19:12,16,18 26:24 29:2,3
35:22 39:2 57:6,18 60:1 62:15
63:8,12 64:19 66:5,20 68:13
79:16,18
says 5:11 7:4 17:9,20 18:6,8 19:4
21:15 28:5,23 29:1 35:16 36:5,12
49:1 53:12,15,17 55:22 56:12
57:4,15,15 58:17,17,17 61:7 62:4
62:11 63:23 66:11 67:9 68:21
73:10 77:13 79:22 80:4 84:5,7
SBC 16:16,21 17:13 18:17,20
scheme 12:11 13:5,7 77:10,14
Schumacher 17:4,4,15 19:4 20:25
22:5 24:10,24 25:4,9,24 27:9
28:12,23,24 29:5,20,22 30:18
scintilla 60:23
scope 10:5 49:4 57:8 80:16
SEC 17:13 56:15 57:3 59:7 62:24
63:13,23 65:2,4,4,4,19 66:16
67:5,5
second 15:15 56:12,19 61:24 62:5
Secondly 61:13
secrecy 9:22 18:14 23:24 43:4
59:13 67:16,17,20 69:14
secret 18:14 35:9 49:2 65:6
Secretary 86:17,17
Section 34:11 49:1
secured 61:2
securities 7:21 19:24 20:11,11 21:4
21:10,11,19 22:10 25:6,20,23
27:19 28:4,25 29:10 32:11,13,16
36:18 37:25 38:2,3,7,11,12,17,18
41:25 44:13 47:9,10 48:17 49:22
50:20 51:12,21 55:14 56:1,2,4
57:9 58:10,18 60:11,15 61:3,14
61:17,21 62:22 63:7,13 64:3,9,14
64:20 65:20,23 66:12,23 68:17
68:20,25 69:2,4,10,15 77:15
security 7:25 8:3 33:7,15 54:17
57:7 58:16,21 60:6 61:9 66:2
see 6:20 15:15 41:24 51:1,2 56:12
56:13,17 60:15,19,21 63:22 70:2
70:8
seeing 70:7
seek 74:2 75:6
seeking 31:23
seen 27:15 69:25 72:4
selecting 70:14
selective 88:3
selling 67:16,20 69:13
send 67:22
sending 59:20 64:23
senior 71:15,19,21 72:16,18 74:12
86:24
sent 10:9
sentence 62:25
separate 7:7 59:14 74:24
September 28:16,18,21 55:17
series 75:20 81:19
serious 22:8
service 4:15 10:17 22:18 62:22
services 9:22
serving 62:12
set 5:1,5 42:17 69:14 72:14,15
sets 72:4
setting 21:9 27:24 69:14 78:4
SFA 60:18
shield 40:22 46:16,19
shoot 35:7,10

shoots 12:7
short 31:8,12
shortly 25:18 30:10
shotgun 12:7
shouldn't 58:19
show 12:9,17 14:6,8,13 18:4 19:19
20:7 24:4 25:1,2,11 28:2 30:5
46:4 47:20 58:11,14 59:23 60:10
61:16 63:18,18 66:3,9
showed 74:7
showing 25:15 88:4
shows 13:9,9 58:25 59:1 80:7
84:11
shred 40:9
shredding 40:7
Shumacher 71:25
side 57:14
significant 27:10
similar 16:11 22:6 34:9
simple 41:19 85:11
simply 24:20 41:7 49:15 53:3 88:5
single 6:14 66:4,19
sir 3:25 70:23
sitting 71:17
situation 21:4 32:1 76:13 77:18
six 6:10 8:21 27:8 28:8
sixth 22:24
size 48:12 49:4
slash 63:2 73:15
slow 54:22
smoking 57:4
sold 18:13
solely 12:25 37:24 38:11 43:15
somebody 7:18 8:18 11:9 12:7
55:6 60:25 67:19
sophisticated 19:20 22:9
sophistication 22:20 23:3
sorry 54:24 72:8
sort 17:17 23:12 82:25
sought 72:11
sounds 18:24 21:18 74:13,14
source 87:15
sources 80:8
South 1:21
SOUTHERN 1:2
speak 64:1 71:14 74:18,22
speaking 71:3 88:10
speaks 57:23
specific 24:20 30:7 77:11
specifically 4:16 12:6 83:14
specificities 9:4
specified 83:4
spent 48:22 72:3
spoke 19:4
spring 22:15 72:7
squarely 50:25
staff 62:18
stand 20:25 30:18 67:2,3 88:12
standing 23:20
stands 34:2
Staples 32:8,14 36:12 44:15 48:22
start 65:14
starts 40:7 62:6
state 3:5 84:10
stated 37:10
statement 53:14
statements 6:12 10:22 34:20 67:24
83:25 84:12
States 1:1,4,12 2:1 3:4,8,9 6:12
10:4 12:16 14:9 18:17,19 22:12
22:17 23:19,20 34:8 47:6 55:19
59:5,18 62:4 63:5 64:23 67:21
72:12 75:9 78:2 86:18 89:6
steps 40:3,20 43:18 44:10,16 48:8
52:6
STIPES 2:1 89:5
stipulate 5:7 19:19 20:17
stipulation 22:9
Stirling 29:16
stop 10:10 37:22 46:21 81:9
stopped 10:3
strategy 56:23
Street 1:16
strict 62:11
strictly 7:21
structured 38:4,13
structures 21:9 63:21 69:14
struggle 37:2
struggling 6:25
stuff 16:23 66:21

subject 3:17 4:12,13 15:1,12 29:13
30:22 34:16,22 37:18 48:5 55:18
submissions 20:2
submit 37:4 52:22 54:6 74:22
75:14 78:6 83:5
submitted 32:8 71:16
subordinants 73:6
subordinate 71:24
subsequent 82:9
substance 53:18
substantially 16:5
substantive 35:23 37:2 38:24
substitute 84:18
succinct 49:20
sudden 75:3
sue 60:6 61:23
sued 60:9
suffered 6:8
suffers 19:1
sufficient 6:7 11:12 14:8 52:23
sufficiently 6:23 15:6
suggest 35:24 45:4
suggesting 16:25
suggestion 81:21
suitable 80:5
Summer 72:7,7
superior 29:20,23,23
supervised 13:2
supplied 33:18
supply 6:7
supports 66:4
supposed 12:24 20:20 21:20 42:2
48:10 63:4 80:14
sure 4:12 37:22 41:14 52:8 64:4
65:22 72:15 74:4 76:5
surely 22:20
surround 87:3
suspicion 8:24,25
Swiss 8:6,10 18:13,13 23:24 40:15
43:4 48:23 64:24 71:9,12 74:2
78:1 80:14 82:2,12,14
Switzerland 19:2 17:21 23:15
71:10 86:17 87:6,16
systems 77:21

**T**

T 89:1,1
tactics 13:8
take 3:16 8:1 14:2 16:22 24:13 31:9
31:11 53:21 67:18,19,21 71:13
72:21 75:5 81:13
taken 31:12 41:14 42:25 49:17
79:18
takes 30:18 70:18 74:23
talk 8:9 25:18 45:17 56:3 61:13,16
62:1 63:9 66:6 74:15 75:4
talked 25:4
talking 25:5,20,22,23 26:4 27:4
33:3 56:15 57:4 59:4
talks 36:12 61:22 63:15
taped 34:19
tax 1:16 7:12 8:9 9:22,22 10:1
16:23 17:18 21:4 22:10,16 24:2,2
24:18 35:23 37:12 41:2,12,16
46:15 47:16 48:11 51:23 55:15
56:9,11 57:5,5,10,11,19 58:12,15
58:17,22 59:11,22 60:15 61:2,3
61:14,17,19,23 62:6 63:17,17,21
64:3,8,12,20 65:9,11,21,24 66:1
66:7,25 67:5 69:2 75:10 77:14
80:13,15 87:5
taxes 5:3 19:13 42:1 47:3,13 50:2
60:4,5 67:18
taxing 10:18
taxpayers 5:2 12:21 18:1 19:23
24:1 27:24 28:25 41:16 42:23
43:24 46:20 47:3,13,15 65:11
taxpayer's 18:19
team 86:23
technical 32:19 35:23 37:1 38:23
44:25 45:1 49:17 53:18
technicalities 41:2
tell 17:25 49:19 52:24 59:17 62:1
62:25 64:7 65:13,19,19 74:11
telling 27:21 67:20,22,23
tells 17:15
term 51:22,25 52:4
terms 73:13 76:14 78:4
territory 50:1

**testifies** 9:10 30:18
**testify** 44:21 84:23
**testimony** 14:23 15:17 21:17 22:22 26:16 31:5 34:2 36:4 47:19 54:5 68:18 71:13,20 73:22 81:24 87:11
**thank** 3:23 21:21,22,24 37:7 53:25 54:21 58:23 70:10 77:5 78:12 81:15 83:8,9 88:12
**theme** 7:9,11
**theories** 52:21
**theory** 6:7 32:7
**thing** 11:14 19:9 41:10 56:10 58:13 58:16,18 62:15 63:12 69:24 76:22,23
**things** 13:16 16:25 17:20 18:24 19:15 20:23 38:1 43:22 47:20 61:6 63:15 67:22 82:4 86:12
**think** 4:3,5 5:16 9:5 14:20 15:8 16:3 16:3,11 19:8 21:25 25:14,14 26:8 30:21 32:24 39:4,5 41:3 47:18 50:24 25 51:9,11 53:9,19 57:22 58:5 59:22 64:14 69:3,3,9,25 72:22 73:21 76:7 78:6 81:22 84:12,15 85:5
**thinks** 40:6
**thorough** 73:2
**thought** 37:16 38:25 39:1,13,18 41:1,3,13 42:2,5,6,9,10,21 43:17 43:18 45:19 49:7 50:2 52:5 53:22 64:4
**thousands** 22:18 59:4 60:12
**three** 4:3 11:23 19:20 21:2 27:17 48:22 71:15 72:16 74:18,19
**throw** 64:9
**thwarting** 43:24
**tie** 12:17
**time** 4:3,21 9:14 15:8 16:8 17:6 19:22 20:21 23:9 24:12,14 25:10 25:15 27:5 29:19 30:6 32:3 60:14 63:22 71:9 72:3 73:6 75:10 78:2 81:2 85:19
**timeliness** 5:9
**timing** 74:25
**tiny** 73:8
**tip** 48:12
**title** 5:5 11:10,21 55:18,20
**today** 7:10 32:2,25 54:4
**told** 12:14 18:8 19:12 27:18 28:24 41:8,9 54:22 64:16 73:24 74:1 86:19
**tomorrow** 54:13
**ton** 66:21
**top** 40:13 49:16
**Tortella** 1:15 3:8 28:11,16 30:2 52:3
**total** 63:8
**toxic** 60:25 61:1
**trade** 63:5
**trafficking** 67:25
**trail** 48:9
**transaction** 35:13
**transactions** 41:24 48:9
**TRANSCRIPT** 1:11
**transcription** 89:3
**transfer** 63:1
**translated** 78:18
**translator** 78:20
**transmitting** 34:10
**travel** 10:4
**traveled** 49:24
**Treasury** 52:1 86:16,17
**treat** 39:1,16
**trial** 6:8 9:6 11:1 15:4 21:1 25:18 29:7 30:25 64:18 68:11,25 69:5 70:2 75:18,21
**tried** 50:8
**trigger** 44:16 63:6,7
**true** 50:22 66:11,15
**trust** 80:21
**trustworthiness** 75:12 81:23 83:14 84:14
**trustworthy** 78:16 80:19 81:10,11 81:17 82:12 83:3,17
**try** 6:15 28:8 40:21 50:6 56:11 57:17
**trying** 4:9 11:20 14:1,1 20:7 26:20 32:6,25 33:9 34:23 35:9,25 37:10 42:4 44:6 45:15,23 57:24 64:9 76:13

**turn** 23:16 41:15 56:11
**turned** 21:2 28:22 71:1
**Turning** 9:13
**Turns** 40:8
**two** 7:3 21:19 59:3 60:5,15 63:15 63:22 66:9 68:12 78:3 80:12 82:7 84:8,15 86:7
**tying** 11:4
**type** 9:12 24:13 51:5 55:3
**types** 30:6 67:4
**typesetting** 71:19

## U

**UBS** 9:18,21 10:3,3,8 16:14,15 19:20 21:9 24:12 37:8,13 38:19 38:25 39:2,10 40:12,17 41:14 42:15,17,21 43:2,8,15,15,16 46:17 47:7,12,14,24 48:1,6,8,14 49:7,23,24 50:7 51:24,25 55:18 55:19,24 56:7 59:10,13 60:19 62:11,17 64:23 67:23 69:12 71:15 73:5 78:24 79:5,17 80:1 81:2,19 82:2,3 84:3 85:6,9,20 86:3,24 87:6
**uh-huh** 57:4
**ultimate** 42:5
**ultimately** 16:4
**uncover** 42:22
**uncovering** 10:5
**undeclared** 7:8,12,13,16,18,20 8:5 10:1,18 18:9,13 19:24 20:17,17 21:5,15 22:11 23:14,14,18,20 24:11 25:6 27:20,22 29:9 33:4 41:15 47:2 48:12,24,25 49:1,5 60:8,9,10
**underlying** 35:4 43:23 46:16,22,25 65:9,18 67:14 69:16
**understand** 4:9 11:14 13:18 20:1 22:23 24:5 37:2,23 41:6 44:24 47:17 49:10 77:23
**understanding** 32:5 79:22
**understatement** 6:16
**understood** 31:7 40:13 43:2
**undisclosed** 42:3
**unfairly** 58:20
**unfold** 70:7
**unfortunate** 32:1
**unique** 40:15
**United** 1:1,4,12 2:1 3:4,8,9 6:12 10:4 12:15 14:9 18:17,19 22:12 22:17 23:19,20 34:7 47:6 55:19 59:5,17 62:4 63:5 64:23 67:21 72:12 75:9 78:22 86:17 89:6
**unlicensed** 34:9,10
**unrelated** 41:12
**untrustworthy** 80:9
**upheld** 9:6 50:9
**USA** 47:14
**use** 9:11 12:8 13:14 25:6 47:2,4 50:4 53:9 83:24
**usually** 75:19
**U.S** 4:14 5:10 6:19,24 7:15,21,24 7:25 8:2,13 10:10,23 11:17,18 12:21,21 13:1 14:6 18:9 19:23,23 19:23 22:10,18 23:25 24:18 27:24 32:13,21 33:4,5,7 36:8,14 38:2,3,7,11,16,18 41:16 42:23 43:24 46:20 47:3,4,8,10 49:22,23 49:23 50:1 51:22 54:17 55:24,25 56:1,2,24 57:20 60:13 62:12,17 62:22,23 63:6,8,10 65:10 67:23 68:1,17,20 69:12 71:25 72:11 80:5,13,15

## V

**vacuum** 45:16
**value** 16:6 51:1,8 52:12
**various** 36:16 82:3 87:5
**versus** 3:4 5:10 34:8
**view** 53:10
**vindictive** 70:14
**violate** 24:18 45:25 77:14 80:13
**violated** 17:19 44:21 53:13 69:11 80:15
**violates** 57:9
**violating** 17:13 20:16 34:3 36:5,7 45:24 57:7,11 58:10,15,21 61:9 61:21 64:14,15,17 66:12,14 69:15

**violation** 17:16 21:19 29:22 35:10 36:6 45:2 46:15 51:18 53:4,18 55:14 56:4,6 62:15 64:2 65:1 82:22
**violations** 19:24 20:3,12 21:4 26:24 27:19 28:25 29:10 30:4 31:16,24 45:4,17,22 46:4,5 52:25 53:1 54:17 58:3,4 61:14,14,20 63:20,23 64:9 65:23 66:1,1,24 68:24 69:2,4
**virtually** 47:22
**visits** 59:4,18
**Vitaliano** 35:2
**voluntarily** 24:15
**voluntary** 11:18
**vs** 1:6

## W

**Wachtell** 79:25 80:5
**walk** 4:22 5:9 7:2 32:23 55:5
**walking** 35:8
**wall** 47:22 59:13
**want** 4:22 6:3,3,13 7:9 8:20,21,25 12:22 16:17,19,24 19:11 20:11 20:13,15,16 26:14 28:7 37:22 44:25 52:5 53:23 55:20 58:1,14 58:19 60:22,23,24 61:23 62:1 63:25 65:16 66:6,8,13,18 67:2 69:16,21,24
**wanted** 37:7 39:2 86:13
**wants** 4:4,7 23:16
**warned** 28:19
**warrant** 72:7 88:4
**Washington** 1:17 74:21,22
**wasn't** 32:20 33:24 34:4 35:4 45:12 79:16
**waste** 60:25 61:1
**way** 6:4,15,23 5:3 6:3 17:6,17 18:25 19:4 36:5,7 42:7,13 43:21 44:6 53:13 54:7 56:4,8 59:6 68:18 73:16 76:6 81:22 82:22,25 83:3 83:22
**ways** 35:1
**wealth** 4:19,25 13:2 67:21 74:10
**Webber** 56:22,24 60:23
**wedge** 47:21
**week** 21:1 87:8
**weekend** 31:1
**weeks** 21:2 27:17 68:12
**Weil** 1:7 3:1,4,12 4:16,18,19,24 5:4 7:4 8:11,12,18,21,25 9:13,16,20 11:2,5 12:12 13:1 15:12 16:14,17 16:20,25 17:4,5,6,11,12,15 18:4 18:8,16,21,24,25 19:6,12,22 21:5 21:8,15 22:4,9,23 23:7 10,22 24:11,12,24,25 25:2,8,10,24 25:25 26:1,9,17,18,21,25 27:1,1,7 29:15,19 30:1,4,24 31:4,14 32:3 33:23 51:17 52:24 58:6 69:4 71:7 71:15 72:16 73:4 74:9,11,16,20 75:3 77:13 78:5,24 81:4 84:9 86:4
**Weil's** 4:20 10:15 11:13 12:2 20:2 22:19 24:3 31:15 85:14
**weren't** 29:6 35:20 46:2 47:11,12 48:17 64:4 68:8,22
**western** 4:24 7:5
**widespread** 40:12
**willfulness** 60:19
**willing** 22:9 81:21
**wish** 63:5
**Withdrawn** 82:13
**withdrew** 8:10
**withheld** 17:22 42:1
**withhold** 40:24 48:19 50:2
**withholding** 8:1 44:17 48:11
**witness** 6:11 26:4 30:11,12 34:2,20 53:12 57:13 67:2,3 71:18 72:7
**witnesses** 9:10 33:10 41:8 44:20 45:4,17 50:21 58:1 71:14 73:11 75:5 81:24,25 84:17,21 87:1,16
**woods** 22:14 25:13
**word** 56:17 81:12 83:10
**words** 57:10
**work** 75:11 82:12,14
**worked** 8:21 23:23,23 42:13,15
**works** 75:9
**world** 10:20
**world-wide** 12:22

**worried** 64:4 66:25
**worry** 68:17
**wouldn't** 8:7 44:16,17 61:20 73:20 87:22
**writing** 61:19
**written** 54:1,6,7 81:14
**wrong** 11:21 14:16 16:25 19:6 23:11 25:8,9 37:16 44:25 45:10 58:5 64:14,21,23
**wrongs** 13:20 14:3,11 17:5 24:11
**wrote** 86:3
**W-9** 59:24,24 60:1,5,23 61:22 62:22 67:18

## Y

**year** 8:22 56:22 59:4
**years** 8:21 17:11 18:23 22:25 26:1 27:5,8 28:8 48:22 72:1
**York** 1:20 12:7 34:8
**Young** 48:16

## Z

**Zelnick** 1:19 3:12 31:20,21,23 36:10 44:4,6 46:11 48:3,16 50:3 50:14 51:2 52:16,18 53:12,25
**Zelnick's** 61:25
**Zimmerman** 55:17 57:13 62:9,10
**Zurich** 17:22

## $

**$780,000,000** 81:3

## 0

**08** 3:4
**08-60322-CR-COHN** 1:3

## 1

**1** 78:20
**10** 31:11 56:18 80:25
**10022** 1:20
**101** 78:21
**11th** 5:10 29:17
**119** 31:18
**12** 41:6
**120** 70:15
**121** 3:20 7:3
**123** 54:18
**124** 70:16
**127** 15:18
**129** 15:19
**13** 55:17
**130** 3:19
**132** 54:19
**133** 31:19
**15th** 28:16,18
**17** 32:14 36:13
**18** 23:19 85:2
**19** 79:13
**1934** 56:5 58:4
**1940** 56:6
**1994** 5:11
**1996** 17:11,21 18:16 20:8,21

## 2

**2** 1:22
**2nd** 46:13
**2000** 4:2,21,25 15:17 16:13 17:4 23:6
**2001** 55:17
**2002** 4:19,21,25 9:23 56:22 62:6,11
**2003** 56:22
**2007** 4:20 8:15 10:7 71:7 72:8
**2008** 30:23 32:3 34:8 71:8 72:8 74:17 85:1,2,5,13
**2009** 85:3
**2013** 28:20 29:6
**2014** 1:7 4:3 8:22 20:22
**20579** 1:17
**22** 22:25
**244(b)(2)** 36:12
**29** 5:8 68:10
**299** 2:2 89:6

## 3

**3** 26:2
**30** 45:21
**33131** 1:23

**33301** 2:3 89:7
**335** 77:1,4
**35th** 1:23
**36** 4:5
**371** 23:19 34:11 35:4

---

**4**

**4,000,000** 6:11
**403** 16:4,9 27:17 50:25
**404(b)** 3:18 4:11,12 5:17,21,22 6:1
  6:2,6 13:10,11,15,18 15:10,25
  16:19 19:6,9 22:1 23:10 24:8
  25:14 26:19 27:11,14 29:12,14
  29:17 30:22
**404(b)(2)** 14:13
**412** 79:13

---

**5**

**5** 78:20
**50** 66:22
**500** 6:11
**503** 62:3

---

**6**

**6** 26:2
**6.4** 49:1
**601** 1:16,20
**60322-CR** 3:4

---

**7**

**75** 17:21 18:5 19:12
**76** 78:20
**77** 78:20

---

**8**

**8** 1:7
**80** 17:21 18:5 19:12 78:20
**803** 73:13 85:25
**803.6** 78:15 81:9
**803.8** 70:19 78:9 83:16

---

**9**

**9** 56:18 62:22 85:2
**95** 18:8
**954-769-5496** 2:3
**954.769.5496** 89:7
**97** 17:21 20:21